## IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FANNIE AND ALBERT TARTT,** individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **CASE NO. _____** |
| v. | **CLASS ACTION** |
| **BIO-LAB, INC.,** and **KIK CONSUMER PRODUCTS INC.,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Fannie and Albert Tartt ("Named Plaintiffs" or "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), by their undersigned counsel, brings this class action lawsuit against Defendants Bio-Lab, Inc. ("Bio-Lab") and KIK Consumer Products Inc. ("KIK") (collectively, "Defendants") for real property-related damages sustained as the result of a September 29, 2024, fire and smoke plume, which occurred at Defendants' Conyers, Georgia chemical plant and caused widespread "evacuat[ions] as toxic smoke billow[ed] from [a] chemical-fueled inferno."[1]  As a result of the preventable

---

[1] https://www.foxnews.com/us/Bio-Lab-plant-fire-georgia-residents-evacuate-toxic-smoke-billows-chemical-fueled-inferno.

1

fire and toxic smoke and dust plume, Plaintiffs and the other Class members have suffered a variety of real property-related damages including loss of use and enjoyment, remediation and clean-up costs, lost profits, and diminution of property value.

Defendants' negligence, recklessness, and failure to prevent the fire and toxic smoke and dust plume caused and continues to cause harm to Plaintiffs and the other Class members. Plaintiffs make the following allegations upon personal knowledge as to Defendants' acts and/or omissions, upon information and belief, and upon Plaintiffs' attorneys' investigation as to all other matters:

## I.   GENERAL ALLEGATIONS

### A.   Parties

1.      Plaintiff Fannie Tartt has been a resident of Rockdale County, Georgia and a citizen of the state of Georgia since approximately August 2007.

2.      Plaintiff Albert Tartt has been a resident of Rockdale County, Georgia and a citizen of the state of Georgia since approximately August 2007.

3.      On September 29, 2024, Plaintiffs resided at 1849 Kings Row, Conyers, GA, 30012, approximately 1.3 miles from the Conyers, Georgia chemical plant, located at 1700 Covington Hwy, Conyers, GA 30012 ("Conyers Plant").

4.      Defendant Bio-Lab is a Georgia company engaged in the business of manufacturing and/or supplying swimming pool and spa water care chemicals under

2

product names that include BioGuard, SpaGuard, Natural Chemistry, SeaKlear, AquaPill, Coral Seas, ProGuard, and Pro Series.  At all relevant times, Bio-Lab owned and operated the Conyers, Georgia chemical plant located at 1700 Covington Hwy, Conyers, GA 30012 ("Conyers Plant").

5.     Bio-Lab is a Delaware corporation, based at 1725 N. Brown Rd. in Lawrenceville, Georgia 30043, licensed to do business in the State of Georgia, and conducting business in several counties in the State of Georgia, including, Gwinnett and Rockdale Counties; Bio-Lab is a wholly owned subsidiary of defendant KIK; Bio-Lab may be served through its registered agent for service of process, CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia 30046.

6.     Defendant KIK is one of North America's largest independent manufacturers of consumer products. KIK acquired Bio-Lab in order to expand its pool and spa treatment business.

7.     KIK, at all relevant times, owned and operated the Conyers Plant.

8.     KIK is a foreign corporation, with its principal offices and headquarters located in Canada.

**B.     Jurisdiction and Venue**

9.     This action is brought on behalf of residents of Rockdale County, Georgia and surrounding communities for losses to real property located in and around Rockdale County, Georgia as a result of Defendants' utter indifference,

3

reckless, willful and wanton conduct and acts of negligence, nuisance, and trespass that took place in and around Rockdale County, Georgia.

10.    It is expected that nearly all (far more than two-thirds) of the proposed Class members are Georgia citizens.

11.    The principal injuries of Plaintiffs and the other Class members were incurred in Georgia.

12.    Plaintiffs' and the other Class members' injuries directly resulted from Defendants' acts or omissions at and around the Conyers Plant.

13.    Plaintiffs, individually and on behalf of the other Class members, are seeking significant relief from Bio-Lab and KIK in the form of injunctive and monetary relief.

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.  Plaintiffs are citizens of the State of Georgia. Upon information and belief, Defendant is a corporation organized and existing under the laws of a state other than Georgia and has its principal place of business in a state other than Georgia.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in Rockdale County, Georgia in the Northern District of Georgia, Atlanta Division.

