# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| *In Re*: Bio-Lab Class Actions | Case No. 1:24-CV-04407-SEG |

## BIO-LAB AND KIK DEFENDANTS' MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS OR IN THE ALTERNATIVE TO STRIKE

Defendants Bio-Lab, Inc., KIK International LLC, KIK U.S. Holdings LLC, and KIK Custom Products Inc. (collectively, "KIK," and collectively with Bio-Lab, the "Bio-Lab and KIK Defendants") respectfully submit this Memorandum in Support of their Partial Motion to Dismiss Plaintiffs' Consolidated Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, to Strike under Federal Rule of Civil Procedure 12(f).

## INTRODUCTION

This case arises from a fire at Bio-Lab's manufacturing facility in Conyers, Georgia, on September 29, 2024. In the aftermath of the fire, Bio-Lab quickly set up assistance programs to help the community in which it has operated since 1973,

1

including to provide direct financial assistance to individuals and businesses in the surrounding area.

Plaintiffs' Consolidated Complaint, purporting to represent these same individuals and businesses, overreaches in a number of ways. It seeks to certify a putative class that stretches 25 miles in every direction from Bio-Lab's facility, including millions of individuals and businesses across a nearly 2,000-square-mile area. It brings claims in support of which necessary facts are not alleged. And it requests remedies unavailable under Georgia law.

At this stage, the Court should dismiss or strike two claims asserted in the Consolidated Complaint because they fail as a matter of law. *First*, strict liability is unavailable here. Plaintiffs cannot point to any statute imposing strict liability on the Bio-Lab and KIK Defendants or to an activity recognized by Georgia courts as abnormally dangerous, as is required by Georgia law. *Second*, Plaintiffs have failed to plead a cognizable injury in support of their request for a medical-monitoring fund, as is also required by Georgia law.

Because these claims are legally insupportable and significantly broaden the scope of an already complex case, this Court should dismiss Plaintiffs' strict liability claim and dismiss or, in the alternative, strike Plaintiffs' request for a medical-monitoring fund.

## BACKGROUND

KIK is one of the largest independent manufacturers of consumer products in North America.  Consolidated Class Action Compl. ¶ 56, Dkt. 138.  In 2013, KIK expanded its pool and spa treatment business by acquiring Bio-Lab, a leading manufacturer of pool and spa treatment products. *Id.* ¶ 41.  Bio-Lab's products include chlorinating agents that are critical to preventing disease from spreading in swimming pools and hot tubs by killing algae and bacteria. *Id.* ¶ 2.  Bio-Lab manufactures these agents at a plant in Conyers, Georgia that it has operated since 1973.

On the morning of September 29, 2024, a fire ignited in one of the buildings at that plant.  Compl. ¶ 293.[1]  The day after the fire, Plaintiffs in this consolidated case and in state court cases began filing dozens of putative class actions.  In November 2024, this Court consolidated over twenty pending federal class actions related to the fire and appointed interim class counsel.  Dkt. Nos. 59, 97, 112.  On

---

[1] Throughout the Consolidated Complaint, Plaintiffs cite a November 2024 "Investigation Update" from the U.S. Chemical Safety and Hazard Investigation Board ("CSB"). *See, e.g.*, Dkt. 138 ¶ 294 & n.41.  Under 42 U.S.C. § 7412(r)(6)(G), however, "[n]o part of the conclusions, findings, or recommendations of the [CSB] relating to any accidental release or the investigation thereof shall be admitted as evidence or used in any action or suit for damages arising out of any matter mentioned in such report."  Accordingly, Plaintiffs' use of the CSB Investigation Update is improper, and the Bio-Lab and KIK Defendants reserve the right to move to preclude its use or admission as evidence in this case.

3

January 10, 2025, Plaintiffs filed the Consolidated Complaint, bringing four claims—negligence, trespass, public nuisance, and strict liability—and seeking compensatory and punitive damages, the establishment of a medical-monitoring fund, and injunctive relief.  Dkt. 138 ¶¶ 440-491, Request for Relief ¶¶ 1-11.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  When a complaint fails to allege necessary elements of a claim, that claim must be dismissed.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (dismissing complaint for failing to allege elements of racketeering claim); *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003) (affirming dismissal of claim where facts as alleged foreclosed the possibility that defendant was liable as a matter of law).

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike under Rule 12(f) allows the court to "prune down pleadings so as to expedite the

administration of justice and to prevent abuse of its process." *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003).

