**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| In re BIO-LAB CLASS ACTIONS | Case No. 1:24-cv-04407-SEG |

**MEMORANDUM OF LAW IN SUPPORT OF THE
CENTERBRIDGE DEFENDANTS' MOTION TO DISMISS
<u>THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

Table of Authorities ........................................................................ ii

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 4

ARGUMENT ................................................................................. 6

I.   CB Partners and CB Fund Cannot Be Subjected to Personal
     Jurisdiction or Tort Liability Based on the Alleged Activities of
     KIK or Bio-Lab ...................................................................... 7

     A.   KIK's and Bio-Lab's Activities in Georgia Cannot be Imputed
          to CB Partners or CB Fund for Jurisdictional Purposes ........ 8

     B.   KIK's and Bio-Lab's Alleged Acts or Omissions Do Not
          Support Imposing Liability on CB Partners or CB Fund .... 12

II.  Plaintiffs' Remaining Allegations Do Not Establish Personal
     Jurisdiction over CB Partners or CB Fund ................................... 14

     A.   Plaintiffs' Claims Do Not Satisfy the Long-Arm Statute .... 15

     B.   Plaintiffs' Claims Do Not Satisfy Due Process .................... 18

          1.   Plaintiffs Fail to Allege General Jurisdiction ............ 19

          2.   Plaintiffs Fail to Allege Specific Jurisdiction ............. 19

III. Plaintiffs Fail to State a Claim Against CB Partners or CB Fund 21

     A.   The Complaint Does Not Allege Any Recognized Tort Duty 21

     B.   Plaintiffs' Tortious Undercapitalization Theory Fails ......... 23

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson* v. *Am. Family Ins. Co.*,
 2016 WL 3633349 (M.D. Ga. June 29, 2016) .............................................. 13

*Ascension Tech. Grp. Ltd.* v. *AIP Asset Mgmt., Inc.*,
 2017 WL 3113420 (N.D. Ga. Mar. 30, 2017) ............................................. 16

*Ashcroft* v. *Iqbal*,
 556 U.S. 662 (2009) ........................................................................................6

*United States* v. *BestFoods*,
 524 U.S. 51 (1998) ................................................................... 7, 9, 22, 24

*Boafo* v. *Hosp. Corp. of Am.*,
 338 S.E.2d 477 (Ga. Ct. App. 1985) ..............................................................7

*BP Expl. & Oil, Inc.* v. *Jones*,
 558 S.E.2d 398 (Ga. Ct. App. 2001) ........................................................... 22

*Canadyne-Georgia Corp.* v. *NationsBank, N.A. (S.)*,
 982 F. Supp. 886 (M.D. Ga. 1997) .............................................................. 23

*Consol. Dev. Corp.* v. *Sherritt, Inc.*,
 216 F.3d 1286 (11th Cir. 2000).............................................................. 6, 9

*Czyzewski* v. *Jevic Holding Corp.*,
 580 U.S. 451 (2017) ..................................................................................... 10

*Daimler AG* v. *Bauman*,
 571 U.S. 117 (2014) ..................................................................................... 19

*Diamond Crystal Brands, Inc.* v. *Food Movers Int'l, Inc.*,
 593 F.3d 1249 (11th Cir. 2010)...................................................... 14, 15, 20

*Drumm Corp.* v. *Wright*,
 755 S.E.2d 850 (Ga. Ct. App. 2014) ..................................................... 11, 15

*Emory Grp.* v. *ID Sols., LLC*,
 2014 WL 1415021 (N.D. Ga. Apr. 10, 2014) .............................................. 15

*Factory Direct Wholesale, LLC* v. *Off. Kick, Inc.*,
　2023 WL 6811026 (S.D. Ga. Oct. 16, 2023) ................................................. 13

*United States* v. *Fid. Capital Corp.*,
　920 F.2d 827 (11th Cir. 1991) .................................................................... 11

*In re First Reserve Mgmt.*,
　671 S.W.3d 653 (Tex. 2023) ....................................................................... 24

*Fletcher* v. *Martin Elecs., Inc.*,
　825 F.2d 301 (11th Cir. 1987) .................................................................... 22

*Ford Motor Co.* v. *Montana Eighth Judicial Dist. Court*,
　592 U.S. 351 (2021) ................................................................................... 19

*Giraldo* v. *Drummond Co.*,
　2011 WL 13134198 (N.D. Ala. Mar. 11, 2011) ........................................... 21

*Glob. Garlic, Inc.* v. *Distribuidora Mi Honduras, LLC*,
　2021 WL 5034376 (N.D. Ga. Apr. 29, 2021) ............................................... 21

*In re Gulf Fleet Holdings*,
　491 B.R. 747 (Bankr. W.D. La. 2013) ......................................................... 11

*Henry* v. *Norcross*,
　2016 WL 9558939 (N.D. Ga. Nov. 14, 2016) ............................................... 20

*Herederos De Roberto Gomez Cabrera, LLC* v. *Teck Res. Ltd.*,
　43 F.4th 1303 (11th Cir. 2022) ............................................................. 8, 11

*Hickman* v. *Hyzer*,
　401 S.E.2d 738 (Ga. 1991) ................................................................ 7, 8, 10

*Hicks* v. *Universal Health Servs.*,
　874 S.E.2d 877 (Ga. Ct. App. 2022) ........................................................... 18

*Hyde* v. *Schlotzsky's, Inc.*,
　561 S.E.2d 876 (Ga. Ct. App. 2002) ........................................................... 22

*Innotex Precision Ltd.* v. *Horei Image Prods.*,
　679 F. Supp. 2d 1356 (N.D. Ga. 2009) ....................................................... 13

*Innovative Clin. & Cons. Servs.* v. *First Nat. Bank of Ames*,
　620 S.E.2d 352 (Ga. 2005) ......................................................................... 14

iii

*IOU Cent., Inc.* v. *Embryolisse USA, Inc.*,
  2021 WL 2557501 (N.D. Ga. Mar. 22, 2021) ............................................... 23

