# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| *In Re*: BioLab Class Actions | Civ. A. No.<br>1:24-CV-4407-SEG |

## PLAINTIFFS' RESPONSE TO BIOLAB AND
## KIK DEFENDANTS' MOTION TO DISMISS

Jason J. Carter
BONDURANT MIXSON & ELMORE
1201 West Peachtree Street, Suite 3900
Atlanta, Georgia 30309

L. Chris Stewart
STEWART MILLER SIMMONS
55 Ivan Allen Jr. Boulevard, Suite 700
Atlanta, Georgia 30308

Daniel R. Flynn
DICELLO LEVITT
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

Jean Sutton Martin
MORGAN & MORGAN
201 N. Franklin St., Seventh Floor
Tampa, Florida 33602

## TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................3

    I.    Plaintiffs plausibly plead a right to recover medical
        monitoring costs. .................................................................4

        A. Plaintiffs have sufficiently pled the threat of an "imminent
            and substantial" injury. ....................................................5

             1.  Georgia law does not require a present injury to support
                 recovery of monitoring costs. .......................................5

             2.  *Boyd v. Orkin* and its federal progeny cannot change the
                 standard set by the Georgia Supreme Court in *Collins*...............7

             3.  The toxic chemical plume and property debris creates an
                 imminent and substantial threat of future injury to class
                 members. ...............................................................9

        B. Many states have found that a substantial risk of latent disease
            is a cognizable injury for purposes of medical monitoring. ..........10

        C. Medical monitoring is an equitable remedy precisely because
            plaintiffs have no adequate remedy at law. ...................................12

    II.    Plaintiffs plausibly plead a claim for ultrahazardous activity and
        strict liability. ......................................................................13

CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

## Cases:

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 549 (5th Cir. 1987) .......................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................3

*Ayers v. Jackson*,
    525 A.2d 287 (N.J. 1987) ....................................................................10, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................3, 4

*Berger v. Plantation Pipeline Co.*,
    121 Ga.App. 362 (1970) .....................................................................15, 18

*Bower v. Westinghouse Elec. Corp.*,
    522 S.E.2d 424 (W.Va. 1999) .............................................................10, 11

*Boyd v. Orkin Exterminating Co.*,
    191 Ga.App. 38 (1989) .......................................................................*passim*

*Brooks v. Ready Mix Concrete Co.*,
    94 Ga.App. 791 (1956) .............................................................................18

*Burns v. Jaquays Mining Corp.*,
    752 P.2d 28 (Ariz. App. 1987) ..................................................................10

*Collins v. Athens Orthopedic Clinic, P.A.*,
    307 Ga. 555 (2019) ............................................................................*passim*

*Combustion Chems. v. Spires*,
    209 Ga.App. 240 (1993) ....................................................................15, 16

*Dep't of Lab. v. McConnell*,
    305 Ga. 812 (2019) ..................................................................................17

*Donovan v. Philip Morris USA, Inc.*,
  268 F.R.D. 1 (D. Mass. 2010).................................................................5, 13

*Effkay Enters. v. J.H. Cleaners, Inc.*,
  Civil Action No. 07-cv-02521-LTB,
  2008 WL 2357698 (D. Colo. June 5, 2008) .................................................19

*Exxon Mobil Corp. v. Albright*,
  71 A.3d 30 (Md. 2013) ................................................................................10

*Freeman v. Pitts*,
  503 U.S. 467 (1992).....................................................................................12

*Friends for All Children, Inc. v. Lockhead Aircraft Corp.*,
  746 F.2d 825 (D.C. Cir. 1984) ...........................................................4, 10, 11

*Gullock v. Spectrum Sciences & Software*,
  146 F. Supp. 2d 1364 (M.D. Ga. 2001) .................................................17, 18

*Hansen v. Mountain Fuel Supply*,
  858 P.2d 970 (Utah 1993) ......................................................................10, 11

*Henry v. Dow Chem. Co.*,
  701 N.W.2d 684 (Mich. 2005)......................................................................10

*In re E. Palestine Train Derailment*,
  No. 4:23CV0242, 2024 U.S. Dist. LEXIS 43837
  (N.D. Ohio Mar. 13, 2024) ..........................................................................22

*Indep. Wireless Tel. Co. v. Radio Corp. of Am.*,
  269 U.S. 459 (1926).....................................................................................12

*Lowry v. Cochran*,
  305 Ga.App. 240 (2010) ...............................................................................17

*McEntyre v. Sam's E., Inc.*,
  313 Ga. 429 (2022) .......................................................................................15

*McLendon v. Becton, Dickinson & Co.*
    No. 1:20-CV-04671-WMR, 2021 WL 6752200
    (N.D. Ga. Feb. 11, 2021) ...............................................................................15

*Meyer v. Fluor Corp.,*
    220 S.W.3d 712 (Mo. 2007) ..........................................................................10

*Miranda v. Shell Oil Co.,*
    26 Cal. Rptr. 2d 655 (Cal.App. 993)..............................................................11

*Naga Hanuman Fish Packers v. Sivani Int'l LLC,*
    No. 1:23-CV-2019-SEG, 2023 WL 8505750
    (N.D. Ga. Oct. 20, 2023) ..................................................................................4

