**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| In re BIO-LAB CLASS ACTIONS | Case No. 1:24-cv-04407-SEG |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
CENTERBRIDGE DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

ARGUMENT .......................................................................................... 2

I.    Plaintiffs' Allegations Fail to Satisfy the Alter Ego Doctrine .......... 2

    A.    Plaintiffs Fail to Allege an Alter Ego Relationship Between the Centerbridge Defendants ................................................... 3

    B.    Plaintiffs Fail to Allege an Alter Ego Relationship Between the Centerbridge Defendants and KIK or Bio-Lab ................ 5

    C.    Plaintiffs Fail to Allege Insolvency ......................................... 8

II.   Plaintiffs Have Not Stated a *Prima Facie* Case of Jurisdiction ....... 9

    A.    Plaintiffs' Claims Do Not Satisfy the Long-Arm Statute .... 10

    B.    Plaintiffs' Claims Do Not Satisfy Due Process .................... 11

    C.    Plaintiffs Are Not Entitled to Jurisdictional Discovery ...... 12

III.  Plaintiffs' "Tortious Undercapitalization" Theory Fails ............... 13

CONCLUSION .................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson* v. *Am. Fam. Ins. Co.*,
  2016 WL 3633349 (M.D. Ga. June 29, 2016)...................................................8

*Beckham* v. *Baker & Hostetler, LLP*,
  2023 WL 9957259 (N.D. Ga. Aug. 17, 2023).............................................. 12

*United States* v. *Bestfoods*,
  524 U.S. 51 (1998)........................................................................ 3, 7, 15

*Boafo* v. *Hosp. Corp. of Am.*,
  338 S.E.2d 477 (Ga. Ct. App. 1985) .............................................................7

*BP Expl. & Oil, Inc.* v. *Jones*,
  558 S.E.2d 398 (Ga. Ct. App. 2001) ......................................................... 14

*Brock* v. *City of Atlanta*,
  2022 WL 19333605 (N.D. Ga. Nov. 28, 2022), *adopted*, 2023
  WL 2733202 (N.D. Ga. Feb. 22, 2023) .......................................................6

*City of Winder* v. *Girone*,
  462 S.E.2d 704 (Ga. 1995) ........................................................................ 15

*CSX Transp., Inc.* v. *Williams*,
  608 S.E.2d 208 (Ga. 2005) ........................................................................ 14

*Drumm Corp.* v. *Wright*,
  755 S.E.2d 850 (Ga. Ct. App. 2014) ....................................................... 4, 10

*Factory Direct Wholesale, LLC* v. *Off. Kick, Inc.*,
  2023 WL 6811026 (S.D. Ga. Oct. 16, 2023) ...................................................4

*United States* v. *Fid. Cap. Corp.*,
  920 F.2d 827 (11th Cir. 1991)......................................................................9

*In re First Reserve Mgmt.*,
  671 S.W.3d 653 (Tex. 2023) ...................................................................... 14

*Harvey* v. *Merchan*,
   860 S.E.2d 561 (Ga. 2021) ........................................................................... 11

*Herederos De Roberto Gomez Cabrera, LLC* v. *Teck Res. Ltd.*,
   43 F.4th 1303 (11th Cir. 2022) ......................................................................4

*Hicks* v. *Universal Health Servs.*,
   874 S.E.2d 877 (Ga. Ct. App. 2022) ........................................................... 11

*Hyde* v. *Schlotzsky's, Inc.*,
   561 S.E.2d 876 (Ga. Ct. App. 2002) ........................................................... 14

*Innotex Precision Ltd.* v. *Horei Image Prods.*,
   679 F. Supp. 2d 1356 (N.D. Ga. 2009) .........................................................4

*Innovative Clinical & Consulting Servs.* v. *First Nat. Bank of
   Ames*,
   620 S.E.2d 352 (Ga. 2005) ........................................................................... 11

*J-Mart Jewelry Outlets, Inc.* v. *Std. Design*,
   218 Ga. App. 459 (1995) ................................................................................4

*Johnson* v. *Belcher*,
   564 F. Supp. 3d 1334 (N.D. Ga. 2021) ..........................................................5

*Johnson* v. *Lipton*,
   328 S.E.2d 533 (Ga. 1985) ..............................................................................8

*Kipperman* v. *Onex Corp.*,
   2010 WL 11505688 (N.D. Ga. Sept. 29, 2010) ............................................6

*Lavin* v. *Reed*,
   2023 WL 7182950 (N.D. Ill. Nov. 1, 2023) ...................................................6