4

C.      **Background Facts**

16.     Bio-Lab has maintained a presence in Rockdale County since 1973.[2]

17.     Bio-Lab markets itself as "an industry leader in the development and marketing of innovative products that provide clear water for pools and spas and for keeping homes fresh and clean."[3]

18.     In 1973, Bio-Lab built the Conyers Plant.

19.     At all relevant times, Bio-Lab operated the Conyers Plant.

20.     "Among other operations, the [Conyers Plant] received, blended, and packaged [trichloroisocyanuric acid] material into finished consumer products."[4]

21.     Bio-Lab has a history of fires and toxic chemical releases at the Conyers Plant.

22.     In 2004, the warehouse of the Conyers Plant caught fire, injuring 28 people.[5] The fire produced a toxic chlorine plume that affected residents within 50 miles of the Conyers Plant, and authorities closed Interstate 20. Residents within a

---

[2] https://www.prnewswire.com/news-releases/Bio-Lab-announces-new-distribution-center-in-conyers-georgia-under-construction-by-arco-designbuild-300891722.html.

[3] https://www.thepoolsupplywarehouse.com/collections/Bio-Lab-inc?srsltid=AfmBOoq9nf-WP5fAL-mdKtjxxn0AMWVtMxRW52di0yu0qDac3FlKPNh9.

[4] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf.

[5] https://www.11alive.com/article/news/local/Bio-Lab-chemical-fire-conyers-georgia-2004-similar-incident/85-d71cc6d6-78cf-4283-9510-03c93b2ee71c.

1.5 mile radius of the facility were evacuated. The fire was caused by an explosion at the Conyers Plant fueled by 250,000 pounds of dry chlorine pellets. The explosion and fire resulted in a $7 million settlement paid to those impacted by the fire.

23.    In 2016, a fire ignited in a storage shed at the Conyers Plant.[6] The fire was only noticed and reported because a nearby resident smelled smoke and chemicals and called the authorities. The fire was fueled by reactions from chlorine pellets contained in the storage shed. Residents within a 1 mile radius of the facility were evacuated.

24.    In 2020, a water line leaked in the Conyers Plant, flooding part of the facility and reacting with the trichloroisocyanuric acid used in the facility.[7] The reaction produced dangerous fumes and a plume of hazardous chemicals. Following the incident, chlorine levels in the air at nearby business property measured 12 times the permissible exposure limit set by the federal government. Nearby businesses were evacuated, and the highway was closed. The leak and resulting fumes cost an estimated $1,007,000 in property damage. Nine firefighters were hospitalized as a result of their response to the fumes.

---

[6] https://www.11alive.com/article/news/local/conyers/chemical-fire-breaks-out-conyers-warehouse/85-231326577.
[7] https://www.csb.gov/assets/1/6/Bio-Lab_investigation_report_2023-4-24.pdf.

25.    The community of Rockdale County, Georgia has approximately 93,000 residents. The community of Conyers, Georgia has approximately 17,000 residents.

26.    Numerous residential, commercial, and public properties are located in close proximity to the Conyers Plant.  These properties include:

a.    Homes, schools, commercial buildings and stores, churches, and athletic fields;

b.    Shoal Creek Elementary School, located 1.6 miles from the Conyers Plant;

c.    Conyers Middle School, located 2.2 miles from the Conyers Plant;

d.    Rockdale County High School, located 1.9 miles from the Conyers Plant;

e.    CJ Hicks Elementary School, located 2.1 miles from the Conyers Plant;

f.    Georgia College of Construction, located 1.6 miles from the Conyers Plant;

g.    Rockdale County 911 Emergency Center, located 1.3 miles from the Conyers Plant;

h.    Conyers Rockdale Library System, located 1.6 miles from the Conyers Plant;

i.    Conyers First Methodist Church, located 1.4 miles from the Conyers Plant;

7

j.    Victorious Life Church, located 1.8 miles from the Conyers Plant;

k.    Antioch East AME Church, Inc., located 1.8 miles from the Conyers Plant;

l.    Kingdom Hall of Jehovah's Witnesses, located 1.7 miles from the Conyers Plant;

m.    Rockdale County Parks & Rec, located 1.8 miles from the Conyers Plant;

n.    AMMY Nursery, located 2.3 miles from the Conyers Plant;

o.    Conyers Apostolic Church, located 1.8 miles from the Conyers Plant;

p.    Way of the Cross Baptist Church, located 2.1 miles from the Conyers Plant.

27.    Upon information and belief, Bio-Lab stored chlorine and other chemicals at the Conyers Plant.

28.    At all relevant times, the risk of a chemical fire and the release of a toxic smoke and dust plume was reasonably foreseeable to Defendants.

29.    At all relevant times, it was reasonably foreseeable to Defendants that the risk of a chemical fire and the release of a toxic smoke and dust plume could impact the properties and present a hazard to the Rockdale residents located near the Conyers Plant.