## ARGUMENT

*First*, Count 4 of the Consolidated Complaint asserts a cause of action for strict liability. That claim fails as a matter of law. Under Georgia law, strict liability applies only where (1) a statute imposes it or (2) a defendant has engaged in an abnormally dangerous activity.[2] Plaintiffs fail to plead that the Bio-Lab and KIK Defendants could be strictly liable under either theory. Plaintiffs do not cite any statute that imposes strict liability here, and they make no attempt to allege that manufacturing or storing pool and spa chemicals is abnormally dangerous, a label that applies only to activities with a high degree of risk that cannot be eliminated through due care.

*Second*, Plaintiffs seek a remedy—medical monitoring—that is unavailable under Georgia law. Plaintiffs' request for medical monitoring should be dismissed or, in the alternative, stricken. As the Eleventh Circuit has explained, under

---

[2] Because Plaintiffs allege that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), Georgia law applies to Plaintiffs' claims. *See Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1121 n.3 (11th Cir. 2010) (applying Georgia law to a case brought under CAFA jurisdiction). Under Georgia choice-of-law rules, the substantive law of the place of the wrong, which is the "place where the injury sustained was suffered," applies. *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1329, 1332 (N.D. Ga. 2014) (citation omitted). Accordingly, here, because Plaintiffs allege that their injuries were suffered in Georgia, Georgia law applies. *See generally* Dkt. 138.

Georgia law, a plaintiff may not recover the costs of future medical monitoring without allegations of present physical injury. *See Parker v. Wellman*, 230 F. App'x 878, 883 (11th Cir. 2007). Plaintiffs explicitly exclude personal or bodily injury claims from their putative class definition yet seek funds for a sweeping medical-monitoring program that would include periodic testing and examination because of an "increased susceptibility to injuries." Dkt. 138 ¶¶ 398, 421, 434. Plaintiffs fail to plead a present physical injury in their request for medical monitoring that would support that remedy.

## I. THE COURT SHOULD DISMISS PLAINTIFFS' STRICT LIABILITY CLAIM

Under Georgia law, "there is no general rule of strict liability[.]" *McEntyre v. Sam's E., Inc.*, 313 Ga. 429, 433 (2022) (internal quotation marks omitted). Instead, strict liability applies only in two limited circumstances: first, where a statute imposes strict liability, and second, on "rare occasions," to abnormally dangerous activities.[3] *See Lowry v. Cochran*, 305 Ga. App. 240, 244 (2010) (noting that strict liability "has been applied only to activities such as mining or blasting"), *overruled on other grounds by Dep't of Lab. v. McConnell*, 305 Ga. 812 (2019); *McEntyre*, 313 Ga. at 433-434. Neither theory applies here.

---

[3] Georgia courts use the labels "inherently dangerous" and "abnormally dangerous" interchangeably. *See Lowry v. Cochran*, 305 Ga. App. 240, 243 & n.4 (2010) (relying on case law concerning "abnormally dangerous" activities to find activity not "inherently dangerous").

6

*First*, Plaintiffs have made no attempt at all to identify, let alone plead, a statute that would impose strict liability on the Bio-Lab and KIK Defendants. Courts applying Georgia law routinely dismiss claims for strict liability where they are not predicated on a Georgia statute. For example, in *Brownman v. Kendall Patient Recovery U.S., LLC*, the court dismissed a strict liability claim based on the defendants' alleged emission of a toxic gas when operating an industrial plant. 2022 WL 4451339, at *1, *10-11 (S.D. Ga. Sept. 23, 2022). The court held that because the plaintiff "failed to provide a statute upon which she bases her strict liability claim," the claim "fail[ed] as a matter of law." *Id.* at *11; *see also* Ex. A, *Kurt v. Sterigenics*, No. 20-A 3432-6, at *4-5 (Ga. State Ct. July 15, 2021) (dismissing claim for strict liability based on defendant's emission of certain chemical gases where plaintiff failed to identify statute imposing strict liability). Here, Plaintiffs' claim fails for the same reason.