*Jordan Outdoor Enters.* v. *That 70's Store, LLC*,
  819 F. Supp. 2d 1338 (M.D. Ga. 2011) ......................................................... 15

*Kipperman* v. *Onex Corp.*,
  2010 WL 11505688 (N.D. Ga. Sept. 29, 2010) ....................................... 10, 11

*Knieper* v. *Forest Grp. USA*,
  2016 WL 9450454 (N.D. Ga. Mar. 3, 2016) ........................................... 17, 20

*Lamensdorf* v. *N.Y.U.*,
  2010 WL 11519546 (M.D. Ga. Mar. 24, 2010) ............................................. 20

*Lowery* v. *Noodle Life, Inc.*,
  869 S.E.2d 600 (Ga. Ct. App. 2022) ............................................................. 14

*N. Am. Med. Corp.* v. *Axiom Worldwide, Inc.*,
  2009 WL 1035248 (N.D. Ga. Apr. 9, 2009) .................................................. 20

*Naga Hanuman Fish Packers* v. *Sivani Int'l LLC*,
  2023 WL 8505750 (N.D. Ga. Oct. 20, 2023) (Geraghty, J.) .................. 12, 13

*Nottingham-Spirk Design Assocs.* v. *Halo Innovations, Inc.*,
  603 F. Supp. 3d 561 (N.D. Ohio 2022) ......................................................... 20

*Parker* v. *Ahmsi Ins. Agency Inc.*,
  2019 WL 13178508 (S.D. Fla. Aug. 2, 2019) ................................................. 11

*Parker* v. *Brush Wellman, Inc.*,
  377 F. Supp. 2d 1290 (N.D. Ga. 2005), *aff'd*, 230 F. App'x 878
  (11th Cir. 2007) ............................................................................................ 24

*Pascarelli* v. *Koehler*,
  816 S.E.2d 723 (Ga. Ct. App. 2018) ............................................................. 20

*Patel* v. *Diplomat 1419VA Hotels, LLC*,
  2014 WL 11462722 (N.D. Ga. Feb. 4, 2014), *aff'd in relevant
  part, rev'd on other grounds*, 605 F. App'x 965 (11th Cir. 2015) ............... 13

*Pounds* v. *Kenda Rubber Indus. Co.*,
  2020 WL 11192767 (N.D. Ga. Feb. 25, 2020) .............................................. 16

*Sun Nurseries, Inc.* v. *Lake Erma, LLC,*
  730 S.E.2d 556 (Ga. Ct. App. 2012) ....................................................... 10, 11

*Taylor* v. *Bd. of Regents,*
  2022 WL 4857906 (Oct. 3, 2022) (Geraghty, J.) ......................................... 23

*In re The Heritage Org.,*
  413 B.R. 438 (Bankr. N.D. Tex. 2009) ......................................................... 11

*In re Tronox Inc.,*
  855 F.3d 84 (2d Cir. 2017) .............................................................................. 8

*United Techs. Corp.* v. *Mazer,*
  556 F.3d 1260 (11th Cir. 2009) ...................................................................... 6

*Vogt* v. *Greenmarine Holding, LLC,*
  2002 WL 534542 (N.D. Ga. Feb. 20, 2002) .............................................. 9, 11

*Waite* v. *All Acquisition Corp.,*
  901 F.3d 1307 (11th Cir. 2018) .................................................................... 19

*Waste Mgmt., Inc.* v. *Superior Ct.,*
  119 Cal. App. 4th 105 (2004) ....................................................................... 25

*White* v. *Roberts,*
  454 S.E.2d 584 (Ga. Ct. App. 1995) ........................................................... 15

*Williams* v. *Booker,*
  712 S.E.2d 617 (Ga. Ct. App. 2011) ...................................................... 21, 24

*World-Wide Volkswagen Corp.* v. *Woodson,*
  444 U.S. 286 (1980) ..................................................................................... 21

## STATUTES

OCGA § 9-10-91 ............................................................................. 15, 17, 18

## **INTRODUCTION**

This lawsuit arises from a September 29, 2024 fire at a chemical plant in Conyers, Georgia (the "Conyers Plant"). The fire allegedly resulted from a "runaway reaction" involving TCCA, a chemical stored at the Conyers Plant that can trigger an exothermic (or heat-releasing) event if it gets wet. Plaintiffs allege that the Conyers Plant was owned and operated by Defendant Bio-Lab, Inc. ("Bio-Lab") and Defendant KIK Custom Products, Inc. ("KIK").

However, not content to assert claims against the entities alleged to have owned and operated the Conyers Plant, Plaintiffs attempt to further expand the scope of potential liability by asserting claims against Centerbridge Partners, L.P. ("CB Partners") and Centerbridge Capital Partners III, L.P. ("CB Fund," and together with CB Partners, the "Centerbridge Defendants"). In support, Plaintiffs rely on implausible and conclusory, information-and-belief allegations that attempt to link the Centerbridge Defendants to safety operations at the Conyers Plant, and a novel "tortious undercapitalization" theory, which attempts to graft tort liability onto standard investment transactions involving CB Fund. Plaintiffs allege that in 2015, CB Fund bought a majority of shares of the stock of KCP Investment Holdings, LP, which owns KCP Holdings, Inc., which owns Defendant KIK Custom Products, Inc.—a Delaware corporation with a principal place of business in Ontario— which is the sole member of Defendant KIK US Holdings, LLC, which is the

sole member of Defendant KIK International LLC (together with Defendants KIK and KIK US Holdings, LLC, the "KIK Defendants"), which—finally— owns Bio-Lab, the actual owner and operator of the Conyers Plant. KIK allegedly assumed debt that CB Fund had taken out for the acquisition. Merely to describe the transaction is to demonstrate CB Fund's distance from the events at issue. And Plaintiffs do not allege that CB Partners was a party to any transaction with Bio-Lab or the KIK Defendants, but only—again upon information and belief—that it "created, promoted, and controls" CB Fund.