*Parker v. Brush Wellman, Inc.,*
    377 F. Supp. 2d 1290 (N.D. Ga. 2005).........................................................15

*Parker v. Wellman,*
    230 F.App'x 878 (11th Cir. 2007).................................................................6, 7

*Petito v. A.H. Robins Co.,*
    750 So.2d 103 (Fla. Ct. App. 1999).........................................................10, 11

*Potter v. Firestone Tire & Rubber Co.,*
    863 P.2d 795 (Cal. 1993) .........................................................................10, 11

*Ravan v. Greenville Cty.,*
    434 S.E.2d 296 (S.C. Ct. App. 1993) ............................................................16

*Redland Soccer Club v. Dep't of the Army,*
    696 A.2d 137 (Pa. 1997).........................................................................10, 11

*S. Ent. Television, Inc. v. Comcast Corp.,*
    270 F. App'x 747 (11th Cir. 2008)..................................................................4

*Sadler v. PacifiCare of Nev., Inc.,*
    340 P.3d 1264 (Nev. 2014) ...........................................................................10

*Schwartzman, Inc. v. Atchison, T. & S.F. Ry.,*
    842 F. Supp. 475 (D.N.M. 1993).............................................................16, 19

*Shongo v. CSX Transp., Inc.*,
    No. RDB-22-2684, 2023 WL 4027121
    (D. Md. June 14, 2023)....................................................................20

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    431 F. Supp. 3d 448 (D. Vt. 2019)..................................................10

*Weatherford v. E.I. Dupont de Neumours & Co.*,
    No. 4:22-CV-1427, 2023 WL 11015357
    (D.S.C. Sept. 26, 2023)...................................................................16

*Weatherly v. Eastman Chem. Co.*,
    No. E2022-01374-COA-R3-CV, 2023 WL 5013823
    (Tenn. Ct. App. Aug. 7, 2023).......................................................16

*Wilson v. Brush Wellman, Inc.*,
    817 N.E.2d 59 (Ohio 2004) ...........................................................10

**<u>Statutes:</u>**

Fed. R. Civ. P. 8.............................................................................14, 22

O.C.G.A. § 23-1-8.............................................................................12

**INTRODUCTION**

This case asserts ordinary claims for an extraordinary event: the September 29, 2024 chemical fire at BioLab's Conyers, Georgia chemical plant caused by a "runaway" chemical reaction involving trichloroisocyanuric acid ("TCCA"). Doc. 138 ¶ 3. The fire caused a toxic chemical plume visible for up to 30 miles and contained not just TCCA, which can severely irritate eyes and skin, and cause burns and even irreversible eye damage, but also hydrochloric acid, hydrogen cyanide, hydrogen bromide, phosgene, and other chemicals. *Id.* ¶¶ 270, 424, 426. The Conyers fire[1] shut down a major interstate and highways, displaced more than 17,000 residents under an evacuation order, confined more than 90,000 residents to their homes under a shelter-in-place order, and effectively shuttered 2,200 businesses for days. *Id.* ¶¶ 310–18. It deposited toxic ash on property for miles (*id.* ¶¶ 360, 365, 370, 373, 376) and sent hundreds of residents to the emergency room in the immediate aftermath. *Id.* ¶ 355.

Although the event was extraordinary, the claims asserted are not. Plaintiffs brought claims for negligence, trespass, nuisance, and ultrahazardous activity/strict liability. One of the remedies Plaintiffs seek is the establishment of a medical monitoring fund—money that would reimburse class members for the costs of

---

[1] Unless otherwise noted, this brief uses capitalized terms as defined in the Consolidated Class Action Complaint ("the Complaint"). Doc. 138.

ongoing testing for likely, but latent, illnesses or disease processes. BioLab and the KIK Defendants have moved to dismiss the strict liability claim and the medical monitoring claim.[2] They do not move to dismiss the negligence, trespass, or nuisance claims.

The Conyers Plant stored and processed TCCA for production into finished pool and spa treatment consumer products. Doc. 138 ¶ 2. When TCCA comes into contact with water it causes an exothermic chemical reaction. When a small amount of TCCA comes into contact with a large amount of water like a swimming pool, the heat from the reaction is dissipated by the water. However, when a large amount of TCCA comes into contact with a small amount of water, the heat cannot be dissipated efficiently. This can set off a "thermal decomposition" chain reaction that "can release toxic and corrosive products such as chlorine gas and hydrogen chloride." *Id*. ¶¶ 3, 267, 270–72. Tellingly, this was not the first time Defendants' handling and storage of TCCA has caused a fire. The 2024 BioLab fire was the fifth known fire at the Conyers Plant since 2004 and the third since 2020. *Id*. ¶ 4. Other BioLab plants have similar history. For example, BioLab's Lake Charles Plant has had three fires in the last five years, including a catastrophic fire in 2020. *Id*. ¶¶ 257, 262, 263.