*Lewis* v. *Governor of Alabama*,
   944 F.3d 1287 (11th Cir. 2019) .....................................................................8

*Lubbers* v. *John R. Jurgensen Co.*,
   2021 WL 4066663 (E.D. Ky. Sept. 7, 2021) ..................................................3

*McClain* v. *Metabolife Int'l*,
   401 F.3d 1233 (11th Cir. 2005) .....................................................................6

*McCrae* v. *Emory Univ.*,
2023 WL 6217372 (N.D. Ga. May 24, 2023), *adopted*, 2023 WL
6217376 (N.D. Ga. July 12, 2023) ................................................................6

*In re Moll Indus.*,
454 B.R. 574 (Bankr. D. Del. 2011)................................................................7

*Naga Hanuman Fish Packers* v. *Sivani Int'l LLC*,
2023 WL 8505750 (N.D. Ga. Oct. 20, 2023)............................................ 4, 8

*Palma* v. *Sterigenics U.S., LLC*,
24STCV06677, Slip. Op. (Cal. Super. Ct. Jan. 22, 2025) (Ex. 6)............... 12

*Parker* v. *Ahmsi Ins. Agency Inc.*,
2019 WL 13178508 (S.D. Fla. Aug. 2, 2019)....................................................4

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
2025 WL 606533 (N.D. Ohio Feb. 25, 2025) ................................................6

*Patel* v. *Diplomat 1419VA Hotels, LLC*,
2014 WL 11462722 (N.D. Ga. Feb. 4, 2014), *aff'd in relevant
part, rev'd on other grounds*, 605 F. App'x 965 (11th Cir. 2015) ..................4

*Peeples* v. *Caroline Container, LLC*,
2019 WL 12338070 (N.D. Ga. Apr. 3, 2019) ................................................5

*Perrigo Co.* v. *Merial Ltd.*,
215 F. Supp. 3d 1329 (N.D. Ga. 2016) ....................................................... 10

*In re Premier Entm't Biloxi LLC*,
445 B.R. 582 (Bankr. S.D. Miss. 2010) ........................................................9

*Purvis* v. *Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) ....................................................... 15

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem.
Co.*,
917 F.3d 1249 (11th Cir. 2019).....................................................................5

*Quashie* v. *Olympus Am., Inc.*,
315 F. Supp. 3d 1329 (N.D. Ga. 2018) ....................................................... 10

*Ramirez* v. *Paradies Shops, LLC*,
69 F.4th 1213 (11th Cir. 2023) ................................................................... 15

*Rasnick* v. *Krishna Hosp., Inc.*,
    713 S.E.2d 835 (Ga. 2011) ............................................................. 14

*In re Takata Airbag Prods. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ......................................... 13

*United Techs. Corp.* v. *Mazer*,
    556 F.3d 1260 (11th Cir. 2009)...................................................... 12

*Vogt* v. *Greenmarine Holding, LLC*,
    2002 WL 534542 (N.D. Ga. Feb. 20, 2002) ...................................4

*W.P. Prods., Inc.* v. *Tramontina U.S.A.*,
    101 F.4th 787 (11th Cir. 2024) ........................................................4

*Waste Mgmt., Inc.* v. *Superior Court*,
    119 Cal. App. 4th 105 (2004) ....................................................... 14

*Williams* v. *Booker*,
    712 S.E.2d 617 (Ga. Ct. App. 2011) ............................................ 14

*Wingfield* v. *Hall*,
    2024 WL 1349022 (M.D. Ala. Mar. 30, 2024) ...............................6

*Wooten* v. *La Salle Corr.*,
    748 F. Supp. 3d 1363 (M.D. Ga. 2024)......................................... 13

## INTRODUCTION

The Centerbridge Defendants' opening brief, Dkt. 177-1 ("Brief" or "Br."), demonstrates that the claims alleged against them in the Complaint should be dismissed because it is devoid of factual allegations that: (i) support exercising jurisdiction over, or imposing liability on, the Centerbridge Defendants based on the alleged activities of Bio-Lab or KIK; (ii) establish *in-state* contacts sufficient to support the Court's exercise of personal jurisdiction over the Centerbridge Defendants; or (iii) give rise to a plausible inference of a duty they owed to third parties regarding safety at Bio-Lab's Conyers Plant.[1] Plaintiffs' Response, Dkt. 191 ("Opposition"), only confirms these deficiencies.