**D.       The Fire and the Ensuing Toxic Plume**

30.      On September 29, 2024, a fire ignited at the Conyers Plant, resulting in a chemical reaction that caused an enormous toxic smoke and dust plume—the plume was so large that it could be "seen for miles."[8] The plume was visible from at least 30 miles away.[9]

31.      Figures 2, 3, 4, and 5, below, depict the smoke and dust plume.



---

[8] https://www.cnn.com/2024/09/29/us/rockdale-county-Bio-Lab-fire-georgia/index.html.

[9] https://www.firehouse.com/operations-training/video/55143420/evacuations-ordered-after-chemical-plant-fire-in-conyers-ga.

Figure 2



Figure 3



Figure 4



Figure 5

32.     The fire ignited on the roof of the Conyers Plant at approximately 5 a.m. The fire then triggered a malfunctioning sprinkler head at the facility,[10] which sprayed water onto water-reactive chemicals contained in the fire and at the facility. This reaction created the large smoke and dust plume depicted above.

33.     The fire was initially contained but reignited around 12 p.m., sending a large plume of black smoke into the air. The fire was not contained again until approximately 4 p.m.

---

[10] https://www.nytimes.com/2024/09/29/us/chemical-bio-lab-fire-georgia.html.

34.    The fire caused a "complete collapse" of the Conyers Plant building, as the roof caved in and multiple walls fell as a result of the fire.[11]

35.    Bio-Lab did not have an adequate fire protection system in order to quickly and effectively extinguish fires at their facility while also avoiding causing dangerous chemical reactions with water-reactive chemicals.

36.    Bio-Lab's failure to possess and utilize an effective fire protection system exacerbated the harm caused by the fire at the Conyers Plant and delayed emergency response to the fire.

37.    At approximately 1:10 p.m., authorities in Rockdale County, Georgia issued an Evacuation Alert asking residents living between Sigman Road and Interstate 20 near the Conyers Plant to evacuate immediately and announcing that Interstate 20 would be closing ("Evacuation Alert").

38.    The Evacuation Alert displaced more than 17,000 residents.

39.    At the same time, Rockdale County authorities announced the closing of Interstate 20 in both directions between Salem Rd and Turner Hill, an eight-mile stretch of the highway, causing significant traffic disruptions. All southbound traffic on Hi-Roc Road between Irwin Bridge and Highway 138 was shut down, and all

---

[11] https://www.cnn.com/2024/09/29/us/rockdale-county-Bio-Lab-fire-georgia/index.html.

traffic from Highway 138 to Interstate 20 from Turner Hill Road to Salem Road was shut down.

40.    Interstate 20 remained closed on September 30, 2024, causing additional traffic disruptions.

41.    Evacuated residents were unable to return to their homes to obtain personal items and necessities, including medication, technology, and communication devices to inform loved ones of their wellbeing.

42.    At approximately 7:45 p.m., Rockdale County, Georgia authorities issued a shelter-in-place order for all residents of Rockdale County ("Shelter-in-Place Order") between 7:45 p.m. and midnight.[12] More than 77,000 residents were affected and could not leave their homes.

43.    Those sheltering in place were asked by County officials "to turn the air conditioning off and keep windows and doors shut."[13]

44.    The Shelter-in-Place order was extended and continued on September 30, 2024.[14]

45.    All businesses in Rockdale County were asked to close operations

---

[12] https://www.rockdalecountyga.gov/updates-on-bio-fire-9-29-24/.

[13] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-in-place-continuing/.

[14] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-in-place-continuing/.

while the Shelter-in-Place Order was in effect.

46.     Piedmont Rockdale Hospital evacuated patients and announced that the hospital was on diversion, delaying care for those in need of emergency medical treatment.[15]

47.     Newton County Schools closed all schools on September 30, 2024, due to the fire and toxic smoke and dust plume from the Conyers Plant.[16]

48.     Georgia Piedmont Technical College closed both their Newton and Rockdale campuses until further notice because of the fire and toxic smoke and dust plume.

49.     Government buildings, including the Rockdale County Courthouse, Administration Building, Water Resources, Elections Office, Animal Services, Tax Commissioner, and Board of Commissioner's Office were all closed on September 30, 2024, due to the fire and toxic smoke and dust plume.[17]

---

[15] https://www.11alive.com/article/news/local/conyers-chemical-plume-Bio-Lab-fire-latest-updates-monday-september-30/85-2a4ac3d6-4263-4b25-aec8-5d0865c7c960.