*Second*, Plaintiffs have not alleged sufficient facts to show that the activity involved here—the manufacture and storage of swimming pool chemicals (Dkt. 138 ¶ 482)—is an abnormally dangerous activity. Nor could they. Georgia courts apply non-statutory strict liability only "on rare occasions" to activities that are abnormally dangerous. *See Lowry*, 305 Ga. App. at 244 (reversing trial court's

decision that skydiving was "inherently dangerous").[4] Historically, Georgia courts have applied this label "only to activities such as owning vicious animals or blasting." *Id.*; *see also McEntyre*, 313 Ga. at 433 n.2 (same); Ex. A, *Kurt* at *4-5 ("It is these mining/blasting cases that have laid the foundation for Georgia's strict tort liability resulting from abnormally dangerous activities and those activities have not been expanded.").[5] Neither of those activities is at issue here.

Georgia courts have emphasized that any "abnormally dangerous" activity must have a high degree of risk that cannot be eliminated even with due care. *See Lowry*, 305 Ga. App. at 244 (noting that the risks of skydiving could be eliminated through the exercise of reasonable care). Federal courts applying Georgia law

---

[4] This second type of liability is so disfavored under Georgia law that some courts stop after the first inquiry, concluding that where a plaintiff fails to point to a statute imposing strict liability, the plaintiff's claim fails as a matter of law. *See, e.g.*, Ex. A, *Kurt* at *4-5 ("Because there is no common law cause of action in Georgia for strict liability, a party seeking recovery under that theory must proceed under a statute granting such a right.") (collecting cases).

[5] The cases involving blasting are based on the fact that defendants "voluntarily set[] the force in motion" that results in plaintiffs' injuries—that is, intentionally detonating dynamite that results in shock waves that damage plaintiffs' homes. *See Berger v. Plantation Pipeline Co.*, 121 Ga. App. 362, 363 (1970); *Brooks v. Ready Mix Concrete Co.*, 94 Ga. App. 791, 792 (1956). Plaintiffs do not allege that the Bio-Lab and KIK Defendants intentionally set the fire in force—to the contrary, the Consolidated Complaint acknowledges that the fire was an accident, *see, e.g.*, Dkt. 138 ¶¶ 284-294 (describing "critical safety failures" that purportedly led to the fire), but contend the Bio-Lab and KIK Defendants should be held liable under a non-intentional theory.

have also considered the test set forth in the Restatement of Torts, which identifies six factors to determine whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Gullock v. Spectrum Scis. & Software, Inc.*, 146 F. Supp. 2d 1364, 1374 (M.D. Ga. 2001) (quoting Restatement (Second) of Torts § 520 (1977)).  In *Gullock*, for example, the court concluded that a contractor responsible for maintaining and policing a weapons range used by the United States Air Force should not be held strictly liable where an individual was accidentally shot because such injuries, while conceivable, were unlikely.  *Id.* at 1374.  The court emphasized that the risks identified with the activity (range maintenance) were "all eliminated with the exercise of reasonable care."  *Id.* at 1375.  Using the factors in the Restatement, the court determined that the activity was not abnormally dangerous.

Here, the Consolidated Complaint itself makes clear that the Bio-Lab and KIK Defendants' alleged conduct is not abnormally dangerous.  Nearly all of the allegations—though unsupported—rest on the theory that the risk of a fire could have been prevented by the exercise of reasonable care by the Bio-Lab and KIK Defendants.  *See* Dkt. 138 ¶ 284 ("Defendants operated their Conyers Plant with an

9

egregious indifference to safety. Instead, their main objective was to extract as much profit as possible while ignoring, deferring, and avoiding necessary expenditures that would have been incurred by reasonably prudent chemical companies."); *see also, e.g.*, *id.* ¶¶ 82, 87, 193, 219, 228, 281-283, 285-290, 306-308 (alleging various purported safety failures in support of negligence theory).[6] Indeed, the Consolidated Complaint expressly acknowledges that pool chemicals are "capable of being safely handled day-after-day," through proper management and training. *Id.* ¶ 281 (quoting a March 2001 EPA Alert).

The lone factual allegation that the Bio-Lab and KIK Defendants' activities are abnormally dangerous is one sentence stating that "[t]he ultrahazardous nature of Defendants' conduct is evident in the history of repeated chemical fires at the Conyers Plant, and other BioLab facilities around the country, caused when water-reactive chemicals came into contact with water." Dkt. 138 ¶ 486. Yet Plaintiffs' own account of that alleged history is not that those fires were likely or inevitable, but that they were caused by extreme weather events or failures to meet the standard of care. *Compare id.* ¶ 239 (alleging that a 2020 fire at the Conyers Plant was due to "unpackaged TCCA on the floor"), *with id.* ¶ 282(c) (describing an EPA alert recommending that pool chemicals be stored in closed containers);

---

[6] The Bio-Lab and KIK Defendants dispute all allegations of negligence in the Consolidated Complaint and highlight them only to illustrate the inconsistencies underlying Plaintiffs' strict liability claim.