Plaintiffs next allege that "Centerbridge"—without specifying which entity—"forced"—without specifying how—KIK to pay dividends and issue debt. Plaintiffs do not allege that any of these dividend payments or debt transactions were fraudulent or left KIK insolvent. They nevertheless assert with no factual support that these transactions somehow left the Conyers Plant specifically—one of multiple plants operated by one of several KIK subsidiaries—with insufficient funds to invest in unspecified safety measures, the cost of which is alleged nowhere in the Complaint.

Plaintiffs' unsupported and novel claims against the Centerbridge Defendants fail for at least three reasons: *First*, the Court cannot exercise jurisdiction over, or impose liability on, either of the Centerbridge Defendants based on the alleged negligence of Bio-Lab or KIK in connection with the Conyers Plant. Unless a subsidiary is an alter ego of the parent, the

subsidiary's actions cannot be imputed to the parent company to establish personal jurisdiction or tort liability. This basic principle of corporate separateness applies with even greater force here, where (i) CB Fund is only alleged to be a "controlling shareholder" of KIK's ultimate parent, which is itself several steps removed from Bio-Lab and the Conyers Plant; and (ii) CB Partners is not even alleged to be part of KIK or Bio-Lab's ownership structure. Plaintiffs' conclusory allegations that CB Partners and CB Fund purportedly "controlled" the plant do not support piercing the corporate veil.

*Second*, the Complaint is devoid of any well-pled factual allegations of contacts by CB Partners or CB Fund with Georgia that would support exercising jurisdiction over either entity consistent with Georgia's long-arm statute or due process.

*Finally*, Plaintiffs have failed to state a claim for direct liability on the merits. Plaintiffs' novel "tortious undercapitalization" theory finds no support in Georgia law, and does not support imposing a duty on CB Partners or CB Fund related to safety at the Conyers Plant.

For all these reasons, the claims against the Centerbridge Defendants should be dismissed under Rules 12(b)(2) and 12(b)(6).[1]

---

[1] The Centerbridge Defendants also join the arguments for dismissal in the Bio-Lab and KIK Defendants' Motion to Dismiss or in the Alternative to Strike, Dkt. 176, filed simultaneously with this Motion on Feb. 24, 2025, which also

## BACKGROUND

Defendant Bio-Lab "manufactur[es] and distribut[es] swimming pool and spa water care chemicals." ¶ 40.[2] The KIK Defendants manufacture and distribute a range of consumer products, including for "pool and spa treatment." ¶ 56. Plaintiffs' allege that the KIK Defendants are incorporated in Delaware and have their principal places of business in Ontario and Illinois, ¶¶ 47, 49, 53, and that "KIK acquired BioLab in 2013." ¶ 56.

CB Partners is a private investment management firm and SEC-registered investment advisor. *See* ¶ 152. CB Fund is a private equity investment fund. *See* ¶ 155. CB Partners indirectly advises CB Fund on its investments, through a sub-advisor. CB Partners and CB Fund are each Delaware limited partnerships based in New York. ¶¶ 60, 62. Plaintiffs allege "[u]pon information and belief" that CB Partners "created, promoted, and controls" CB Fund. ¶ 65. CB Fund is alleged to be a "controlling shareholder" of the ultimate parent of Defendant KIK Custom Products, Inc. ¶ 99. CB Partners, the management firm, is not alleged to own shares in or otherwise

_____

apply to the Centerbridge Defendants. Defendant Centerbridge Capital Partners III, L.P. further notes that it has not yet been served with process, and reserves the right to move to dismiss for insufficient service of process under Rule 12(b)(5) if it has not been served as of the deadline in Rule 4(m).

[2] Citations beginning with "¶" refer to paragraphs of the Complaint, Dkt. 138. The Centerbridge Defendants assume the Complaint's factual allegations are true only for purposes of this motion.

control any of the Bio-Lab or KIK Defendants.

The initial complaint in this lead action was filed on September 30, 2024 and named only Bio-Lab, Inc. and KIK Consumer Products Inc. as Defendants. Dkt. 1.  Plaintiffs filed an amended complaint on November 1, 2024, adding Defendant KIK International LLC.  Dkt. 55.  On January 10, 2025, Plaintiffs filed the Consolidated Class Action Complaint (the "Complaint") adding the Centerbridge Defendants.  Dkt. 138.

Plaintiffs allege that on September 29, 2024, a fire at the Conyers Plant "result[ed] in a chemical reaction that caused an enormous toxic chemical plume" and a "colossal wall of smoke."  ¶ 293–94.  Plaintiffs attribute the chemical plume and smoke to trichloroisocyanuric acid ("TCCA"), a precursor chemical used to make pool cleaning products, which "causes a chemical reaction [that] generates heat" if it "comes in contact with a small amount of water."  ¶¶ 2, 424.  Plaintiffs allege that the TCCA was improperly stored at the Conyers Plant; that the plant was not designed to prevent TCCA from coming into contact with water; and that the plant lacked "an adequate fire protection system."  ¶¶ 267, 271–72, 287, 306.  Plaintiffs further allege that, at all relevant times, the Conyers Plant was "owned and operated" by Bio-Lab and KIK.  ¶¶ 42, 57.  As to the Centerbridge Defendants, Plaintiffs allege, "[u]pon information and belief," that they "controlled operations at the Conyers

5

Plant, and affirmatively prevented KIK and BioLabs [sic] from undertaking necessary safety expenditures." ¶ 291.

Plaintiffs purport to represent a class of "[a]ll persons who resided, owned property, worked, or operated businesses within a 25-mile radius of the Conyers Plant on September 29, 2024." ¶ 395. They assert claims for negligence, trespass, public nuisance, and ultrahazardous activity, and seek damages for property damage and lost income they allegedly experienced as a result of the Conyers Plant fire, as well as equitable relief.