---

[2] Like injunctive relief, punitive damages, and stubborn litigiousness attorneys' fees, medical monitoring is a remedy and not a cause of action. For ease of reading, however, Plaintiffs will use the term "claim" colloquially as a shorthand for the right to recover these costs an equitable remedy.

The full extent of the class members' chemical exposure is unknown because Defendants have thus far refused to give Plaintiffs a list of all the chemicals stored at the Conyers Plant the day of the fire. But we know it contained at least TCCA and DCCA, which "can release toxic and corrosive products such as chlorine gas and hydrogen chloride gas and hydrogen chloride upon decomposition." *Id*. ¶¶ 267. Health researchers, including those at Morehouse School of Medicine, are already beginning to study the "long-term risks, including cardiovascular, neurological, and cancer-related conditions" of chemical exposure from the BioLab fire.[3]

Defendants' partial motion to dismiss Plaintiffs' strict liability and medical monitoring claims should be denied.

## ARGUMENT

Rule 12(b)(6) requires only that a complaint "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's allegations are construed liberally "because the issue is not whether plaintiff will ultimately prevail

---

[3] "New Study to Track Long-Term Health Effects of BioLab Fire in Conyers," GPB News, www.msm.edu/RSSFeedArticles/2025/February/BioLab-Fire-Study.php.

[4] Unless otherwise noted, quotations, citations, and alterations original to legal citations are omitted, and alterations and emphasis within this brief are added.

but whether the plaintiff is entitled to offer evidence to support its claims." *S. Ent. Television, Inc. v. Comcast Corp.*, 270 F. App'x 747, 748 (11th Cir. 2008) (per curiam). In fact, "[a] complaint may proceed even if it strikes the judge that proof of the facts alleged is 'improbable' or that recovery is 'remote and unlikely.'" *Naga Hanuman Fish Packers v. Sivani Int'l LLC*, No. 1:23-CV-2019-SEG, 2023 WL 8505750, at *2 (N.D. Ga. Oct. 20, 2023) (quoting *Twombly*, 550 U.S. at 556).

## I.    Plaintiffs plausibly plead a right to recover medical monitoring costs.

Plaintiffs seek equitable relief for, among other things, the establishment of a medical monitoring fund to compensate them for ongoing screening to detect and prevent illness. Doc. 138 ¶ 422. Such medical monitoring is reasonably and medically necessary for those exposed to the chemicals released in the fire. *Id*. ¶ 428. At the outset, it is important to distinguish between medical monitoring and a personal injury claim for an increased risk of future harm. An increased, or enhanced, risk claim seeks present damages for a possible, future injury, even though there is no evidence of current harm. Medical monitoring is an equitable remedy that seeks only to recover the costs of future testing. Because it seeks "funds for diagnostic examinations, [which] do not simply represent compensation for past injury, but [are funds] required to prevent future injury," courts have recognized that medical monitoring is appropriately sought via equitable relief. *Friends for All Children, Inc. v. Lockhead Aircraft Corp.*, 746 F.2d 825, 830 (D.C. Cir. 1984); *id*. (medical

monitoring therefore "creates no new equitable principle."); *Donovan v. Philip Morris USA, Inc*., 268 F.R.D. 1, 22 (D. Mass. 2010) (in discussing appropriateness of 23(b)(2) class, surveying cases and finding "[m]any courts have found medical monitoring relief structured as this one would be to be injunctive").

Defendants move to dismiss Plaintiffs' medical monitoring claim for failing "to plead a cognizable injury" after excluding "personal or bodily injury claims" from the class definition. Doc. 176-1 at 2, 6. But it is precisely the exclusion of this remedy at law for personal injury damages—many of which won't manifest for years—that warrants the equitable relief of a medical monitoring fund. While there is no Georgia case expressly addressing what type of injury is sufficient to establish a medical monitoring fund specifically, the Georgia Supreme Court's holdings in other monitoring cases, case law from other jurisdictions, and the class members' lack of an adequate remedy at law all indicate such a remedy is available when, as here, there is a significant risk of latent diseases caused by toxic chemical exposure.

### A. Plaintiffs have sufficiently pled the threat of an "imminent and substantial" injury.

#### 1. Georgia law does not require a present injury to support recovery of monitoring costs.

The point of medical monitoring is to prevent or mitigate a likely, but latent, future illness or disease caused by a defendant's misconduct. Requiring a current injury to provide testing for a latent injury doesn't make sense. The Georgia Supreme

Court agrees. In *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555 (2019), the Court held that the risk of an "imminent and substantial" injury was a cognizable injury that supported a claim to recover the costs related to monitoring for future harm. *Id.* at 556.[5] The *Collins* defendant was a medical clinic and the plaintiffs were a class of patients whose sensitive personal data was stolen from the clinic by a hacker. *Id.* After the clinic refused to pay ransom, the hacker made at least some of the stolen personal data available on a data-storage website and offered it for sale on the dark web. *Id.* The plaintiffs asserted negligence and other claims against the clinic and sought "costs associated with detection and prevention" of future identity theft. *Id.* at 564. The Court of Appeals affirmed the trial court's dismissal, reasoning that, "while prudent," the "credit monitoring and other precautionary measures" addressed only "future, speculative harm." *Id*. at 557.