*First*, as to alter ego, Plaintiffs' Opposition does not identify any non-conclusory factual allegations that would support a claim that the Centerbridge Defendants are alter egos of one another, or that either entity is an alter ego of KIK or Bio-Lab. *Second*, as to jurisdiction, Plaintiffs' Opposition confirms that their claims rely on CB Fund's alleged status as a controlling shareholder of the ultimate parent of KIK, a Delaware/Ontario corporation. But Plaintiffs identify no factual allegations of *in-state* transactions or activities by the Centerbridge Defendants, and cite no case supporting

---

[1] Defined terms and abbreviations used herein have the same meaning as in the Centerbridge Defendants' Brief. Citations beginning with "Ex." refer to exhibits to the accompanying declaration of R. Thomas Warburton.

exercising jurisdiction based on investment in a company that has in-state operations. *Finally,* on the merits, Plaintiffs' Opposition confirms that they rely entirely on their conclusory "tortious undercapitalization" theory, but cites no law from any jurisdiction applying that theory to impose direct tort liability on an investor, and identifies no non-conclusory factual allegations that either of the Centerbridge Defendants controlled safety operations at the plant.[2]

In light of these fundamental deficiencies after multiple amendments, the claims against the Centerbridge Defendants should be dismissed.

## ARGUMENT

### I.    Plaintiffs' Allegations Fail to Satisfy the Alter Ego Doctrine

The Centerbridge Defendants' Brief demonstrated that the Complaint does not provide a basis to exercise jurisdiction over, or impose liability on, the Centerbridge Defendants based on the alleged activities or negligence of Bio-Lab or KIK. The Brief showed that Plaintiffs' allegations: (i) do not rebut the presumption that CB Partners officers on the KIK board appropriately wore their "KIK hat" when acting for KIK; (ii) do not allege a failure to observe corporate formalities; (iii) do not raise a plausible inference of an alter ego relationship based on KIK's dividends and debt issuances; (iv) do not allege facts supporting a conclusion that the Centerbridge Defendants were alter egos

---

[2] The Centerbridge Defendants also join the arguments in the Bio-Lab and KIK Defendants' simultaneously filed reply brief, Dkt. 199.

of one another; and (v) do not allege that KIK or Bio-Lab was insolvent.  Br. at 7–13.  In their Opposition, Plaintiffs do not dispute points (i) or (ii) regarding CB Partners officers' role on KIK's board or observance of corporate formalities, and their remaining alter ego arguments fail as a matter of law.

## A.    Plaintiffs Fail to Allege an Alter Ego Relationship Between the Centerbridge Defendants

The allegations Plaintiffs cite in support of an alter ego relationship between the Centerbridge Defendants are conclusory, immaterial, or both.  *See* Opp. at 7; ¶¶ 65, 100 (alleging CB Fund "is controlled and promoted by" CB Partners); ¶ 151 (alleging "CB Partners operates through a number of subsidiaries"); ¶¶ 155–56 (alleging overlap of founders); ¶¶ 61, 63 (alleging that CB Partners and CB Fund hired the same agent for service, Corporation Trust Company, a/k/a CT Corporation).  For example, Plaintiffs do not allege that any of the allegedly overlapping founders ever wore the "wrong hat" in conducting business for either entity.  *See United States* v. *Bestfoods*, 524 U.S. 51, 69 (1998).  And it is entirely unremarkable that both entities used CT Corporation—"the largest registered agent service firm in the world."  *Lubbers* v. *John R. Jurgensen Co.*, 2021 WL 4066663, at *5 n.8 (E.D. Ky. Sept. 7, 2021).

In highlighting these allegations, Plaintiffs only confirm they have alleged no facts supporting (i) setting aside the well-established presumption that CB Partners and CB Fund are separate and distinct entities; or (ii)

drawing the conclusion that one entity served merely as "an agent through which the [other] conducts business," or that either entity's "status is formal only and without *any semblance of individual identity*." *Herederos De Roberto Gomez Cabrera, LLC* v. *Teck Res. Ltd.*, 43 F.4th 1303, 1312 (11th Cir. 2022) (emphasis in original; cleaned up). Plaintiffs' argument that the question of alter ego is "fact intensive," Opp. at 13, cannot relieve them of the burden of pleading *facts* that would overcome the strong presumption of corporate separateness and establish alter ego if proven. *See* Br. at 7–8. Courts routinely dismiss alter ego allegations at the pleading stage where, as here, plaintiffs fail to do so.[3]