[16] https://www.newtoncountyschools.org/departments/public_relations/news/schools_closed_monday__september_30?fbclid=IwY2xjawFm09ZleHRuA2FlbQIxMAABHQ-KlsTtwU5LXzxpISGupG0F0A2fijFc32ZrSQSNx2GxNd1uQSyYwVLQug_aem_7E6-2smPIyp0ljqw_kYpxg.

[17] https://www.wsbtv.com/news/local/rockdale-county/rockdale-county-chemical-fire-county-school-closings-monday/CP52YJPW7FAGTNPVK6MF5P53VM/.

50.    The City of Conyers closed City Hall, municipal court, and Conyers University through October 2, 2024, and cancelled a Conyers Downtown Development Authority meeting scheduled for October 1, 2024.[18]

51.    Government offices in nearby Newton County closed on September 30, 2024, as well due to health concerns.

52.    Churches in Rockdale County, and from Rockbridge to Northside County, were all asked to cancel or immediately end services on Sunday, September 29, 2024.[19]

53.    The Rockdale County Fire Rescue, the local fire department, was dispatched to respond to the fire at the Conyers Plant.

54.     The Rockdale County Emergency Management Agency mobilized in response to the fire. The state also sent officials from the Georgia Environmental Protection Division ("EPD") to respond and assess the air quality after the fire.

55.    The Georgia Department of Transportation managed road closures and accompanying transportation delays in response to the fire.

---

[18] https://www.11alive.com/article/news/local/conyers-chemical-plume-Bio-Lab-fire-latest-updates-monday-september-30/85-2a4ac3d6-4263-4b25-aec8-5d0865c7c960.

[19] https://www.ajc.com/news/atlanta-news/metro-atlanta-chemical-plant-fire-leads-to-evacuation-of-17000/NLTZ6RLMIZCERF76B7FHUQFRYE/.

56.     The federal Environmental Protection Agency ("EPA") also responded, assisting in air quality monitoring and assessment,[20] and the Federal Emergency Management Agency was called to respond and assist in emergency management as well.[21]

57.     Shelter locations and evacuation sites were established for affected residents, including sites in Lithonia, Covington, and Stockbridge, with assistance from the American Red Cross and DeKalb County Emergency Management.

58.     The repeated incidents at the Bio-Lab facility highlight ongoing safety concerns and the need for improved safety measures to protect the community.

59.     Beginning on September 29, 2024, and continuing through the date of this Complaint, Rockdale residents have been unable to use and enjoy their indoor and outdoor property as a result of the debris and poor air quality caused by the fire.

60.     The EPD and the EPA conducted air quality surveys on September 29 and 30, 2024, and the results indicated "the harmful irritant chlorine" emitting from the Conyers Plant.[22] The chlorine was present in the plume of smoke coming from

---

[20] https://www.wjbf.com/news/georgia-news/residents-in-conyers-ga-told-to-shelter-in-place-following-chemical-plant-fire/.

[21] https://www.cnn.com/2024/09/29/us/rockdale-county-Bio-Lab-fire-georgia/index.html.

[22] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-in-place-continuing/.

the facility, and wind patterns made the toxic chlorine pollution follow an "unpredictable path."

61.   Residents living near the Conyers Plant have observed smoke and ash debris on their property and around their homes.[23]

62.   The toxic smoke and dust plume caused concern in counties adjacent to Rockdale County. Newton County closed schools and government buildings. Walton County dispatched the Walton County Emergency Management Agency and the Walton County Fire Rescue to aide in the response to the fire and toxic smoke and dust plume. Walton County also advised residents to "turn off your air conditioners, turn on your ceiling fans, and if possible bring your outside animals indoors."[24]

63.   At the time of the fire, Plaintiffs were in their residence at 1849 Kings Row, Conyers, GA 30012, which is approximately 1.3 miles from the Conyers Plant.

64.   As a result of the fire and resulting toxic smoke and dust plume, Plaintiffs had concerns about their health and well-being and the health and well-being of their family because their residence is in the area directly impacted by the plume.

---

[23] https://news.monroelocal.org/update-walton-ema-director-chlorine-smell-in-air-is-sufficiently-dissipated-but-stay-indoors/.
[24] https://news.monroelocal.org/update-walton-ema-director-chlorine-smell-in-air-is-sufficiently-dissipated-but-stay-indoors/.

65.     Plaintiffs were not able to evacuate.  They have closed their home, turned off the heating, ventilation, and air conditioning system, and sheltered in place.  They have not been able to leave their home for any reason, including to attend a scheduled physical therapy session.