*compare id.* ¶ 259 (alleging that the cause of a 2020 fire at Bio-Lab's plant in Lake Charles, Louisiana, was rainwater from Hurricane Laura coming into contact with TCCA), *with id.* ¶ 282(a) (describing an EPA alert recommending precautions be taken to avoid water coming into contact with swimming pool chemicals). And the Consolidated Complaint lacks any allegation that the risks involved here are inherent in manufacturing or storing pool chemicals (as with mining or blasting); to the contrary, it portrays the Bio-Lab and KIK Defendants as negligent actors who failed to adhere to the standard of care. As a result, even if the Court were to undertake defining a new activity as "abnormally dangerous," Plaintiffs' own allegations undermine any argument that the Bio-Lab and KIK Defendants' conduct gives rise to strict liability under the Restatement test.

Accordingly, Plaintiffs' strict liability claim should be dismissed with prejudice.

## II.   THE COURT SHOULD DISMISS OR, IN THE ALTERNATIVE, STRIKE PLAINTIFFS' REQUEST FOR MEDICAL MONITORING

Plaintiffs' request for medical monitoring similarly fails as a matter of law. As the Eleventh Circuit has explained, medical monitoring is available as a remedy under Georgia law only when a party alleges present physical injury. *See Parker v. Wellman*, 230 F. App'x 878, 883 (11th Cir. 2007). Here, Plaintiffs make no such allegations in support of their medical-monitoring request. Instead, they explicitly exclude personal or bodily injury claims from the putative class and seek medical

11

monitoring based only on "exposure" and "increased risks" of latent illness. Dkt. 138 ¶¶ 398, 421, 428. Those allegations are insufficient to allow medical monitoring as a remedy. As a result, this Court should dismiss or, in the alternative, strike Plaintiffs' request for medical monitoring.[7]

### A. Plaintiffs' Request for Medical Monitoring Should Be Dismissed Because Plaintiffs Do Not Allege Present Physical Injuries

The Eleventh Circuit has explained that, under Georgia law, a plaintiff may not recover the costs of future medical monitoring without allegations of present physical injury. *See Parker*, 230 F. App'x at 883 ("Plaintiffs have failed to point us to any Georgia authority that allows recovery of medical monitoring costs in the absence of a current physical injury, and [*Boyd v. Orkin Exterminating Co.*, 191 Ga. App. 38 (1989)] suggests that Georgia would not recognize such a claim."). And the Eleventh Circuit and other courts applying Georgia law have concluded uniformly that mere exposure to an allegedly toxic substance does not constitute such an injury. *See Caplan v. Weis*, 2015 WL 630441, at *4 (N.D. Ga. Feb. 11,

---

[7] Courts are divided on whether the proper mechanism to challenge a plaintiff's requested remedy is a Rule 12(b)(6) motion to dismiss or a Rule 12(f) motion to strike. *See White v. Alcon Film Fund, LLC*, 2013 WL 12067479, at *7 n.7 (N.D. Ga. Aug. 13, 2013). District courts in the Eleventh Circuit have left open the possibility that either vehicle may be used to challenge an improper remedy. *See, e.g.*, *Solvi Brands, LLC v. United Brands Co.*, 2011 WL 13214420, at 3 n.1 (N.D. Ga. Jan. 25, 2011); *Paylan v. Teitelbaum*, 2016 WL 7974824, at *2 n.2 (N.D. Fla. Dec. 22, 2016), *report and recommendation adopted*, 2017 WL 359198 (N.D. Fla. Jan. 24, 2017).