## <u>ARGUMENT</u>

On a Rule 12(b)(2) motion to dismiss, Plaintiffs bear the burden of pleading "sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp.* v. *Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "A *prima facie* case is established if the Plaintiff presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp.* v. *Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Courts do not credit "mere conclusions" and may "draw on [their] experience and common sense" in assessing whether a complaint states a plausible claim. *Id.* at 664.

I.   **CB Partners and CB Fund Cannot Be Subjected to Personal Jurisdiction or Tort Liability Based on the Alleged Activities of KIK or Bio-Lab**

The alleged activities and conduct of Bio-Lab and KIK in connection with the Conyers Plant cannot support exercising jurisdiction over, or imposing tort liability on, CB Partners or CB Fund.  CB Partners and CB Fund are separate and distinct entities from KIK and Bio-Lab, and Plaintiffs' conclusory allegations of their purported "control" of these entities, *e.g.*, ¶¶ 80, 291, do not support piercing the corporate veil.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States* v. *BestFoods*, 524 U.S. 51, 61 (1998) (quotation omitted).  For this reason, "the exercise of the 'control' which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary."  *Id.* (quotation omitted).  The Georgia Supreme Court has similarly explained that "[t]he law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders."  *Hickman* v. *Hyzer*, 401 S.E.2d 738, 739 (Ga. 1991); *see Boafo* v. *Hosp. Corp. of Am.*, 338 S.E.2d 477, 479 (Ga. Ct. App. 1985) ("One reason the law establishes separate corporate identity is so that a corporation *can* hold itself independently apart and insulated from the existence of another related corporation even while it uses the related corporation or controls it to promote

7

its own ends."). Therefore, "great caution should be exercised by the court in disregarding the corporate entity." *Hickman*, 401 S.E.2d at 739 (cleaned up).

These fundamental principles of corporate separateness apply with particular force to CB Partners—which is not alleged to own any stock in KIK or Bio-Lab—and to CB Fund—which is alleged only to be a "controlling shareholder" of the ultimate parent of KIK, an entity itself several steps removed from Bio-Lab. ¶¶ 93–100. They also apply as between CB Partners and CB Fund. If a plaintiff seeks to pierce the corporate veil with respect to multiple affiliated entities, like CB Partners and CB Fund, they must show that each "entity whose veil they seek to pierce was a mere instrumentality or alter ego." *In re Tronox Inc.*, 855 F.3d 84, 106 n.27 (2d Cir. 2017) (cleaned up).

A.  <u>**KIK's and Bio-Lab's Activities in Georgia Cannot be Imputed to CB Partners or CB Fund for Jurisdictional Purposes**</u>

"[A] subsidiary's contacts can be attributed to its parent company . . . [only] when the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without *any semblance of individual identity*"—*i.e.*, "when the subsidiary is a mere 'alter ego' of the parent company." *Herederos De Roberto Gomez Cabrera, LLC* v. *Teck Res. Ltd.*, 43 F.4th 1303, 1312 (11th Cir. 2022) (cleaned up) (emphasis in *Herederos*). By contrast, "[w]here the subsidiary's presence in the state is primarily for the

purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may **not** be acquired on the basis of the local activities of the subsidiary." *Consol. Dev. Corp.*, 216 F.3d at 1293 (cleaned up) (emphasis added).

In support of their claims against the Centerbridge Defendants, Plaintiffs do not allege facts that, if proven, would establish "alter ego" jurisdiction. Plaintiffs allege that three officers of CB Partners served on the Board of KIK. ¶¶ 162–67. But overlapping directors alone "may not serve to expose the parent corporation to liability for its subsidiary's acts." *BestFoods*, 524 U.S. at 69 ( "[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary.") (quotation omitted). Rather, courts "generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary." *Id.* (quotation omitted); *see also Vogt* v. *Greenmarine Holding, LLC*, 2002 WL 534542, at *6 (N.D. Ga. Feb. 20, 2002) (presence of parent's officers on subsidiary's board did not support exercise of jurisdiction over parent on an alter ego theory). Plaintiffs allege no facts that would overcome this presumption. Indeed, they do not suggest that any Partners or Fund personnel had operational or management roles at Bio-Lab or the Conyers Plant.

Plaintiffs also have not pleaded an alter ego relationship by alleging that "Centerbridge"—without specifying a particular entity—engaged in a series of

debt transactions and dividend distributions that left KIK "undercapitalized" and unable to "mak[e] necessary investments and improvements in safety infrastructure."  ¶¶ 173–219.  Plaintiffs do not plead that any of the alleged KIK transactions or distributions were fraudulent, improperly accounted for, or made without observing appropriate corporate formalities.  Instead, these allegations simply describe transactions regularly recognized by courts as lawful and routine in the investment and private equity contexts.  *Compare, e.g.*, ¶¶ 174–75 ("Centerbridge contributed only 25% of the acquisition price, or roughly $413 million.  The remaining 75% of the acquisition price, or roughly $1.24 billion, was funded through secured and unsecured loans that were assigned to KIK.") *with Kipperman* v. *Onex Corp.*, 2010 WL 11505688, at *36 (N.D. Ga. Sept. 29, 2010) ("[L]everaged buyouts almost always leave the acquired company with greater debt and fewer liquid assets than they had before the acquisition.  This has not been found to be a basis for inferring that the corporate form was being used to commit injustice.").[3]

---

[3] *See also Hickman*, 401 S.E.2d at 740 (explaining that capitalizing a corporation primarily with debt is a common "method of capitalization [that] has tax advantages for the investors and is not illegal."); *Sun Nurseries, Inc.* v. *Lake Erma, LLC*, 730 S.E.2d 556, 565 (Ga. Ct. App. 2012) ("The mere existence of transfers or loans between a limited liability corporation and its members does not in and of it itself represent an abuse of the corporate form."); *Czyzewski* v. *Jevic Holding Corp.*, 580 U.S. 451, 458 (2017) (describing standard leveraged buyout structure used in private equity).