The Georgia Supreme Court reversed. It credited the plaintiffs' allegation "that criminals are now able to assume their identities fraudulently and that the risk

---

[5] The Supreme Court did note that, although the Court of Appeals in *Collins* discussed cases involving future physical injuries, such medical monitoring claim was not before it and therefore it "expresse[d] no opinion on [its] viability." *Id*. 314, n.2. It was, however, skeptical of the Court of Appeals' reliance on *Parker v. Wellman*, 230 F.App'x 878 (11th Cir. 2007), a case Defendants rely on heavily. In return, *Parker* relied on *Boyd v. Orkin Exterminating Co.*, 191 Ga.App. 38 (1989), another case Defendants lean on. The Court noted that *Parker* was an unpublished decision "surmising" that *Boyd* "suggests" a Georgia court would not recognize a monitoring claim in the absence of present injury. *Collins*, 307 Ga. at 559–60, n.2. *Boyd* and its progeny are discussed in more detail below.

of such identity theft is 'imminent and substantial.'" *Id*. at 561. The Court therefore held it was a "factual allegation about the likelihood that any given class member will have her identity stolen as a result of the data breach." *Id*.. Because *Collins* was on a motion to dismiss, the Court acknowledged it "must accept this factual allegation as true" and reversed the Court of Appeals' dismissal. *Id.*

2. ***Boyd v. Orkin* and its federal progeny cannot change the standard set by the Georgia Supreme Court in *Collins*.**

Defendants contend that *Boyd v. Orkin Exterminating Co.*, 191 Ga.App. 38 (1989) and its federal progeny, *e.g., Parker v. Wellman*, 230 F.App'x 878 (11th Cir. 2007), require dismissing Plaintiffs' medical monitoring remedy. Defendants are wrong.

First, they ignore *Collins* altogether—as do their cases. All the cases cited by Defendants—*Boyd*, the single Georgia case they cite, and the various federal cases relying on *Boyd*—were decided before *Collins*. This means that any reasoning in these cases that is inconsistent with the Supreme Court's directive that an "imminent and substantial risk" of injury is a cognizable injury, or holdings based on such inconsistent reasoning, must be reconsidered in light of *Collins*.

Second, Defendants misunderstand the facts and misinterpret the Court of Appeals' holdings in *Boyd*.[6] The facts and claims in *Boyd* are different from those

---

[6] Because all the federal court opinions rely on *Boyd* and make the same errors as Defendants, Plaintiffs will focus this discussion on *Boyd*.

here. And to the extent *Boyd* has any bearing on this case, it supports the availability of medical monitoring even without current injury. *Boyd* was a personal injury case against a pest control company in which the plaintiffs sought to recover monitoring costs as future medical expenses and present, compensatory damages for an enhanced risk of future harm, alleging that the presence of certain biomarkers in their bloodstream, a "subclinical" injury, was a current injury to support future damages. 191 Ga.App. at 40. The *Boyd* court rejected the idea that a subclinical "injury" was a current injury. This is where Defendants' discussion of *Boyd* ends. However, that is not the end of the court's holding.

The Court of Appeals in *Boyd* also held that the plaintiff could recover monitoring costs for a future illness as future medical expenses, if he could prove that "the presence of these metabolites had caused *or would eventually cause* actual disease…." *Id*. Because the plaintiff in *Boyd* did not, however, have such expert testimony at the summary judgment stage, he could not recover "actual damages" for such future costs. *Id*. Thus, to the extent *Boyd* offers insight into a medical monitoring claim, it suggests that a plaintiff *can* recover monitoring costs for future injuries even absent current injury. That inquiry—however—requires evidence and therefore cannot be decided on the pleadings. *See id*.

### 3. The toxic chemical plume and property debris creates an imminent and substantial threat of future injury to class members.

Plaintiffs allege that as a result of the September 29, 2024 fire, fumes, debris, and massive walls of smoke containing toxic chemicals billowed throughout the surrounding area. *See, e.g*., Doc. 138 ¶¶ 423–24. The plume from that fire contained harmful chemicals, for which even short-term exposures can cause severe, life-changing injuries. *Id*. ¶¶ 426–27. For instance, chlorine is toxic and immediately dangerous to life or health if inhaled. *Id*; *see also, e.g., id*. ¶ 347 ("People with lung disease may not be able to breathe as deeply or as vigorously as usual, and they may experience symptoms such as coughing, phlegm, chest discomfort, wheezing, and shortness of breath."); *id*. ¶ 369 (alleging burning eyes and nose, dizziness, headaches, and a sore throat). The plume also contained hydrochloric acid, hydrogen cyanide, hydrogen bromide, and phosgene, among other chemicals *Id*. ¶ 426. Plaintiffs have further alleged that this significant exposure to hazardous substances has increased their health risks, such that a reasonable physician would order medical monitoring, presently and in the future, including, but not limited to, periodic diagnostic testing and necessary clinical examinations for early detection and treatment of respiratory diseases, cardiovascular diseases, and other serious illnesses, diseases, and disease processes for which they face increased risks. *Id*. ¶¶ 428, 430.