---

[3] *See, e.g.*, *Herederos*, 43 F.4th at 1312; *Vogt* v. *Greenmarine Holding, LLC*, 2002 WL 534542, at *6 (N.D. Ga. Feb. 20, 2002); *Drumm Corp.* v. *Wright*, 755 S.E.2d 850, 853–54 (Ga. Ct. App. 2014); *Parker* v. *Ahmsi Ins. Agency Inc.*, 2019 WL 13178508, at *9–11 (S.D. Fla. Aug. 2, 2019); *Naga Hanuman Fish Packers* v. *Sivani Int'l LLC*, 2023 WL 8505750, at *2–4 (N.D. Ga. Oct. 20, 2023); *Factory Direct Wholesale, LLC* v. *Off. Kick, Inc.*, 2023 WL 6811026, at *4 (S.D. Ga. Oct. 16, 2023); *Patel* v. *Diplomat 1419VA Hotels, LLC*, 2014 WL 11462722, at *4–5 (N.D. Ga. Feb. 4, 2014), *aff'd in relevant part, rev'd on other grounds*, 605 F. App'x 965 (11th Cir. 2015); *Innotex Precision Ltd.* v. *Horei Image Prods.*, 679 F. Supp. 2d 1356, 1360–61 (N.D. Ga. 2009).

Plaintiffs' cases are plainly distinguishable. In *W.P. Prods., Inc.* v. *Tramontina U.S.A.*, the parties "d[id] not dispute" alter ego status. 101 F.4th 787, 792 (11th Cir. 2024). And J-*Mart Jewelry Outlets, Inc.* v. *Std. Design*, merely stands for the proposition that, when a veil piercing clam survives past the pleading stage, it is a jury question. 218 Ga. App. 459, 460–61 (1995). The court otherwise confirmed that veil piercing is an exceptional remedy requiring "evidence of abuse of the corporate form," and is *not* appropriate merely where a sole owner "uses and controls [a company] to promote his ends." *Id.* at 460 (citations omitted).

Contrary to Plaintiffs' arguments, Opp. at 7–8, they also cannot rely on improper group pleading to bolster their alter ego allegations. Instead, they must state specific jurisdictional allegations with respect to each defendant. *See* Br. at 16–17 (citing cases).[4] Plaintiffs also fail to explain how their tortious undercapitalization allegations against "Centerbridge" collectively can "comply with *Twombly* and *Iqbal*" with respect to CB Partners, which is not even alleged to have invested money in KIK. *Johnson* v. *Belcher*, 564 F. Supp. 3d 1334, 1342–43 (N.D. Ga. 2021); Br. at 25.[5]

## B. Plaintiffs Fail to Allege an Alter Ego Relationship Between the Centerbridge Defendants and KIK or Bio-Lab

As the Centerbridge Defendants' Brief demonstrates, transactions such as debt issuances and dividend distributions between entities do not support an alter ego relationship absent fraud, illegality, or failure to observe corporate formalities. Br. at 9–11 & n.4. Plaintiffs do not dispute this standard. Yet, they do not cite a single allegation that KIK's dividend payments and debt issuances were fraudulent, not duly authorized, or not properly recorded.

Plaintiffs' only purported allegation of wrongdoing is that "Centerbridge

---

[4] Plaintiffs cannot avoid this requirement by defining "Centerbridge" to include multiple defendants. *See Peeples* v. *Caroline Container, LLC*, 2019 WL 12338070, at *6 n.3 (N.D. Ga. Apr. 3, 2019) (cited in Opp. at 23).

[5] Plaintiffs rely only on cases that involve the "very narrow group pleading rationale" of "failure to give fair notice," not plausibility under *Twombly* or *Iqbal*. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1274–75 (11th Cir. 2019); *see* Opp. at 7–8.

extracted" a dividend from KIK a few months after "incidents" at KIK facilities. Opp. at 13; ¶¶ 191–95. Without alleging any supporting *facts*, Plaintiffs assert that this timing demonstrates Centerbridge "wanted to secure a profit through asset stripping before any other major incidents could occur." ¶ 198; Opp. at 13. This allegation is too speculative to meet Plaintiffs' pleading burden. Courts may not "assume[] causality from temporal sequence." *McClain* v. *Metabolife Int'l*, 401 F.3d 1233, 1243 (11th Cir. 2005); *McCrae* v. *Emory Univ.*, 2023 WL 6217372, at *11 (N.D. Ga. May 24, 2023) (delay of several months is "too long to permit an inference of causation based on temporal proximity alone" (cleaned up)), *adopted*, 2023 WL 6217376 (N.D. Ga. July 12, 2023).[6]