66.     As a result of the fire and resulting toxic smoke and dust plume, toxic and harmful substances, smoke, debris, particulate matter, other dust, and other pollutants have been deposited in, on, and around Plaintiffs' property. As a result, Plaintiffs have not been able to use and enjoy their home.

67.     At all relevant times, Defendants failed to act with reasonable care, acted with utter indifference, recklessly, and with willful and wanton misconduct.

68.     Defendants failed to prevent the chemical fire and the resulting toxic smoke and dust plume and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

69.     Defendants, alternatively, failed to discover the hazards that resulted in the chemical fire and resulting toxic smoke and dust plume, where such hazards could have been discovered by the exercise of ordinary care and otherwise acted with utter indifference,  recklessly, and with willful and wanton misconduct.

70.     Defendants failed to act with reasonable care to take sufficient precautions which would have prevented or mitigated the chemical fire and toxic

smoke and dust plume and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

71.    Defendants failed to act with reasonable or ordinary care to prevent toxic chemicals, dust, and hazardous by-products from being released into the environment and onto the properties of Plaintiffs and the other Class members and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

72.    Defendants failed to act with reasonable or ordinary care to contain the discharge of toxic smoke, dust, and hazardous by-products after the fire occurred and otherwise acted with utter indifference, recklessly, and with willful and wanton misconduct.

73.    At all relevant times, it was foreseeable to Defendants that their failures would seriously injure Plaintiffs and the other Class members.

## I.    CLASS ACTION ALLEGATIONS

74.    Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, Plaintiffs seek to certify and represent a class defined as:

> All owners and lessees of real property in Rockdale County and surrounding communities who were subject to the evacuation and shelter-in-place orders and advisories issued as a result of the plume of toxic smoke, debris, and particulate matter that emanated from the Conyers Plant because of the fire and chemical reaction.

19

75.     Specifically excluded from the Class are Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents, or employees, the judicial officers assigned to this litigation and any members of their staffs and immediate families, and any juror assigned to this action.

76.     Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

77.     **Numerosity.** Upon information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiffs, tens of thousands of people live in Rockdale County alone, thousands of properties were subject to the Evacuation Alert, and thousands of pieces of real and personal property were affected. Class members may be identified through objective means, including objective data available to the Parties regarding the persons and property present in the affected areas following the fire. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media and/or published notice. Thus, pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, the large size of

the Class renders the Class so numerous that joinder of all individual members is impracticable.

78.   **Predominance of Common Questions of Law or Fact.** Common questions of law and fact predominate in this matter because Defendants' conduct towards Plaintiffs and the other Class members is uniform. These common questions of law or fact predominate over any questions affecting only individual Class members. Common questions include, but are not limited to the following:

   a.   Whether Defendants engaged in the wrongful conduct alleged herein;

   b.   Whether Defendants caused the fire at the Conyers Plant in violation of rules, regulations, and customs;

   c.   Whether Defendants caused the release of toxic chemicals and particulate matter into the Rockdale community and surrounding communities;

   d.   Whether Defendants failed to exercise reasonable care in allowing the fire at the Conyers Plant to occur;

   e.   Whether Defendants failed to exercise reasonable care in causing the chemical reaction that caused the release of toxic chemicals and particulate matter into the Rockdale community and surrounding communities;

21

    f.     Whether Defendants omitted required, reasonable, or minimal safety measures resulting in the fire at the Conyers Plant;

    g.     Whether Defendants failed to follow required, reasonable, or minimal safety measures that would have mitigated the fire at the Conyers Plant;

    h.     Whether Defendants engaged in ultrahazardous activities;

    i.     Whether Defendants were negligent;

    j.     Whether Defendants created a nuisance;

    k.     Whether Defendants engaged in trespass to the properties of the Class members;

    l.     Whether Plaintiffs and the other Class members suffered injury and damages as a result of Defendants' conduct;

    m.     Whether Plaintiffs and the other Class members are entitled to damages, equitable relief, and other relief.

79.    Plaintiffs share a common interest with the other Class members in the objectives of the action and the relief sought.

80.    Plaintiffs satisfy the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure because their claims arise from Defendants' course of conduct which led to the single incident affecting all of the Class members and are based on the same legal theories as all other Class members' claims.

81.     **Adequacy.** Pursuant to Rule 23 (a)(3) and (4) of the Federal Rules of Civil Procedure, Plaintiffs can and will adequately represent the other Class members and their interests are common to and coincident with them.  By proving their individual claims, Plaintiffs will necessarily prove the other Class members' claims and prove Defendants' class wide liability. Plaintiffs have no known conflicts of interest with any of the other Class members, their interests and claims are not antagonistic to those of any other Class member, nor are their claims subject to any unique defenses.