12

2015) ("[I]n cases seeking recovery for physical injuries involving exposure to toxic substances, a plaintiff must prove that the defendant's negligence resulted in physical injury amounting to actual disease, pain, or impairment of some kind." (collecting cases; internal quotation marks omitted)). In *Parker*, for example, the Eleventh Circuit affirmed the dismissal of the medical-monitoring claim, concluding that mere exposure to beryllium without "identifiable physical disease, illness, or impairing symptoms" was not an actionable injury sufficient to support a medical-monitoring claim. 230 F. App'x at 882; *see also Sabra ex rel. Waechter v. Iskander*, 2008 WL 4889681, at *2 (N.D. Ga. Nov. 10, 2008) (plaintiffs failed to state claims for negligence because they did not allege any physical injuries relating to their exposure to lead-based paint); *Boyd*, 191 Ga. App. at 40 (presence of elevated levels of chemicals associated with insecticide in bloodstream, without evidence that such chemicals "had caused or would eventually cause actual disease, pain, or impairment of some kind," did not constitute injury), *overruled on other grounds by Hanna v. McWilliams*, 213 Ga. App. 648 (1994).

      The increased risk of future illness is similarly not an actionable injury under Georgia law that would support a claim or request for medical monitoring. *See, e.g.*, *Paws Holdings, LLC v. Daikin Indus., Ltd.*, 2017 WL 706624, at *13 (S.D. Ga. Feb. 22, 2017) ("[T]o the extent that Plaintiff claims that it has suffered an increased risk of injury, such increased risks of injury are insufficient to state an

'injury' recoverable in tort under Georgia law."). For example, in *McGaffin v. Cementos Argos S.A.*, the court concluded that repeated exposure to concrete dust, which is "known to increase the risk of" several illnesses, including lung cancer, was not a cognizable "'injury to life or limb' under Georgia law." 2017 WL 150501, at *4 (S.D. Ga. Jan. 13, 2017) (quoting *Parker*, 230 F. App'x at 881). Indeed, "no Georgia court has adopted a theory of liability premised on the mere 'increased risk' of suffering from a future disease or injury." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1299 (N.D. Ga. 2005), *aff'd in relevant part sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir. 2007); *see also* O.C.G.A. § 51-12-8 ("If the damage incurred by the plaintiff is only the imaginary or possible result of a tortious act … , such damage is too remote to be the basis of recovery against the wrongdoer."). And it is not "the function of a federal court to expand state tort doctrine in novel directions absent clear state authority suggesting the propriety of such an extension." *Parker*, 377 F. Supp. 2d at 1302; *see also Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1251 (11th Cir. 2013) ("[C]onsiderations of comity and federalism counsel that we proceed gingerly when venturing into uncharted waters of state substantive law.").

Plaintiffs' requested remedy would require this type of novel expansion. The injuries that Plaintiffs allege in support of their request for medical monitoring are precisely those Georgia courts have rejected: future, hypothetical injuries.

Plaintiffs describe themselves as having "increased susceptibility" to alleged "latent disease processes." Dkt. 138 ¶¶ 428, 434. And as a result, Plaintiffs seek medical monitoring for "increased risks of serious illnesses, diseases, and disease processes" based on alleged "exposure to hazardous substances." *Id.* ¶ 428; *see also id.* ¶¶ 403, 431-33. But medical monitoring is unavailable under Georgia law absent present physical injury, which appears nowhere in Plaintiffs' request for medical monitoring.

In fact, Plaintiffs have explicitly excluded from the proposed class "any personal injury claims" and "damages claims for any current physical manifestation of personal or bodily injury." Dkt. 138 ¶¶ 398, 421. To be sure, the Consolidated Complaint includes allegations about symptoms that Plaintiffs and certain unnamed individuals allegedly suffered following the fire. *See id.* ¶¶ 327, 362, 364, 369, 372, 376, 390. But these allegations, for which Plaintiffs have expressly disclaimed seeking damages or relief, are entirely divorced from Plaintiffs' medical-monitoring request. Instead, Plaintiffs seek a medical-monitoring fund "to cover the costs of diagnostic tests or examinations that are medically necessary for them to obtain early detection and treatment of *latent injuries* arising from their exposure" to chemicals, fume, smoke, and debris following the fire. *See id.* ¶ 403(s) (emphasis added). There is no allegation that Plaintiffs' alleged symptoms have persisted, are likely to persist, or otherwise are

15

the basis for Plaintiffs' medical-monitoring request. The only injuries alleged in support of their request are future, hypothetical, and (therefore) unactionable under Georgia law.

Because Plaintiffs do not allege an actionable injury in support of their request for medical monitoring, that request must be dismissed.