Without allegations of illegality or failure to observe relevant corporate formalities, transactions like these do not support a finding that KIK was a "mere alter ego" of either Centerbridge Defendant. *See, e.g.*, *Kipperman*, 2010 WL 11505688, at *36 (dismissing alter ego claim based on standard private equity transactions); *United States* v. *Fid. Capital Corp.*, 920 F.2d 827, 838–39 (11th Cir. 1991) (finding no alter ego liability based on intercompany loans when the alleged alter ego entity made appropriate "entr[ies] on [its] corporate books"); *Sun Nurseries*, 730 S.E.2d at 565 (holding that distributions to stockholders that "were [not] fraudulent . . . [or] otherwise illegal or improper" did not justify piercing the veil).[4]

The Complaint also is devoid of other allegations that courts consider in evaluating potential alter ego jurisdiction, like shared offices, commingling of assets, shared books and records, or joint board meetings. *See Herederos*, 43 F.4th at 1312 (affirming grant of parent's Rule 12(b)(2) motion when its subsidiaries "each . . . ha[d] its own board of directors, officers, books of account, and separate taxes"); *Vogt*, 2002 WL 534542, at *6 (granting Rule 12(b)(2) motion when subsidiary "observed corporate formalities and operated separately from" parent); *Drumm Corp.* v. *Wright*, 755 S.E.2d 850, 853–54 (Ga.

---

[4] *See Parker* v. *Ahmsi Ins. Agency Inc.*, 2019 WL 13178508, at *9–11 (S.D. Fla. Aug. 2, 2019); *In re Gulf Fleet Holdings*, 491 B.R. 747, 789 (Bankr. W.D. La. 2013); *In re The Heritage Org.*, 413 B.R. 438, 517 n.69 (Bankr. N.D. Tex. 2009).

Ct. App. 2014) (holding there was no alter ego jurisdiction when parent "maintained a separate and distinct corporate entity from the [subsidiary] which was three parent companies removed").

And even if the Complaint had adequately alleged that KIK or Bio-Lab was an alter ego of CB Fund because of CB Fund's investment in KIK, it alleges no facts that indicate CB Fund is, in turn, a "mere alter ego" of CB Partners. Plaintiffs allege only that CB Partners and CB Fund share two executive officers, ¶ 156, which, as discussed *supra* at 9, does not support a finding of an alter ego relationship. Beyond this single fact, they assert only that "[u]pon information and belief, CB Partners created, promoted and controls [CB] Fund." ¶ 65. These bare-bones allegations cannot overcome the presumption of corporate separateness.

## B.   KIK's and Bio-Lab's Alleged Acts or Omissions Do Not Support Imposing Liability on CB Partners or CB Fund

For similar reasons, Plaintiffs' allegations against KIK and Bio-Lab do not support imposing tort liability on either CB Fund or CB Partners. As explained *supra* Section I.A., Plaintiffs have failed to allege facts supporting an inference that KIK or Bio-Lab was "'a mere alter ego'" of either Centerbridge Defendant or that CB Fund was "'a mere alter ego'" of CB Partners —as would be required to hold CB Partners and CB Fund liable for the acts or omissions of KIK or Bio-Lab that allegedly caused the Conyers Plant fire. *Naga*

*Hanuman Fish Packers* v. *Sivani Int'l LLC*, 2023 WL 8505750, at *2–3 (N.D. Ga. Oct. 20, 2023) (Geraghty, J.) (quoting *Kissun* v. *Humana, Inc.*, 479 S.E.2d 751, 752 (Ga. 1997)) (granting motion to dismiss alter ego claim when plaintiff "plead[ed] no facts to suggest that [company] was a mere instrumentality of [its managing member's] own affairs"); *see also, e.g.*, *Factory Direct Wholesale, LLC* v. *Off. Kick, Inc.*, 2023 WL 6811026, at *4 (S.D. Ga. Oct. 16, 2023); *Patel* v. *Diplomat 1419VA Hotels, LLC*, 2014 WL 11462722, at *4–5 (N.D. Ga. Feb. 4, 2014), *aff'd in relevant part, rev'd on other grounds*, 605 F. App'x 965 (11th Cir. 2015); *Innotex Precision Ltd.* v. *Horei Image Prods.*, 679 F. Supp. 2d 1356, 1360–61 (N.D. Ga. 2009).

Further, in the liability context, the equitable relief of veil-piercing is available only if the alleged alter ego is insolvent, such that there is no remedy at law. *See Anderson* v. *Am. Family Ins. Co.*, 2016 WL 3633349, at *6 (M.D. Ga. June 29, 2016) ("Absent an allegation of insolvency or insufficient assets to satisfy a claim, a plaintiff fails to state a claim for piercing the corporate veil to hold a parent company or shareholder liable."); *Naga Hanuman Fish Packers*, 2023 WL 8505750, at *3. Plaintiffs make no such allegation about KIK or Bio-Lab.[5]

_____

[5] In addition to failing to plead facts that would support veil-piercing, Plaintiffs also do not allege that KIK or Bio-Lab acted as an agent of the Centerbridge

## II.    Plaintiffs' Remaining Allegations Do Not Establish Personal Jurisdiction over CB Partners or CB Fund

Because CB Partners and CB Fund cannot be subject to personal jurisdiction based on activities of KIK or Bio-Lab, the Complaint must contain sufficient facts to make out a *prima facie* case that activities ***by CB Partners and CB Fund*** subject them to personal jurisdiction in Georgia.    The Complaint fails to do so.

The district court "undertakes a two-step inquiry in determining whether personal jurisdiction exists:  the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc.* v. *Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting *United Techs.*, 556 F.3d at 1274) (internal quotation marks omitted).  These two inquiries are separate and distinct because Georgia's long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."  *Diamond Crystal*, 593 F.3d at 1259; *see also Innovative Clin. & Cons. Servs.* v. *First Nat. Bank of Ames*, 620 S.E.2d 352, 354 (Ga. 2005).  Plaintiffs' allegations against the

---

Defendants or entered into a "joint venture" with them.  *See Lowery* v. *Noodle Life, Inc.*, 869 S.E.2d 600, 605–06 (Ga. Ct. App. 2022).