These allegations, which must be accepted as true and construed in the light most favorable to Plaintiffs, "raise more than a mere specter of harm"; they allege a future risk that is "imminent and substantial," which is a cognizable injury. *Collins*, 307 Ga. at 563–64.

## B. Many states have found that a substantial risk of latent disease is a cognizable injury for purposes of medical monitoring.

Although the Supreme Court of Georgia has yet to expressly consider whether medical monitoring costs are recoverable in the absence of physical injuries, many other jurisdictions have endorsed recovery of such costs under traditional tort doctrines.[7]

The District Court of D.C. famously analogized a medical monitoring fund to an accident victim that "undergo[es] a battery of tests to determine whether he has suffered any internal head injuries." *Friends for All Children,* 746 F.2d at 825. In this hypothetical, the accident victim is cleared of all injuries but sues the other driver to

---

[7] *See, e.g.*, *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33 (Ariz. App. 1987); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822 (Cal. 1993); *Petito v. A.H. Robins Co.*, 750 So.2d 103, 105 (Fla. Ct. App. 1999); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 75–76 (Md. 2013); *Meyer v. Fluor Corp.*, 220 S.W.3d 712, 717 (Mo. 2007); *Sadler v. PacifiCare of Nev., Inc.*, 340 P.3d 1264, 1269–72 (Nev. 2014). *Ayers v. Jackson*, 525 A.2d 287, 304–05 (N.J. 1987); *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59 (Ohio 2004); *Redland Soccer Club v. Dep't of the Army*, 696 A.2d 137, 144–46 (Pa. 1997); *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 977 (Utah 1993); Vt. Stat. tit. 12, § 7201 (codifying prior common law elements as set forth in *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 466 (D. Vt. 2019); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 430 (W.Va. 1999). *But see, e.g., Henry v. Dow Chem. Co.*, 701 N.W.2d 684 (Mich. 2005).

recover "the substantial cost of the diagnostic examinations." *Id.* Under such circumstances, the court noted, "[i]t is clear that even in the absence of physical injury [the plaintiff] ought to be able to recover the cost for the various diagnostic examinations proximately caused by [the defendant's] negligent action." *Id.* Applying this analogy to toxic tort cases, another court held that "[t]he outcome should be the same when the operative incident is toxic exposure rather than collision and the potential future harm is disease rather than physical impairment." *Miranda v. Shell Oil Co*., 26 Cal. Rptr. 2d 655, 658 (Cal.App. 993) (citing *Friends for All Children*).

The states that have endorsed a medical monitoring claim without the need to prove present injury have done in so part by recognizing that requiring a present physical injury is particularly problematic in a toxic tort case. Forcing latent injury to advance so far that it becomes apparent and potentially life-altering negates the remedy's purpose: early detection, which reduces medical costs and benefits not only the individuals involved, but also the medical system generally. Afterall, "[i]n many cases a person will not be able to afford [necessary diagnostic] tests, and refusing to allow medical monitoring damages would in effect deny him or her access to potentially life-saving treatment.".[8] *Hansen*, 858 P.2d at 976–77. Courts have also

---

[8] *See also*, *Petito v. A.H. Robins Co*., 750 So.2d 103, 105 (Fla. Ct. App. 1999); *Potter*, 863 P.2d at 824; *Bower*, 522 S.E.2d at 431; *Redland Soccer Club,* 696 A.2d at 145.

recognized "[t]he difficulty of proving causation, where the disease is manifested years after exposure." This limits plaintiffs' ability to recover their actual damages and diminishes the deterrence value for polluters "because the costs of proper disposal are often viewed by polluters as exceeding the risk of tort liability." *Ayers*, 525 A.2d at 311.

### C. Medical monitoring is an equitable remedy precisely because plaintiffs have no adequate remedy at law.

Equity will not suffer a wrong without a remedy. *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 472 (1926). "While this maxim is, of course, not of universal application, it justifies the short step needed … where otherwise justice … would fail." *Id*. Plaintiffs' request for a medical monitoring fund is proper because they have alleged no adequate remedy at law for the long-term risk of disease or other illness caused by their exposure to these toxic chemicals. "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action." *Freeman v. Pitts*, 503 U.S. 467, 487 (1992); *see also* O.C.G.A. § 23-1-8 ("Equity considers that done which ought to be done and directs its relief accordingly."). As noted above, forcing Plaintiffs to wait to recover damages until their disease has already manifested is not an adequate remedy at law—limiting a plaintiff to this relief does not "make then whole"—it makes the injury Defendants caused *worse*.

The Complaint alleges that Plaintiffs and class members presently suffer increased risks of serious illness, such that a reasonable physician would order medical monitoring to address latent disease processes. *See* Doc. 138 ¶¶ 428–34. Thus, Plaintiffs have a present and future need to incur the cost of medically necessary diagnostic testing. Because Plaintiffs have alleged injuries they are likely to suffer harm in the future—injuries whose risk can be mitigated with medically necessary diagnostic testing—injunctive relief for medical monitoring fits to the facts at hand, as other courts have found in similar cases. *Friends for All Children,* 746 F.2d at 830 ("[T]he funds for diagnostic examinations do not simply represent compensation for past injury, but are required to prevent future injury. To allow this injunction to stand therefore creates no new equitable principle."); *Donovan,* 268 F.R.D. at 22 (in discussing appropriateness of 23(b)(2) class, surveying cases and finding "[m]any courts have found medical monitoring relief structured as this one would be to be injunctive").