Plaintiffs' remaining allegations regarding KIK's dividend payments and debt issuances similarly do not support an alter ego relationship under applicable law. *Compare* Opp. at 10 ("[W]hen Centerbridge acquired KIK in 2015, it required *KIK* to take on more than $1 billion in debt to *sell* itself." (emphasis in original)); *with Kipperman* v. *Onex Corp.*, 2010 WL 11505688, at *36 (N.D. Ga. Sept. 29, 2010) ("[L]everaged buyouts almost always leave the acquired company with greater debt and fewer liquid assets than they had

---

[6] *See also Brock* v. *City of Atlanta*, 2022 WL 19333605, at *10 (N.D. Ga. Nov. 28, 2022), *adopted*, 2023 WL 2733202 (N.D. Ga. Feb. 22, 2023); *Wingfield* v. *Hall*, 2024 WL 1349022, at *7 (M.D. Ala. Mar. 30, 2024); *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 2025 WL 606533, at *12 (N.D. Ohio Feb. 25, 2025); *Lavin* v. *Reed*, 2023 WL 7182950, at *8 (N.D. Ill. Nov. 1, 2023).

before the acquisition.  This has not been found to be a basis for inferring that the corporate form was being used to commit injustice."). *Compare* Opp. at 10 ("Centerbridge . . . 'load[ed]' hundreds of millions in 'debt onto KIK.'" (quoting ¶ 188)); *with In re Moll Indus.*, 454 B.R. 574, 590 (Bankr. D. Del. 2011) ("The mere fact that a holding corporation caused its wholly-owned subsidiary to take on more debt to support the holding corporation's overall business strategy does not buttress an alter ego claim." (cleaned up)).  *Compare* Opp. at 11 ("KIK's practices have prioritized Centerbridge." (emphasis omitted)); *with Boafo* v. *Hosp. Corp. of Am.*, 338 S.E.2d 477, 479 (Ga. Ct. App. 1985) (holding that a corporation can retain corporate separateness "even while it uses [a] related corporation or controls it to promote its own ends").

Plaintiffs' reliance on general statements about investment philosophy from the website centerbridge.com that are not tied to any specific investment, Opp. at 9; ¶¶ 160–61 (quoting https://www.centerbridge.com/our-strategies), fall far short of meeting the legal standard for pleading alter ego. Br. at 7–13. In any event, even if CB Fund was "not a passive investor in KIK," Opp. at 9, that is immaterial, because "it is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary." *Bestfoods*, 524 U.S. at 61 (cleaned up).[7]

---

[7] The allegation that Standard & Poor's "'rated KIK's governance structure as a negative consideration in its credit rating analysis,'" Opp. at 9 (quoting

**C.    Plaintiffs Fail to Allege Insolvency**

Plaintiffs concede, as they must, that the standard for an alleged alter ego's insolvency is whether "there are insufficient corporate assets to satisfy the plaintiff's claim."  Opp. at 15–16 (quoting *Naga Hanuman*, 2023 WL 8505750, at *3).[8]  But none of the paragraphs that Plaintiffs cite allege such facts as to KIK and Bio-Lab.  *See id.* at 16.  Rather, paragraph 217 asserts in conclusory fashion that "Centerbridge" acted "with the intent to improperly avoid future debts of the [KIK] entities," but does not allege that KIK's assets actually are, or were at any point, insufficient to pay any judgment.  The other cited paragraphs merely state that a debt transaction occurred, or quote excerpts of analyst reports that say nothing about KIK's ability to satisfy

¶ 168), does not support alter ego on its face.  The same report—which Plaintiffs partially quote and thus incorporate by reference, *see Lewis* v. *Governor of Alabama*, 944 F.3d 1287, 1298 n.7 (11th Cir. 2019)—states that its "moderately negative consideration" regarding "[g]overnance factors" was "the case for most rated entities owned by private-equity sponsors."  Ex. 5 at 3.  This flatly contradicts Plaintiffs' suggestion of a "dominance . . . beyond what is considered typical."  Opp. at 9.  Plaintiffs also cite the service of three CB Partners employees on the KIK board, but concede that overlapping directors are "not . . . sufficient to support an inference of control."  *Id.*; *see* Br. at 9.