82.     Moreover, Plaintiffs' claims are typical of the claims of all other Class members because all such claims arise from Defendants' conduct as alleged herein.

83.     Plaintiffs and the other Class members' legal claims arise from the same single event, namely, the Conyers Plant catching fire, followed by the creation of a large plume of toxic smoke and dust that emitted from the facility and spread throughout the Rockdale County area and beyond. The material facts underlying each Class member's claim are the same material facts as those supporting Plaintiffs' claims alleged herein and require proof of the same material facts.

84.     Plaintiffs, therefore, can and will fairly and adequately protect and represent the other Class members' interests.

85.     Plaintiffs' counsel—DiCello Levitt LLP, Stewart Miller Simmons Trial Attorneys, Miner, Barnhill & Galland, P.C., and Collins Law Environmental &

Personal Injury Lawyers—have extensive experience in environmental and toxic tort litigation and class actions, and have adequate financial resources to ensure that the interests of the Class will be adequate represented.

86.    If appointed Class representative, Plaintiffs are aware of, and are committed to, faithfully upholding their fiduciary duties to absent Class members.

87.    Plaintiffs and their counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

88.    Plaintiffs and their counsel will, therefore, fairly and adequately assert and protect the Class' interests.

89.    **Appropriateness**. Class treatment provides an appropriate method for adjudication of this controversy insofar as the class action can best secure the economics of time, effort, and expense and promote uniformity of decision. Indeed, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class. As a result, separate actions brought by individual Class members would possibly lead to a situation where identical language is interpreted differently.

90.    Resolution of the common issues of fact and law affecting Plaintiffs' and the other Class members' claims, including, but not limited to the common

issues discussed above, in a single action will eliminate the chance of inconsistent and/or varying adjudications. Such resolution will further allow Class members to present their claims efficiently; share the costs of litigation, experts, and discovery; and preserve judicial time and resources. A class action is thus superior to other available means for the fair and efficient adjudication of Plaintiffs' and the other Class members' claims.

91.    In the alternative, the proposed classes may be certified because:

a.    The prosecution of separate actions by each individual Class member would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the Defendants;

b.    The prosecution of individual actions could result in adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of non-party Class members or substantially impair or impede their ability to protect their interests; and

c.    Defendants acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## II.    CLAIMS ALLEGED

<u>COUNT I</u>
**Negligence**
**(Against All Defendants)**

92.    Plaintiffs adopt and incorporate Paragraphs 1-91, as though fully set forth herein.

93.     Defendants knew or should have known of the risk of fire, chemical reaction, and toxic plume at the Conyers Plant.

94.     Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic substances into the surrounding neighborhood and communities.

95.     Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

96.     Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful debris into the surrounding neighborhood and communities.

97.     Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful particulate matter into the surrounding neighborhood and communities.

98.     Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful dust into the surrounding neighborhood and communities.

99.     Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful pollutants into the surrounding neighborhood and communities.

26

100.    Defendants knew or should have known that the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants would pose a risk of serious damage to, diminution in the value of, and loss of use and enjoyment of the affected property.

101.    Defendants had a duty to Plaintiffs and the other Class members to exercise reasonable care to prevent the foreseeable interference with Class members' use and enjoyment of their properties that has resulted from the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from the fire and toxic smoke and dust plume.

102.    Defendants had a duty to prevent the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from the Conyers Plant.

103.    Defendants breached the duties that they owe to Plaintiffs and each of the other Class members, to exercise reasonable care, which has interfered with Class members' property and caused property damage, lost profits, loss of use, and expected diminution of property value.

104.    Specifically, Defendants breached their duties by:

  a.    Choosing not to take sufficient precautions to prevent a fire;

  b.    Choosing not to take sufficient precautions to prevent a chemical reaction with water-reactive chemicals;

27

c.      Choosing not to take sufficient precautions to extinguish a fire;

d.      Choosing not to take sufficient precautions to prevent and mitigate the emissions of toxic chemicals from the Conyers Plant;

e.      Allowing enormous amounts of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants to be deposited on Class members' properties; and/or

f.      Otherwise failing to take sufficient precautions to control the emissions of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from Class members' property.

105.   As a direct and proximate cause of one or more of the aforementioned negligent acts or omissions, Plaintiffs and the other Class members suffered property damage, lost profits, loss of use, and expected diminution of property value.