### B. Alternatively, the Court Should Strike Plaintiffs' Medical Monitoring Request as Immaterial to Plaintiffs' Claims

In the alternative, the Court should strike Plaintiffs' request for medical monitoring for the same reason—it is unavailable to Plaintiffs as a matter of law. Courts routinely strike requests for relief if there is no factual basis for the relief sought or it is unavailable as a matter of law. *See, e.g.*, *Ollivierre v. Aspen Square Mgmt., Inc.*, 2023 WL 7492189, at *5 (N.D. Ga. May 9, 2023) (striking request for "mental or emotional distress damages" as unavailable for breach of contract claim); *Bauer v. State Farm Life Ins. Co.*, 2022 WL 912687, at *3 (N.D. Ga. Mar. 28, 2022) (striking request for "punitive or exemplary damages" after dismissing accompanying tort claim); *Holland v. Sebelius*, 2015 WL 13691436, at *4 (N.D. Ga. May 12, 2015) (striking request for "punitive damages, front pay, lost future wages, and reinstatement" as immaterial to plaintiff's remaining claims), *report and recommendation adopted*, 2015 WL 13691883 (N.D. Ga. June 4, 2015). Striking requests for relief that are immaterial to the claims in the case "help[s] the parties avoid the expenditure of time and money that must arise from litigating

spurious issues by dispensing with them early in the case." *Ollivierre*, 2023 WL 7492189, at *5 (internal quotation marks omitted).

Here, as explained above, medical monitoring is unavailable as a matter of law because Plaintiffs fail to seek damages or any other form of relief for any allegedly present physical injury. *See supra* II.A. Accordingly, Plaintiffs' request should be struck to help the parties and the Court avoid the time and expense associated with an "unnecessary foray" into relief to which Plaintiffs are not entitled under Georgia law. *Ollivierre*, 2023 WL 7492189, at *5.

## **CONCLUSION**

For the reasons stated above, the Bio-Lab and KIK Defendants respectfully request that the Court dismiss Plaintiffs' strict liability claim and dismiss, or alternatively strike, Plaintiffs' request for medical monitoring.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted this 24th day of February, 2025.

| | |
|---|---|
| ALAN E. SCHOENFELD* <br> THOMAS K. BREDAR** <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 7 World Trade Center <br> 250 Greenwich Street <br> New York, NY 10007 <br> Tel: (212) 230-8800 <br> Fax: (212) 230-8888 <br> alan.schoenfeld@wilmerhale.com <br> thomas.bredar@wilmerhale.com <br><br> FELICIA H. ELLSWORTH* <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 60 State Street <br> Boston, MA 02109 <br> Tel: (617) 526-6000 <br> Fax: (617) 526-5000 <br> felicia.ellsworth@wilmerhale.com <br><br> ROBIN C. BURRELL** <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 2100 Pennsylvania Avenue NW <br> Washington, DC 20037 <br> Tel: (202) 663-6000 <br> Fax: (202) 663-6363 <br> robin.burrell@wilmerhale.com | */s/ Michael A. Caplan* <br> Michael A. Caplan <br> Ga. Bar No. 601039 <br> Michael L. Eber <br> Ga. Bar No. 859338 <br> Emily C. Snow <br> Ga. Bar No. 837411 <br> Alan M. Long <br> Ga. Bar No. 367326 <br> **CAPLAN COBB LLC** <br> 75 Fourteenth Street NE, Suite 2700 <br> Atlanta, Georgia 30309 <br> Tel: (404) 596-5600 <br> Fax: (404) 596-5604 <br> mcaplan@caplancobb.com <br> meber@caplancobb.com <br> jarnold@caplancobb.com <br> esnow@caplancobb.com <br> along@caplancobb.com |

*Counsel for Defendants Bio-Lab, Inc., KIK International LLC, KIK Custom Products Inc., and KIK U.S. Holdings LLC*

*Admitted pro hac vice
**Motion for admission pro hac vice pending

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), I hereby certify that the foregoing document complies with the font and point selections approved by L.R. 5.1(C). The foregoing document was prepared using Times New Roman font in 14 point.

This 24th day of February, 2025.

                                       */s/ Michael A. Caplan*
                                       Michael A. Caplan
                                       Ga. Bar No. 601039

                                       *Counsel for Defendants Bio-Lab, Inc., KIK International LLC, KIK Custom Products Inc., and KIK U.S. Holdings LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 24th day of February, 2025.

/s/ *Michael A. Caplan*
Michael A. Caplan
Ga. Bar No. 601039

*Counsel for Defendants Bio-Lab, Inc., KIK International LLC, KIK Custom Products Inc., and KIK U.S. Holdings LLC*