Centerbridge Defendants fail both steps of the jurisdictional inquiry.

**A.      Plaintiffs' Claims Do Not Satisfy the Long-Arm Statute**

The Georgia long-arm statute permits jurisdiction over a nonresident

defendant that:

> (1) [t]ransacts any business within [Georgia]; (2) [c]ommits a
> tortious act or omission within [Georgia] . . . ; [or] (3) [c]ommits a
> tortious injury in [Georgia] caused by an act or omission outside
> [Georgia] if the tort-feasor regularly does or solicits business, or
> engages in any other persistent course of conduct, or derives
> substantial revenue from goods used or consumed or services
> rendered in [Georgia].

OCGA § 9–10–91(1)–(3). "[O]wnership of [an in-state] subsidiary by an out-of-

state parent corporation without more is insufficient to obtain jurisdiction of

the parent corporation." *Drumm*, 755 S.E.2d at 855. Under subsection (1),

"literally transacting business within Georgia remains a precondition to long-

arm jurisdiction." *Diamond Crystal Brands*, 593 F.3d at 1261. "But it is not

enough to show that the Defendant transacted business in Georgia." *Emory

Grp.* v. *ID Sols., LLC*, 2014 WL 1415021, at *3 (N.D. Ga. Apr. 10, 2014). A

plaintiff's cause of action must "arise[] out of those transactions." *Id.* Under

subsection (2), "the conduct giving rise to" the claim must occur in Georgia.

*Jordan Outdoor Enters.* v. *That 70's Store, LLC*, 819 F. Supp. 2d 1338, 1345

(M.D. Ga. 2011); *e.g.*, *White* v. *Roberts*, 454 S.E.2d 584, 587 (Ga. Ct. App. 1995).

Here, the Complaint contains no factual allegations whatsoever

concerning business transactions, or tortious conduct, by CB Partners or CB

Fund *within* or *in the state*, much less allegations that would support the exercise of jurisdiction consistent with the long-arm statute. To the contrary, the Complaint acknowledges that CB Partners and CB Fund are Delaware limited partnerships with a "primary place of business" in New York, ¶¶ 60, 62, and does not contend that either has offices, employees, or property in Georgia, or is registered to do business there. It otherwise contains no factual allegations describing the nature or extent of either entity's business contacts in the state giving rise to the claim. *See Ascension Tech. Grp. Ltd.* v. *AIP Asset Mgmt., Inc.*, 2017 WL 3113420, at *3 (N.D. Ga. Mar. 30, 2017) (granting Rule 12(b)(2) motion when the complaint "[did] not include any allegation that [the fund] performed any act in Georgia related to this case, or that [the fund] transact[ed] business in Georgia").

The few purported jurisdictional allegations do not satisfy the long-arm statute. As an initial matter, Plaintiffs cannot simply "lump" CB Partners and CB Fund together, "without any attempt to state specific jurisdictional allegations with respect to each." *Pounds* v. *Kenda Rubber Indus. Co.*, 2020 WL 11192767, at *4 (N.D. Ga. Feb. 25, 2020). *See* ¶¶ 80–91 (repeatedly referring to "Centerbridge Defendants" collectively). CB Partners and CB Fund are distinct corporate entities: CB Fund is the indirect beneficial owner of a majority of shares of stock in KIK's ultimate parent, while CB Partners is an investment advisor that owns no KIK stock. *See* ¶¶ 99–100, 152–55.

Allegations that do not differentiate between them lack the specificity required "to sustain Plaintiffs' initial burden of showing [the Centerbridge Defendants'] minimum contacts with the State of Georgia." *Knieper* v. *Forest Grp. USA*, 2016 WL 9450454, at *5 (N.D. Ga. Mar. 3, 2016) (citing cases). This pleading defect is heightened with respect to CB Partners, which is not alleged to have invested in KIK or Bio-Lab at all.

In any event, Plaintiffs' conclusory allegations that the Centerbridge Defendants "have taken actions . . . to influence, control and direct the operations of KIK" and "controlled operations at the Conyers Plant, ¶¶ 80, 291, do not support the exercise of jurisdiction under subsections (1) or (2) because they are unsupported by any facts regarding ***acts or transactions in Georgia***—like meetings, negotiating or executing contracts, or persistent phone or email contact. Allegations that an out-of-state investor "exercised significant control over the operation of" a Georgia corporation, without factual allegations of in-state acts or communications in connection with such "control," do not satisfy the Georgia long-arm statute. *Knieper*, 2016 WL 9450454, at *3, *7.

Plaintiffs' conclusory allegations of the Centerbridge Defendants' purported "diversion of KIK's assets, revenue, and free cash flow," ¶ 81, likewise do not satisfy subsection (1) or (2). These "vague allegations" of "actions that diluted [KIK's] assets and equity," *Knieper,* 2016 WL 9450454, at

*7, supply no facts that would allow the Court to assess what, if any, acts, conduct, or transactions by either Centerbridge Defendant are alleged to have occurred within the state.

As to subsection (3) of the long-arm statute, Plaintiffs allege, again in conclusory fashion, that the Centerbridge Defendants "derived substantial revenue from products that are shipped out of the Conyers Plant." ¶ 89. Even in attempting to recite the applicable standard, Plaintiffs miss the mark. Subsection (3) requires substantial revenue from "goods used or consumed or services rendered in the state." OCGA § 9–10–91(3). But here, the Complaint contains no factual allegations regarding revenue earned by CB Partners or CB Fund from goods used or consumed or services rendered *in the state*. Where, as here, Plaintiffs have not adequately alleged an alter ego relationship—*see* Section I.A., *supra*—they cannot meet this burden by attempting to attribute Bio-Lab's or KIK's revenue to CB Fund merely because it holds an indirect controlling stake in KIK. *See Hicks* v. *Universal Health Servs.*, 874 S.E.2d 877, 886 (Ga. Ct. App. 2022). And they certainly cannot do so as to CB Partners, which is not alleged to own stock in Bio-Lab or KIK.