## II. Plaintiffs plausibly plead a claim for ultrahazardous activity and strict liability.

In addition to their negligence-based claims, which Defendants did not move to dismiss, Plaintiffs also brought a claim for ultrahazardous activity and strict liability, which Defendants have moved to dismiss. Defendants contend that, because Plaintiffs allege the fire could have been prevented by the exercise of due care, Plaintiffs cannot maintain a strict liability claim. Doc. 176-1 at 8–9. However,

13

the Federal Rules allow Plaintiffs to plead causes of action in the alternative. Fed. R. Civ. P. 8(d)(3). In the alternative, if it is true, as Defendants contend, that they exercised reasonable care—but the facility still caught fire and exploded—that is persuasive evidence that their activities are inherently dangerous such that Defendants should be subject to strict liability.

The unique risk of manufacturing and storing TCCA is the high probability that the chemical will come into contact with a small amount of water and create "a runaway reaction" that "can release toxic and combustible gases into the air" and "initiate a fire and cause explosions." Doc. 138 ¶¶ 272, 3. Unfortunately, exploding chlorine plants seems to be an uncomfortably common occurrence. Including this fire, BioLab itself has had eight fires at its facilities since 2004, including six in the last five years. *Id*. ¶¶ 229–44; 257–63. And at least eleven fires involving swimming pool chemicals nationwide occurred between 1996 and 2000—the vast majority of which were caused by pool chemicals becoming wetted by a small quantity of water, including water leaked from a fire sprinkler. *Id*. ¶ 280.

Defendants first ignore binding precedent by arguing that the ultrahazardous claim should be dismissed for failure to plead a statutory duty imposing strict liability. Doc. 176-1 at 7. A statutory pronouncement of strict liability, however, is not necessary; the Georgia Supreme Court has recognized that "strict liability typically applies only to certain circumstances involving abnormally dangerous

activities *or* where the General Assembly has recognized a need to explicitly impose strict liability in tort for the protection of the public." *McEntyre v. Sam's E., Inc.*, 313 Ga. 429, 433–34 (2022).

Although the so-called "blasting" fact-pattern is the classic common-law application of the doctrine, *see, e.g.*, *McEntyre*, *id*. at 433 n.2 (citing *Berger v. Plantation Pipeline Co.*, 121 Ga.App. 362, 363 (1970)), it is not the exclusive one, and the storage of environmental pollutants may sustain a claim for strict liability. *See Combustion Chems. v. Spires*, 209 Ga.App. 240 (1993). In *Combustion Chemicals*, the defendant stored highly acidic water in ponds, which eventually polluted the plaintiffs' creek. *Id.* at 241. The Georgia Court of Appeals held that whether this was inherently dangerous for strict liability purposes was for the jury:

> [W]e cannot hold as a matter of law that the activity of holding highly acidic water in ponds which may pollute streams running through the property of adjoining landowners is not a dangerous activity.

*Id.* at 242; *see also Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1292, 1303 (N.D. Ga. 2005) (discussing *Combustion Chemicals* and declining to dismiss claim for strict liability arising from the manufacture and/or use of products containing beryllium). More recently, Judge Ray held in *McLendon v. Becton, Dickinson & Co.* that allegations the defendant "used" and "stored" ethylene oxide at their facility were sufficient to state a claim for ultrahazardous activity. No. 1:20-CV-04671-WMR, 2021 WL 6752200, at *1 (N.D. Ga. Feb. 11, 2021). Defendants do not explain

15

why there should be a different result here.

The result in *Combustion Chemicals* is consistent with cases across the country that recognize that "[t]he storage and disposal of toxic chemical waste poses the same threat to health and welfare today as the detonation of dynamite and impoundment of waters posed in years past." *Schwartzman, Inc. v. Atchison, T. & S.F. Ry.*, 842 F. Supp. 475, 479 (D.N.M. 1993); *see also, e.g.*, *Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-CV-1427, 2023 WL 11015357, at *6 (D.S.C. Sept. 26, 2023) (denying motion to dismiss strict liability claim where the complaint alleged that the defendants' manufacture and distribution of PFAS was "abnormally dangerous"); *Weatherly v. Eastman Chem. Co.*, No. E2022-01374-COA-R3-CV, 2023 WL 5013823, at *8 (Tenn. Ct. App. Aug. 7, 2023) (denying motion to dismiss strict liability claim alleging that a chemical process involving the transport of "high-pressure steam" through an "asbestos-lined steam pipe" was ultra-hazardous); *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 549, 549 (5th Cir. 1987) (noting in *dicta* that the "storage of toxic gas" falls "within the 'ultrahazardous' category"); *Ravan v. Greenville Cty.*, 434 S.E.2d 296, 305 (S.C. Ct. App. 1993) (recognizing a "current trend of legal thought suggest[ing] that those who manufacture, handle, and store abnormally dangerous pollutant substances should be held strictly liable for injury resulting from those activities").