[8] Plaintiffs also argue that "Georgia courts routinely affirm imposing alter ego liability" without insolvency.  Opp. at 15.  But the Georgia Supreme Court held in *Johnson* v. *Lipton* that "as a precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim, there must be insolvency on the part of the corporation."  328 S.E.2d 533, 535 (Ga. 1985); *see Naga Hanuman*, 2023 WL 8505750, at *3; *Anderson* v. *Am. Fam. Ins. Co.*, 2016 WL 3633349, at *6 (M.D. Ga. June 29, 2016).  In any event, it is Plaintiffs that chose to attempt claims based on a purported "intent to improperly avoid future debts."  ¶ 217.  That unsupported allegation fails.

claims. Documents quoted in the Complaint also controvert Plaintiffs' allegations. The analyst reports that Plaintiffs cite and quote as supporting an inference of "insolvency," Opp. at 16, expressly state that KIK has hundreds of millions of dollars of cash on hand and tout KIK's "stable outlook," "sufficient liquidity," "adequate liquidity cushion," and "good market positions." Ex. 1 at 1; Ex. 2 at 1–2; Ex. 3 at 1–2; Ex. 4 at 2; Ex. 5 at 1–2.

Plaintiffs also argue that their allegations that KIK's dividend payments left it "undercapitalized" raise an inference of insolvency. Opp. at 16. The Eleventh Circuit has held that the "undercapitalization" theory of alter ego relationships applies only "when a corporation is thinly capitalized *at the time of formation*." *United States* v. *Fid. Cap. Corp.*, 920 F.2d 827, 839 (11th Cir. 1991) (emphasis in original). Plaintiffs make no such allegation here.[9]

## II. <u>Plaintiffs Have Not Stated a *Prima Facie* Case of Jurisdiction</u>

The Centerbridge Defendants' Brief demonstrated that the Complaint fails to state a *prima facie* case for the exercise of personal jurisdiction under the Georgia long-arm statute, or the exercise of general or specific jurisdiction under the Due Process Clause. Br. at 14–21. Plaintiffs do not contest that

---

[9] Plaintiffs also reference the "equitable insolvency" doctrine, Opp. at 16, which is a "test that applies under the Bankruptcy Code only in limited factual circumstances." *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 640 (Bankr. S.D. Miss. 2010). But Plaintiffs cite no cases applying that doctrine outside of the bankruptcy context.

they have not alleged general jurisdiction, or that their lone and generalized allegation of the Centerbridge Defendants' "control" of the Conyers Plant, ¶ 291, is too conclusory to be a premise for jurisdiction. Br. at 17, 21. Their arguments about the long-arm statute and constitutional due process fail.

### A.    Plaintiffs' Claims Do Not Satisfy the Long-Arm Statute

Regarding subsection (1) of the long-arm statute, Plaintiffs contend that "Centerbridge engaged in business activities in Georgia when it" acquired KIK and "required" payment of "management and transaction fees." Opp. at 20. But Plaintiffs cite no case holding that investment in and related transactions with a company with a Georgia subsidiary are sufficient to establish specific jurisdiction. To the contrary, "ownership of [an in-state] subsidiary by an out-of-state parent corporation without more is insufficient to obtain jurisdiction of the parent corporation," *Drumm*, 755 S.E.2d at 855, and "[c]ontracting with a party who itself resides in Georgia" does not satisfy subsection (1), *Perrigo Co.* v. *Merial Ltd.*, 215 F. Supp. 3d 1329, 1341 (N.D. Ga. 2016).[10]

Regarding subsection (2), Plaintiffs argue that Centerbridge committed tortious conduct within Georgia because the fire and alleged injuries occurred in Georgia. Opp. at 21–22. This too ignores binding contrary precedent. The

---

[10] Plaintiffs also quote out-of-context language in *Quashie* v. *Olympus Am., Inc.*, 315 F. Supp. 3d 1329 (N.D. Ga. 2018), that pertains to subsection (3) of the long-arm statute, not subsection (1). *Id* at 1336; Opp. at 20.

Georgia Supreme Court has held that under "the literal language of [subsection (2)]," a non-resident defendant "must do certain acts" within Georgia, abrogating earlier cases holding (as Plaintiffs suggest) that an injury within Georgia sufficed. *Innovative Clinical & Consulting Servs.* v. *First Nat. Bank of Ames*, 620 S.E.2d 352, 354 (Ga. 2005).[11]

Regarding subsection (3), Plaintiffs argue that "Centerbridge 'derives substantial revenue' from its activities [in Georgia]" because it "extracted a 142% profit from its investment in KIK, whose core business is Georgia-based BioLab." Opp. at 22 (citing ¶ 213). But Plaintiffs again cite no supporting case law and ignore *Hicks* v. *Universal Health Servs.*, 874 S.E.2d 877, 886 (Ga. Ct. App. 2022) (cited in Br. at 18), in which the Georgia Court of Appeals held that revenue earned by an in-state subsidiary does not support jurisdiction.