106.   As a direct and proximate cause of one or more of the aforementioned negligent acts or omissions, Plaintiffs and the other Class members have incurred, and will continue to incur, monetary damages arising from the property damage, lost profits, loss of use, and diminution of property value.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against

Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## COUNT II
### Nuisance
### (Against All Defendants)

107.   Plaintiffs adopt and incorporate Paragraphs 1-91, as though fully set forth herein.

108.   Defendants knew or should have known of the risk of fire at the Conyers Plant.

109.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic substances into the surrounding neighborhood and communities.

110.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

111.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful debris into the surrounding neighborhood and communities.

29

112.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful particulate matter into the surrounding neighborhood and communities.

113.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful dust into the surrounding neighborhood and communities.

114.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful pollutants into the surrounding neighborhood and communities.

115.   The fire at the Conyers Plant caused the uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants, which invaded the Plaintiffs' and the other Class members' properties, and Plaintiffs and the other Class members did not consent to the entry of such materials onto their properties.

116.   Defendants knew or should have known that they caused the disposal and invasion of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants on the Plaintiffs' and the other Class members' properties but have failed to remove such material from the Plaintiffs' and the other Class members' properties.

30

117.   Defendants' uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants and the disposal and invasion thereof onto the Plaintiffs' and the other Class members' properties is unreasonable and unlawful.

118.   The discharge, disposal, and invasion of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants onto Plaintiffs' and the other Class members' properties have substantially interfered with the lawful rights of Plaintiffs and the other Class members to use and enjoy their properties, which constitutes a private nuisance.

119.   The nuisance described above continues to this day and has adversely impacted the life and health of Plaintiffs and the other Class members.

120.   The nuisance described above has unreasonably, negligently, and recklessly interfered with the comfortable use and enjoyment of life and property, has caused expected diminutions in Plaintiffs' and the Class members' property values, and has thereby created a common law nuisance, for reasons of which Defendants are liable to the Plaintiffs and the other members of the Class Plaintiffs represent.

121.   As a direct and proximate result of this nuisance, Plaintiffs and the other Class members suffered unacceptable and unreasonable interference with their rights

to use and enjoy their properties, interference they should not be required to suffer without compensation.

122.   As a direct and proximate cause of the nuisance, Plaintiffs and the other Class members have incurred, and will continue to incur, monetary damages arising from the lost use and enjoyment of their property caused by Defendants' conduct.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## COUNT III
### Trespass
### (Against All Defendants)

123.   Plaintiffs adopt and incorporate Paragraphs 1-91, as though fully set forth herein.

124.   Defendants knew or should have known of the risk of fire at the Conyers Plant.

125.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic substances into the surrounding neighborhood and communities.

32

126.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

127.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful debris into the surrounding neighborhood and communities.

128.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful particulate matter into the surrounding neighborhood and communities.

129.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful dust into the surrounding neighborhood and communities.

130.   Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic and harmful pollutants into the surrounding neighborhood and communities.

131.   Defendants knew or should have known that the release of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants into the surrounding neighborhood would pose a risk of serious damage to, diminution in the value of, and loss of use and enjoyment of the affected property.

132.   The fire at the Conyers Plant caused the uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants, which invaded the property in which Plaintiffs and the other Class members have an interest, and Plaintiffs and the other Class members did not consent to the entry of such materials onto these properties.

133.   Defendants are aware that they caused the disposal and invasion of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants on the Plaintiffs' and the Class members' properties but have failed to remove the toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants from the properties.

134.   Defendants' uncontrolled discharge of toxic and harmful substances, smoke, debris, particulate matter, other dust, and/or other pollutants and the disposal and invasion thereof onto the Plaintiffs' and the other Class members' properties is unreasonable and unlawful, and such discharge, disposal and invasion have substantially interfered with the lawful rights of Plaintiffs and the other Class members to use and enjoy their properties, constituting an unlawful trespass.

135.   The trespass is continuing and ongoing.

136.   Defendants' interference with Plaintiffs' and Class members' possessory rights was unreasonable and foreseeable.

137.   As a direct and proximate result of the trespass, Plaintiffs and Class members sustained and will continue to sustain a loss of ability to use and enjoy their properties.

138.   As a direct and proximate cause of the trespass, Plaintiffs have incurred, and will continue to incur, monetary damages arising from the lost use and enjoyment of their property caused by Defendants' conduct.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## COUNT IV
### Punitive Damages
### (Against All Defendants)

139.   Plaintiffs adopt and incorporate Paragraphs 1-138, as though fully set forth herein.

140.   Defendants' repeated incidents involving similar fires, smoke plumes, chemical releases, and toxic smoke and dust emissions from the Conyers Plant reflect bad faith, reckless, and willful and wanton conduct on the part of Defendants.