## B.    <u>Plaintiffs' Claims Do Not Satisfy Due Process</u>

A court may exercise personal jurisdiction consistent with the Due Process Clause based on general or specific personal jurisdiction. Because neither applies here, Plaintiffs' claims must be dismissed.

18

### 1. **Plaintiffs Fail to Allege General Jurisdiction**

The Supreme Court has identified two principal bases for general jurisdiction: (1) a company's place of incorporation, and (2) its principal place of business. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137–39 (2014). Because neither Centerbridge Defendant was incorporated or headquartered in Georgia, ¶¶ 60, 62, they are not subject to general jurisdiction.

### 2. **Plaintiffs Fail to Allege Specific Jurisdiction**

Plaintiffs' claims also do not support specific jurisdiction. In assessing specific jurisdiction, courts examine: (1) whether the plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum; (2) whether the defendant "purposefully availed itself of the privilege of conducting activities within the forum state"; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Waite* v. *All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (quotation omitted). Purposeful availment requires "that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship there." *Ford Motor Co.* v. *Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021) (cleaned up).

Plaintiffs' allegations cannot support specific jurisdiction for the same reasons they do not satisfy the long-arm statute. As discussed *supra* Section II.A., the Complaint is devoid of factual allegations that CB Partners or CB

Fund "deliberately engaged in significant activities within" Georgia. *Diamond Crystal*, 593 F.3d at 1268. Instead, Plaintiffs' claims against the Centerbridge Defendants principally "arise out of or relate to" the Centerbridge Defendants' alleged "diversion of KIK's assets, revenue, and free cash flow." ¶ 81. Allegations that a defendant "has an ownership interest in" and "[r]eceiv[ed] money" from a local company, however, do not suffice to show purposeful availment. *Knieper,* 2016 WL 9450454, at *14. Any "diversion" here is not alleged to have occurred in or been targeted at Georgia, but merely to have had an impact in Georgia through a lengthy and tenuous causal chain. *See Pascarelli* v. *Koehler,* 816 S.E.2d 723, 725–27 (Ga. Ct. App. 2018) ("attenuated" contacts do not satisfy due process); *Nottingham-Spirk Design Assocs.* v. *Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 568–69 (N.D. Ohio 2022) (no jurisdiction over private equity sponsor of in-state company's parent); *Lamensdorf* v. *N.Y.U.*, 2010 WL 11519546, at *6 (M.D. Ga. Mar. 24, 2010) (no jurisdiction over out-of-state funders and instructors of film crew involved in accident in Georgia); *N. Am. Med. Corp.* v. *Axiom Worldwide, Inc.*, 2009 WL 1035248, at *5 (N.D. Ga. Apr. 9, 2009) (no jurisdiction over out-of-state supplier of medical data allegedly misused in Georgia).[6]

_____

[6] Plaintiffs' group pleading is also improper in the due process context. *See, e.g.*, *Henry* v. *Norcross*, 2016 WL 9558939, at *5 (N.D. Ga. Nov. 14, 2016) (to establish a *prima facie* case of personal jurisdiction, "each defendant's contacts

Plaintiffs' conclusory allegations that the alleged consequences to Bio-Lab of the Centerbridge Defendants' investment conduct were "foreseeable" or "intended," ¶¶ 82, 86, fail as a matter of law. *See World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 295 (1980) ("'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."); *Giraldo* v. *Drummond Co.*, 2011 WL 13134198, at *12 (N.D. Ala. Mar. 11, 2011) (allegations of "intent" did not state a *prima facie* case of purposeful availment). And as explained *supra* at 17, Plaintiffs' information-and-belief contention that "the Centerbridge Defendants controlled operations at the Conyers Plant," ¶ 291, is too conclusory to support the exercise of personal jurisdiction over Defendants. *See Glob. Garlic, Inc.* v. *Distribuidora Mi Honduras, LLC*, 2021 WL 5034376, at *5 (N.D. Ga. Apr. 29, 2021).

## III. <u>Plaintiffs Fail to State a Claim Against CB Partners or CB Fund</u>

### A. <u>The Complaint Does Not Allege Any Recognized Tort Duty</u>

An essential element of any tort claim is the existence of a duty owed by the defendant to the plaintiff. *Williams* v. *Booker*, 712 S.E.2d 617, 621 (Ga. Ct. App. 2011). Unless the corporate veil is pierced, a parent generally does not owe a duty to third parties with respect to safety measures at a subsidiary's

---

with the forum State must be assessed individually") (cleaned up), *adopted*, 2017 WL 3836125 (N.D. Ga. Jan. 5, 2017).

facility. In *BestFoods*, for example, the Supreme Court held that a parent will be subject to direct liability for an accident at a subsidiary's plant only when "the parent operates the facility in the stead of its subsidiary or alongside the subsidiary in some sort of a joint venture" or an officer of the parent directs facility operations on the parent's behalf. 524 U.S. at 71. In this context, "operates" means operating *the safety hazard at issue*. Georgia case law similarly provides that a parent owes a safety duty to third parties at a subsidiary's place of business only if the parent has "completely taken over" the subsidiary's safety duty and induced reliance. *BP Expl. & Oil, Inc.* v. *Jones*, 558 S.E.2d 398, 405–07 (Ga. Ct. App. 2001); *see Hyde* v. *Schlotzsky's, Inc.*, 561 S.E.2d 876, 878 (Ga. Ct. App. 2002) (franchisor not liable for poor hygiene at franchisee's store).[7]

Here, there are no factual allegations that any employee of CB Partners or CB Fund had a management or oversight role with respect to developing or implementing safety measures at the Conyers Plant. And Plaintiffs do not allege facts supporting a conclusion that CB Partners or CB Fund dictated any safety measure, safety budgeting decision, or operational decision at the

---

[7] *See also Fletcher* v. *Martin Elecs., Inc.*, 825 F.2d 301, 303 (11th Cir. 1987) (holding parent not liable for employee's injury at subsidiary's plant because, though the subsidiary "paid an annual management fee to [the parent]," the parent had not "assumed management responsibility to provide a safe workplace") (Florida law).