The authorities relied upon by Defendants, on the other hand, are materially

different from the facts of this case. In *Lowry v. Cochran*, the plaintiff was attending a festival that included a skydiving demonstration. 305 Ga.App. 240, 242 (2010), overruled on other grounds by *Dep't of Lab. v. McConnell*, 305 Ga. 812 (2019). One skydiver's parachute collapsed at the last minute causing him to land outside the designated landing zone and he collided with the plaintiff. *Id.* At the time of the collision, the plaintiff was standing outside the landing zone, but within a "buffer zone" intended to provide a "margin of error" outside the landing zone. *Id.* She sued under various theories, including strict liability for a dangerous activity. *Id.* The Georgia Court of Appeals rejected her argument, holding that skydiving is not "inherently dangerous to *persons on the ground* or that such risk cannot be eliminated by the exercise of reasonable care." *Id*. at 243 (emphasis in original). In particular, the *Lowry* court relied on evidence that event officials had identified the need for a buffer zone to keep spectators safe, but then did not mark it or enforce it. *Id*. And because properly designating and enforcing the buffer zone would have prevented the accident, the risk of such collision could "be eliminated by the exercise of reasonable care" *Id*.

Nor does *Gullock* apply. *Gullock v. Spectrum Sciences & Software*, 146 F. Supp. 2d 1364, 1374 (M.D. Ga. 2001). *Gullock* involved a U.S. Air Force air-to-surface weapons range, which was run by a defense contractor. While driving around the range, the plaintiff, an Air Force civil engineer, was hit in the chest by a shell

17

fired by one of the aircraft. *Id.* at 1367–68. The district court dismissed his strict liability claim against the contractor because the contractor had not "set the force in motion," as described in the "blasting" cases. *Id.* (citing *Berger*, 121 Ga.App. 362, 362 (1970) and *Brooks v. Ready Mix Concrete Co.*, 94 Ga.App. 791, 793 (1956)). Notwithstanding the obvious hazards of an air-to-surface firing range, the court held it was not the contractor's activities—maintenance, administration, and policing—that were hazardous, it was the activities of the U.S. Air Force and its F-16 pilot that "set the force in motion." *Id.* at 1374–75. Thus, the court concluded that the plaintiff could not bring a claim for strict liability against the contractor because the contractor was engaged in activities where the risks "are all eliminated with the exercise of reasonable care." *Id.* at 1375. In contrast, Defendants here "voluntarily set the force in motion" by intentionally storing chemicals that can, have, and did cause dangerous fires and toxic gas releases.

Citing *Gullock*, Defendants also refer the Court to factors outlined in the Restatement (Second) of Torts § 520.[9] While helpful guideposts, "it is not necessary that each of [the factors] be present [to show strict liability], especially if others

---

[9] These factors are: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

weigh heavily." *Effkay Enters. v. J.H. Cleaners, Inc.*, Civil Action No. 07-cv-02521-LTB, 2008 WL 2357698, at *5 (D. Colo. June 5, 2008). Applying these principles, "the use, handling, storage, and disposal of cleaning chemicals [may] be an abnormally dangerous or ultra-hazardous activity." *Id. See also Schwartzman*, 842 F. Supp. at 478 (noting that accepting the defendant's argument that only blasting is an abnormally dangerous activity, "renders the six factors of the Restatement superfluous").

Even so, several restatement factors weigh strongly in Plaintiffs' favor.

*(a) Existence of a high degree of risk of some harm and (b) the likelihood of the harm is high.*

Given the history of fires at Defendants' facilities, and the scope of the evacuation and shelter-in-place orders, the Complaint plainly alleges a high degree of risk of some harm to the person, land, or chattel of others. The evacuation order displaced more than 17,000 residents, the fire shut down a major interstate and highways, more than 90,000 residents were told not to leave their homes for days, the shelter-in-place affected approximately 2,200 businesses, and more than 15,000 students were affected by cancellation of in-person classes in Rockdale County alone. Doc. 138 ¶¶ 310–24. Moreover, a safety alert was issued to all residents within 50 miles of the Conyers Plant, covering and impacting much of metro Atlanta. *Id.* ¶¶ 319, 342–51. In addition to the impact of evacuation and shelter-in-place orders for entire communities, hundreds of residents near the Conyers Plant visited

emergency rooms and clinics complaining of symptoms potentially associated with the fire. Doc. 138 ¶ 355.[10]

*(c) Inability to eliminate the risk by the exercise of reasonable care.*

Defendants argue this factor weighs in their favor because Plaintiffs have alleged numerous failures that would establish Defendants' negligence. But, as noted above, if Defendants are correct that they did exercise reasonable care (something Plaintiffs dispute), the fact that even with the exercise of reasonable care there was still a fire and explosion bolsters Plaintiffs' strict liability claim. And the fact that these fires keep happening is additional evidence that—if they are not caused by Defendants' negligence—then the storage and manufacturing of these chemicals is inherently dangerous.