### B.    Plaintiffs' Claims Do Not Satisfy Due Process

In response to the Centerbridge Defendants' argument that the Complaint fails to allege purposeful availment, Br. at 19–21, Plaintiffs merely repeat their conclusory assertion that "Centerbridge stripped BioLab and KIK of assets when it should have been investing in safety." Opp. at 24. The paragraphs they cite (¶¶ 194, 229, 245–56) do not support jurisdiction because

---

[11] In addressing subsection (2), Plaintiffs rely solely on *Harvey* v. *Merchan*, 860 S.E.2d 561 (Ga. 2021). But *Harvey* does not mention the long-arm statute; it instead analyzes the locus of a tort for choice-of-law purposes. *Id.* at 567.

they do not describe conduct (by either Centerbridge Defendant) that is alleged to have occurred in or been targeted at Georgia, as opposed to merely to having had an impact in Georgia through a lengthy and tenuous causal chain. *See* Br. at 20 (citing cases). *See also Palma* v. *Sterigenics U.S., LLC*, 24STCV06677, Slip. Op. at 10, 14–15 (Cal. Super. Ct. Jan. 22, 2025) (Ex. 6).[12]

### C.    Plaintiffs Are Not Entitled to Jurisdictional Discovery

In an attempt to avoid dismissal based on their plainly deficient jurisdictional allegations, Plaintiffs request jurisdictional discovery. That request should be denied.[13] As an initial matter, Plaintiffs have improperly "buried" their request for jurisdictional discovery in their response brief "as a proposed alternative to dismiss[al]." *United Techs. Corp.* v. *Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009). In any event, because Plaintiffs have failed to meet their burden to establish a *prima facie* case of personal jurisdiction for the reasons discussed *supra* §§ I, II.A–B, no jurisdictional discovery is permitted. Indeed, "[i]t is an abuse of discretion . . . if a court orders jurisdictional discovery when a plaintiff fails to establish a *prima facie* case of personal jurisdiction." *Beckham*, 2023 WL 9957259, at *8 (citations omitted).

---

[12] Because Plaintiffs have not adequately alleged purposeful availment, the Court need not reach fair play and substantial justice. *Beckham* v. *Baker & Hostetler, LLP*, 2023 WL 9957259, at *7 (N.D. Ga. Aug. 17, 2023).

[13] Tellingly, almost none of the discovery topics listed in Plaintiffs' Opposition, *see* Opp. at 25, relate to personal jurisdiction, but instead seek early merits discovery in contravention of this Court's scheduling order, Dkt. 184 at 1–2.

Moreover, where, as here, a defendant challenges jurisdiction based solely on the insufficiency of the plaintiff's allegations, rather than based on "affidavit or declaration evidence," "there is no genuine factual dispute concerning personal jurisdiction," and discovery is therefore "unwarranted." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1157 (S.D. Fla. 2019).[14]

## III.    Plaintiffs' "Tortious Undercapitalization" Theory Fails

The Centerbridge Defendants' Brief demonstrated that a parent company is not directly liable to third parties for an accident at a subsidiary's plant unless the parent "operated" the plant or had "completely taken over" the subsidiary's safety duty, and induced reliance.    Br. at 22 (citing cases). Plaintiffs attempt to circumvent this established principle based on a novel "tortious undercapitalization" theory that is unprecedented under Georgia law, is inconsistent with *Bestfoods*, and has been rejected by multiple state appellate courts at the pleading stage.    *Id.* at 23–25.

Plaintiffs point to no factual allegations raising a plausible inference that either Centerbridge entity operated the Conyers Plaint or took over its safety function, and they do not cite a single case in which a court has sustained

---

[14] Of the cases Plaintiffs cite regarding jurisdictional discovery, *see* Opp. at 25, only *Wooten* v. *La Salle Corr.,* 748 F. Supp. 3d 1363, 1369 (M.D. Ga. 2024), ordered discovery.    But in *Wooten*, unlike here, the defendants moved to dismiss for lack of jurisdiction based on fact declarations.    *See Wooten*, Case No. 7:22-cv-00148, Dkts. 56-2 and -3 (M.D. Ga. Dec. 8, 2023).