35

141.   Defendants' failures to address the causes of previous incidents and allowing another chemical fire to occur without adequately updating fire protection systems and emergency procedures represent bad faith, reckless, and willful and wanton conduct on the part of Defendants.

142.   Defendants' misconduct has been willful, malicious and in reckless and wanton disregard for the rights of Plaintiffs and of others. As such, Defendants should be required to pay punitive damages in an amount that will deter such misconduct in the future.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants in an amount in excess of $75,000, which will adequately and fairly compensate them, plus the costs of this lawsuit, and an injunction requiring Defendants to remediate the resulting harm at or threatening their residences and for other appropriate injunctive relief.

## III.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court:

a)   Issue an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in the manner described above;

36

b)      Appoint Plaintiffs as Class representatives and their undersigned counsel as Class counsel;

c)      Issue a class wide judgment holding Defendants liable for the reasons described above for their unlawful conduct causing Plaintiffs and the other Class members to sustain damages resulting therefrom;

d)      Enter a judgment declaring that Defendants have committed the violations of law alleged herein;

e)      Award Plaintiffs and the other Class members compensatory damages in an amount that is fair, just, and reasonable, to be determined at trial;

f)      Award Plaintiffs and the other Class members punitive damages in an amount that is fair, just, and reasonable, to be determined at trial;

g)      Award pre-judgment and post-judgment interest to Plaintiffs and the other Class members as permitted by law;

h)      Award reasonable attorneys' fees and costs of suit; and

i)      Order equitable, injunctive, and declaratory relief requiring Defendants to:

       i.      Provide all Conyers residents with particulate masks;

       ii.      Provide all Conyers residents with high-efficiency particulate air filters for their homes;

iii.    Conduct immediate testing and sampling of the air and groundwater to detect the presence of toxins and other chemicals potentially hazardous to human health;

iv.    Immediately and publicly disclose all information regarding the toxins and other compounds that comprised the plume;

v.    Institute perimeter particulate matter monitoring at the fence line of the Conyers Plant;

vi.    Install additional air quality monitors in all affected areas;

vii.    Provide a full cleanup of all affected residences, businesses, and common areas;

viii.    Wash the exterior of buildings in all affected areas;

ix.    Wash the streets and sidewalks in all affected areas;

x.    Provide alternative housing for residents in Conyers, Georgia and affected surrounding communities for the duration of the cleanup process;

xi.    Provide funds for an independent third-party assessor to evaluate and provide estimates to real property owners in Conyers, Georgia and affected surrounding communities regarding property damage and diminution in property value; and

xii.    Any and all additional relief that the Court deems just and proper.

38

## IV.   JURY DEMAND

Plaintiffs, individually and on behalf of the other proposed Class members, demand a trial by jury on all issues herein so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**Dated:**  September 30, 2024

Respectfully submitted,

*/s/ Roy E. Barnes*
Roy E. Barnes
Georgia Bar No. 039000
John R. Bevis
Georgia Bar No. 056110
J. Cameron Tribble
Georgia Bar No. 754759
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: (770-227-6375
Facsimile: (770) 227-6373
E-Mail: roy@barneslawgroup.com
E-Mail: bevis@barneslawgroup.com
E-Mail: ctribble@barneslawgroup.com

Adam J. Levitt*
Daniel R. Flynn*
Anna Claire Skinner
Georgia Bar No. 797021
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
E-Mail: alevitt@dicellolevitt.com
E-Mail: dflynn@dicellolevitt.com
E-Mail: askinner@dicellolevitt.com

L. Chris Stewart
Georgia Bar No. 142289
Justin Miller
Georgia Bar No. 001307
**STEWART MILLER SIMMONS**
**TRIAL ATTORNEYS**
55 Ivan Allen Jr. Blvd, Suite 700
Atlanta, GA 30308
E-Mail: cstewart@smstrial.com
E-Mail: jmiller@smstrial.com

Robert S. Libman*
Roisin Duffy-Gideon*
**MINER, BARNHILL & GALLAND,**
**P.C.**
325 N. LaSalle St., Ste. 350
Chicago, IL 60654
Telephone: (312) 751-1170
E-Mail: rlibman@lawmbg.com
E-Mail: rduffy@lawmbg.com

Edward J. Manzke*
Shawn Collins*
**THE COLLINS LAW FIRM, PC**
1770 Park St., Ste. 200
Naperville, IL 60563
Telephone: (630) 527-1595
E-Mail: shawn@collinslaw.com
E-Mail: ejmanzke@collinslaw.com

*Pro Hac Vice forthcoming.*

***Counsel for Plaintiffs and the***
***Proposed Class***

40