Conyers Plant.  Instead, Plaintiffs merely allege that, "[u]pon information and belief, the Centerbridge Defendants controlled operations at the Conyers Plant, and affirmatively prevented KIK and BioLabs [sic] from undertaking necessary safety expenditures."  ¶ 291.  Courts have rejected similar fact-free allegations as a basis for holding a parent liable as a facility "operator." *Canadyne-Georgia Corp.* v. *NationsBank, N.A. (S.)*, 982 F. Supp. 886, 891 (M.D. Ga. 1997), *other holdings appealed and rev'd*, 183 F.3d 1269 (11th Cir. 1999); *see Taylor* v. *Bd. of Regents*, 2022 WL 4857906, at *13 (Oct. 3, 2022) (Geraghty, J.) ("Conclusory allegations" made "on information and belief . . . are not 'entitled to the assumption of truth' at the motion to dismiss stage." (quoting *Iqbal*, 556 U.S. at 664)).[8]

### B.    **Plaintiffs' Tortious Undercapitalization Theory Fails**

Plaintiffs' "tortious undercapitalization" theory, ¶¶ 173–218, also does not state a claim for direct liability against CB Partners or CB Fund.  The Centerbridge Defendants have identified no decision from a Georgia court

---

[8] The inadequacy of Plaintiffs' allegations regarding control of the Conyers Plant operations is compounded by Plaintiffs' group pleading.  They repeatedly allege that "Defendants" collectively engaged in conduct involving the Conyers Plant without specifying who did what.  *See, e.g.*, ¶¶ 284–90.  Such "shorthand" cannot plausibly allege claims against the Centerbridge Defendants, and particularly not against CB Partners, which is not alleged to have invested in KIK.  *IOU Cent., Inc.* v. *Embryolisse USA, Inc.*, 2021 WL 2557501, at *5 (N.D. Ga. Mar. 22, 2021).

holding that a majority stockholder has a "duty to capitalize" a subsidiary that runs to third parties. The lack of state-law precedent warrants dismissal. *See Williams*, 712 S.E.2d at 621–22 (no liability for alleged breach of duty not recognized by Georgia law); *Parker* v. *Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1302 (N.D. Ga. 2005) (dismissing claim recognized by "no Georgia court"), *aff'd*, 230 F. App'x 878 (11th Cir. 2007). And to hold CB Partners or CB Fund liable for alleged safety violations at the Conyers Plant, because the Centerbridge Defendants allegedly "forced" Bio-Lab's parent to pay dividends and issue debt, would contradict the Supreme Court's holdings in *BestFoods* that (1) a parent's direct liability must be premised on operation of "the facility itself," not the subsidiary, and (2) "supervision of the subsidiary's finance and capital budget decisions" is not a basis for direct liability. 524 U.S. at 68, 72.

Cases presenting similar facts as those alleged here are in accord. For example, much like here, in *In re First Reserve Mgmt.*, 671 S.W.3d 653, 662 (Tex. 2023), plaintiffs alleged that a private equity sponsor was directly liable for an explosion at a petrochemical plant owned by a portfolio company's subsidiary because the private equity sponsor and portfolio company had "refused to authorize a turnaround and other safety expenditures in order to keep [the subsidiary's] balance sheet strong for a possible sale." *Id.* at 662. The court held that liability could not be "predicated on . . . the failure to make an expenditure, or a parent's supervision of its subsidiary's financial and

budgetary decisions," and held that the claim against First Reserve should have been dismissed. *Id. See also Waste Mgmt., Inc.* v. *Superior Ct.*, 119 Cal. App. 4th 105, 111 (2004) ("Negligently controlling or intentionally mismanaging a subsidiary's budget does not create a duty on the part of the parent corporation to ensure safety.").

Plaintiffs' "tortious undercapitalization" allegations certainly cannot be the basis for any claim against CB Partners. Though Plaintiffs try to blur the distinction with improper group pleading, CB Partners is not alleged to have invested in KIK, and therefore would not have, for example, assigned acquisition debt to KIK or gotten dividend payments from KIK.

## CONCLUSION

For all these reasons, this Court should dismiss all claims in the Complaint against the Centerbridge Defendants under Rules 12(b)(2) and12(b)(6). Because Plaintiffs already have had multiple opportunities to amend, *see, e.g.*, Dkts. 55, 138, the claims against the Centerbridge Defendants should be dismissed with prejudice.

25

Respectfully submitted this 24th day of February, 2025.

BRADLEY ARANT BOULT
CUMMINGS LLP

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
GA Bar No. 020914
canulewicz@bradley.com
R. Thomas Warburton
GA Bar No. 218175
twarburton@bradley.com
1230 Peachtree Street NE
Atlanta, GA 30309
Tel.: (404) 868-2100

– and –

Kimberly Branscome, *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067-3006
Tel.: (310) 982-4350
kbranscome@paulweiss.com

Yahonnes Cleary, *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel.: (212) 373-3000
ycleary@paulweiss.com

*Counsel for Centerbridge Partners, L.P.
and Centerbridge Capital Partners III,
L.P.*

26

## **LOCAL RULE 5.1 CERTIFICATION**

I hereby certify that the foregoing has been prepared in Century Schoolbook 13-point font in accordance with Local Rule 5.1.

This 24th day of February, 2025.

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
GA Bar No. 020914

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 24th day of February, 2025.

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
GA Bar No. 020914

28