Including this one, BioLab has had eight fires at its facilities since 2004, and six in the last five years. *See* Doc. 138 ¶ 229 (Conyers 2004), ¶ 233 (Conyers 2016), ¶ 238 (Conyers Sept. 14, 2020), ¶ 244 (Conyers Sept. 18, 2020), ¶ 257 (Lake Charles 2020), ¶ 262 (Lake Charles 2023), 263 (Lake Charles 2024), ¶ 1 (Conyers 2024).

---

[10] Since such chemical fires can affect large geographic areas, the same facts also weigh in Plaintiffs' favor on factor (e), appropriateness of activity to location. It is inappropriate to handle such large quantities of toxic and combustible materials in a densely populated, metropolitan area. *See Shongo v. CSX Transp., Inc.*, No. RDB-22-2684, 2023 WL 4027121, at *9 (D. Md. June 14, 2023) (in case involving storage and handling of flammable and carcinogenic materials adjacent to residential neighborhood, noting that "[o]ther courts have reasoned that similar activities may be 'abnormally dangerous' when they are carried out in a populated area").

This is not a problem limited to BioLab. A 2001 EPA report identified at least eleven fires involving swimming pool chemicals that occurred between 1996 and 2000—the vast majority of which were specifically caused by pool chemicals becoming wetted by a small quantity of water, including water leaked from a fire sprinkler. *Id*. ¶ 280.

        *(f) Defendants' dangerous conduct outweighs its value to the community*.

Although Defendants point to the fact that BioLab has operated in the community since 1973, that does not mean it has done so safely. Although Plaintiffs do not allege any fires at the Conyers plant from 1973 to 2004, that is immaterial to the inquiry in this case: are Defendants' activities inherently dangerous today? Yes.

A sampling of Plaintiffs is illustrative. Plaintiff Barr alleged that toxic substances were deposited in or around her property; that her husband endured a prolonged hospital stay from the fire; that other family members required medical treatment due to the fire; and that other family members were forced to miss school or work. Doc. 138 ¶ 376. As another example, Plaintiff Pittman Construction was completely unable to operate for three days, and it had to send at least 125 employees home. Doc. 138 ¶ 377. Defendants cannot establish as a matter of law that its value to the community outweighs these types of harms, multiplied over years. The balance of Restatement factors thus weighs strongly in favor of strict liability.

Storing and manufacturing these highly reactive chemicals is either inherently

dangerous or Defendants are doing something wrong. Plaintiffs have plausibly pled both theories, and the Court should deny Defendants' motion to dismiss. *In re E. Palestine Train Derailment*, No. 4:23CV0242, 2024 U.S. Dist. LEXIS 43837, at *48 (N.D. Ohio Mar. 13, 2024) ("Plaintiffs alternatively allege claims for both strict liability and negligence, which is permitted under Fed. R. Civ. P. 8(a)(3).").

## CONCLUSION

Defendants' pool chemical plants have caused at least eight fires in the last twenty years—four here in Conyers, Georgia. Every time they have a fire it releases dozens of dangerous chemicals into the surrounding communities—the harm from which may not been fully known for decades. Plaintiffs have plausibly pled the ultrahazardous nature of Defendants' activities and the right to recover the costs of the future testing necessary to least attempt to mitigate the diseases and illnesses likely to be caused by these chemicals in the future. Accordingly, the Court should deny BioLab and KIK's motion to dismiss.

Respectfully submitted this 24th day of March, 2025.[11]


|  | */s/ Jason J. Carter* |
|---|---|
| Daniel R. Flynn | Jason J. Carter |
| Admitted *Pro Hac Vice* | Ga. Bar No. 141669 |
| DICELLO LEVITT LLP | BONDURANT MIXSON & ELMORE, LLP |

---

[11] Pursuant to Local Rule 7.1D, Plaintiffs' counsel certifies that this brief was prepared with a font and point selection approved in Local Rule 5.1C.

Ten North Dearborn Street, Sixth
Floor
Chicago, Illinois 60602
(312) 214-7900
dflynn@dicellolevitt.com

Jean Sutton Martin
Admitted *Pro Hac Vice*
Morgan & Morgan
201 N. Franklin St., 7th Floor
Tampa, Florida 33602
(813) 559-4908
jeanmartin@ForThePeople.com

1201 West Peachtree Street, Suite 3900
Atlanta, Georgia 30309
(404) 881-4100
carter@bmelaw.com

L. Chris Stewart
Ga. Bar No. 142289
Stewart Miller Simmons Trial Attorneys
55 Ivan Allen Jr. Boulevard, Suite 700
Atlanta, Georgia 30308
(404) 529-3476
cstewart@smstrial.com

*Interim Co-Lead Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 24, 2025 the foregoing **PLAINTIFFS' RESPONSE TO BIOLAB AND KIK DEFENDANTS' MOTION TO DISMISS** was filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

> /s/ Jason J. Carter
> Jason J. Carter
> Ga. Bar No. 141669
> BONDURANT MIXSON & ELMORE, LLP
> 1201 West Peachtree Street,
> Suite 3900
> Atlanta, Georgia 30309
> (404) 881-4100
> carter@bmelaw.com