a tortious undercapitalization theory.[15]  Instead, they argue that because the Centerbridge Defendants "create[d] or exacerbate[d] a dangerous condition," they "owe[d] a duty to prevent reasonably foreseeable harm." Opp. at 17.  But the Georgia Supreme Court has expressly rejected foreseeability alone as a basis for extending a duty of care to third parties from exposure to potentially hazardous substances. *CSX Transp., Inc.* v. *Williams*, 608 S.E.2d 208, 209–10 (Ga. 2005).  Applying this principle, in *CSX* the court declined to extend an employer's duty of care to family members of an employee alleging injury from exposure to asbestos on the employee's clothing.  *Id.*

Here, any purported "duty to capitalize"—if it existed—would run to KIK, not to Plaintiffs. *Waste Mgmt., Inc.* v. *Superior Court*, 119 Cal. App. 4th 105, 111 (2004).  *See CSX*, 608 S.E.2d at 209 (extending duty to third parties based on foreseeability would "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs" (citation omitted)); *see also Rasnick* v. *Krishna Hosp., Inc.*, 713

---

[15] Plaintiffs' attempt to distinguish the cases relied upon by the Centerbridge Defendants fails.  Plaintiffs do not dispute the general standards for which the Centerbridge Defendants cite *BP Expl. & Oil, Inc.* v. *Jones*, 558 S.E.2d 398, 405–07 (Ga. Ct. App. 2001), *Hyde* v. *Schlotzsky's, Inc.*, 561 S.E.2d 876, 878 (Ga. Ct. App. 2002), and *Williams* v. *Booker*, 712 S.E.2d 617, 621 (Ga. Ct. App. 2011).  *See* Br. at 21–22.  And Plaintiffs' allegations do not "go well beyond" those against the private equity fund in *In re First Reserve Mgmt.*, 671 S.W.3d 653 (Tex. 2023).  Opp. at 18.  Unlike the Centerbridge Defendants, that fund allegedly "refused to authorize" specific "safety expenditures," including a "turnaround" of the plant.  671 S.W.2d at 662.

S.E.2d 835, 839 (Ga. 2011) ("[T]he notion of legal duty must be tailored so that the consequences of wrongs are limited to a controllable degree." (cleaned up)); *Bestfoods*, 524 U.S. at 72 (holding that a parent's "supervision of the subsidiary's finance and capital budget decisions . . . should not give rise to direct liability" for an accident at the subsidiary's plant (cleaned up)).

Plaintiffs' cases, Opp. at 17, are readily distinguishable. *Ramirez* v. *Paradies Shops, LLC*, 69 F.4th 1213, 1216–17, 1220 (11th Cir. 2023), and *Purvis* v. *Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1368 (N.D. Ga. 2021) involved data breach claims where the defendant itself was alleged to have negligently maintained plaintiffs' personal data. In *City of Winder* v. *Girone*, 462 S.E.2d 704, 705 (Ga. 1995), a homeowner who slipped and fell on raw sewage that backed up into her home brought claims against the city for negligently maintaining its sewer lines. None of these cases involve parent or investor liability, or purport to apply a novel "duty to prevent harm" running to third parties. These cases therefore do not support imposing direct tort liability based on an investor's financial transactions with the ultimate parent of a company whose subsidiary's plant is alleged to have failed to implement appropriate safety measures.

## CONCLUSION

For all the reasons discussed here and in the Centerbridge Defendants' Brief, the claims alleged against them should be dismissed with prejudice.

Respectfully submitted this 14th day of April, 2025.

BRADLEY ARANT BOULT
CUMMINGS LLP

*/s/ R. Thomas Warburton*
R. Thomas Warburton
GA Bar No. 218175
twarburton@bradley.com
Christopher S. Anulewicz
GA Bar No. 020914
canulewicz@bradley.com
1230 Peachtree Street NE
Atlanta, GA 30309
Tel.: (404) 868-2100

– and –

Kimberly Branscome, *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067-3006
Tel.: (310) 982-4350
kbranscome@paulweiss.com

Yahonnes Cleary, *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel.: (212) 373-3000
ycleary@paulweiss.com

*Counsel for Centerbridge Partners, L.P.*
*and Centerbridge Capital Partners III,*
*L.P.*

16

## <u>LOCAL RULE 5.1 CERTIFICATION</u>

I hereby certify that the foregoing has been prepared in Century Schoolbook 13-point font in accordance with Local Rule 5.1.

This 14th day of April, 2025.

*/s/ R. Thomas Warburton*
R. Thomas Warburton
GA Bar No. 218175

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 14th day of April, 2025.

<u>/s/ R. Thomas Warburton</u>
R. Thomas Warburton
GA Bar No. 218175