# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| *In Re*: BioLab Class Actions | Civ. A. No.<br>1:24-CV-4407-SEG |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Jason J. Carter
BONDURANT MIXSON & ELMORE
1201 West Peachtree Street, Suite 3900
Atlanta, Georgia 30309

L. Chris Stewart
STEWART MILLER SIMMONS
55 Ivan Allen Jr. Boulevard, Suite 700
Atlanta, Georgia 30308

Daniel R. Flynn
DICELLO LEVITT
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

Jean Sutton Martin
MORGAN & MORGAN
201 N. Franklin St., Seventh Floor
Tampa, Florida 33602

Ramboll U.S. Consulting, Inc. ("Ramboll") is an engineering and environmental consulting firm that performed work for KIK and BioLab in 2020, 2022, and 2024. Plaintiffs served a third-party subpoena on Ramboll on April 29, 2025. After additional conferral, the parties have reached agreement on the 2020 and 2024 engagements. WilmerHale engaged Ramboll on behalf of KIK/BioLab in August 2020 in the immediate aftermath of the Westlake, LA fire and it engaged Ramboll again in September 2020 following a fire at the Conyers plant. Similarly, WilmerHale engaged Ramboll immediately following the September 2024 fire in this case. Plaintiffs are satisfied that those three engagements were in anticipation of litigation for purposes of work-product privilege under Fed. R. Civ. P. 26(b)(3)(A).

However, the same cannot be said of Ramboll's 2022 work. Pursuant to Fed. R. Civ. P. 37, Plaintiffs now seek an order compelling Ramboll to produce all documents related to its 2022 work for KIK/BioLab.[1] Defendants claim these pre-fire consulting materials are protected by the work-product and/or attorney-client privilege, but no matter which federal rule they invoke, Defendants have not met their burden. Unlike the 2020 and 2024

---

[1] Unless otherwise noted, this brief uses capitalized terms as defined in the Consolidated Class Action Complaint ("the Complaint"). Doc. 138. Page numbers in citations documents in the record refer to page numbers found in the header affixed by the Court's electronic filing system or to paragraph number, as appropriate.

1

engagements, no fire or other event that might trigger litigation precipitated Ramboll's 2022 "proposal" to KIK, "care of" Weil, Gotshal & Manges, LLP. Instead, it appears to be a compliance audit and business liability assessment "prepared in the ordinary course of business," and thus discoverable. *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 686 (N.D. Ga. 2012). And because it was prepared for a business, rather than legal, purpose, it also does not receive attorney-client privilege protection.[2]

## BACKGROUND

This class action arises from the September 29, 2024 chemical fire and explosion at BioLab's Conyers, Georgia facility, which released toxic chemicals, forced mass evacuations and a county-wide shelter-in-place order, and caused widespread health and property damage. *See generally* Doc. 138. Plaintiffs allege that Defendants BioLab, Inc. and its parent company KIK Custom Products Inc. knew of the hazards associated with TCCA, among other chemicals stored at the facility, and failed to take reasonable precautions, despite a long history of similar fires at BioLab facilities nationwide. *E.g., id.* ¶¶ 3, 229, 233–44.

---

[2] Since the conference with the Court, the parties have continued to confer on these issues but have—so far—been unable to reach resolution. While Plaintiffs are still hopeful resolution without Court intervention is possible, Plaintiffs file this motion to preserve their rights in view of the deadline imposed by the Court following the conference.

**A.    Plaintiffs learned of Ramboll's 2022 engagement through Open Records Act requests.**

Plaintiffs' Open Records Act requests revealed that Defendants hired Ramboll to perform work related to the Conyers BioLab facility in 2022. Plaintiffs issued a third-party subpoena to Ramboll on April 28, 2025, and Defendants intervened, asserting that Ramboll's work in 2022 was non-testifying expert work product.

**B.    Defendants produced no evidence to support their work product claim until Plaintiffs raised the dispute with the Court.**

After months of conferral, and after Plaintiffs notified the Court of the privilege dispute, Defendants finally produced a single, heavily redacted nine-page document. Exhibit A. The only non-redacted information is the letterhead and four sentences under the heading "Scope of Work":



**SCOPE OF WORK**

Ramboll proposes to conduct on-site environmental reviews of each of the manufacturing sites (with limited exceptions, as identified below) and complete a desktop environmental review of all other current sites (e.g., warehouses, R&D facilities) and any known former sites.

The objective of Ramboll's review will be to identify environmental issues that are reasonable likely to result in liabilities or compliance costs in excess of $250,000 (termed herein as "potentially significant" issues).

The scope of work will include the tasks described below. Prior to commencing work on the following tasks, Ramboll will participate in a management call to confirm the universe of sites owned and operated by the Company, discuss known and potential environmental and high-level health and safety issues, reserves/accruals, logistics for Task 1, and other high-level matters to ensure Ramboll's review process is as efficient as possible.

The highlighted language above—a review of "each" and "all" sites, assessing "compliance costs," and considering financial "reserves/accruals"—is indicative

of a compliance audit and financial exposure assessment—not work done because KIK anticipated specific litigation.

### C.    Two days before this motion was due, Defendants revealed that Ramboll's work was shared with investment bankers.

The business nature of Ramboll's work is further underscored by Defense Counsel's September 15, 2025 admission that Ramboll's 2022 evaluation was shared with investment bankers retained by Centerbridge "in connection" with a "contemplated transaction" related to KIK in late 2022. Such an admission flatly contradicts KIK's position—over the last four months—that Ramboll's evaluation was prepared in anticipation of litigation. Disclosure to investment bankers is the hallmark of compliance and due diligence for a business deal, not litigation preparation—which is also consistent with contemporaneous news stories that Centerbridge was shopping to sell KIK in late 2022.[3]

### D.    Defendants have not produced any new evidence in support of their work product and privilege claims.

Despite indicating on the discovery call with the Court that they would provide additional evidence supporting their privilege claim before Plaintiffs' deadline to file this motion, Defendants have still not produced anything beyond the single, heavily redacted document they produced five weeks ago.

---

[3] https://www.bloomberg.com/news/articles/2022-10-05/centerbridge-backed- comet-cleaner-maker-kik-said-to-explore-sale?embedded-checkout=true. Copy attached as Exhibit B.

Because Defendants have failed to substantiate their privilege claims, the Court should compel production of Ramboll's pre-fire documents.

## ARGUMENT

### I.    Defendants bear the burden of establishing privilege.

Whatever privilege provision they invoke, Defendants—as the proponent of privilege—bear the burden of establishing its application.

As to work product, Defendants bear the burden of establishing that the subpoenaed documents were prepared in anticipation of litigation and it "must be specifically … demonstrated rather than asserted in a blanket fashion." *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 686 (N.D. Ga. 2012); *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007). This is an *evidentiary* burden, and thus a party satisfies it "by any of the traditional ways in which proof is produced in pretrial proceedings," including "a detailed privilege log and affidavits from counsel, the party, or the expert." *Spirit Master*, 287 F.R.D. at 684.

Similarly, the attorney-client privilege is narrowly construed, and "the burden of proof is upon ... the party invoking the attorney-client privilege, to establish (1) the existence of an attorney-client relationship and (2) the confidential nature of the information sought." *In re Grand Jury Subpoena*, 788 F.2d 1511, 1511 (11th Cir. 1986). As with the work-product privilege, the proponent's burden is discharged by supplying "a factual basis for" the

privilege assertions. *Carnes,* 244 F.R.D. at 698. Discharging the burden requires *proof*. In other words, "mere conclusory or *ipse dixit* assertions" of privilege are insufficient. *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011).

## II. Work product does not shield Ramboll's 2022 documents because they were not prepared in anticipation of litigation.

### A. Rule (3)(A), rather then Rule (4)(D), governs.

Federal Rule of Civil Procedure 26(b)(3)(A)—what this motion refers to as "Rule (3)(A)"—protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." While Rule (3)(A) protects "documents and tangible things," Federal Rule of Civil Procedure 26(b)(4)(D)—or "Rule (4)(D)"—protects *facts* and *opinions*. Specifically, Rule (4)(D) precludes a party from using "interrogatories or [a] deposition [to] discover facts known or opinions held by an expert who has been retained or specially employed in anticipation of litigation or to prepare for trial." In sum, the two subparts of Rule 26(b) offer stacked, not co-terminus, protections.

Defendants have invoked Rule (4)(D), but because Plaintiffs' subpoena seeks documents and tangible things, the relevant provision is Rule (3)(A) rather than Rule (4)(D). Either way, Rule (3)(A) does *not* apply to prevent document discovery from Ramboll, nor would Rule (4)(D) shield Ramboll from

interrogatories or a deposition regarding their work for KIK, because Ramboll's work was not done in anticipation of litigation.

### B. Rule (3)(A) protects only documents prepared in anticipation of litigation.

Federal courts, including those in this Circuit, consistently hold that ordinary-course compliance documents do not become privileged work product simply because they may later prove useful in litigation. The mere possibility— even likelihood—of future litigation is insufficient under Rule (3)(A) unless litigation was the "primary motivating purpose" for the materials' creation. *Blanton v. Nat'l Hot Rod Ass'n*, no. 2:20-cv-0188-RWS, 2021 WL 2451544, at *1–2 (N.D. Ga. Mar. 16, 2021). While "litigation need not necessarily be imminent," Rule (3)(A)'s work product protection only attaches when the "primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). The question, then, is whether documents sought were created "primarily to help litigate." *Id.*

Critically, it is not enough that a document may be *useful in* litigation. The Rule (3)(A) inquiry is whether it was prepared for *the primary purpose* of litigation. *Bridgewater*, 286 F.R.D. at 641. Indeed, even if "the party is aware that the document may also be useful in the event of litigation," Rule (3)(A) will not protect the document if it was "prepar[ed] … in the ordinary course of

business," rather than for litigation. *Id.* This also means "[a] party must anticipate litigation *at the time* the documents were drafted for the protections to apply." *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 698 (S.D. Fla. 2007) (emphasis in original).

### C. Evidence shows Ramboll's work was for a business, rather than legal, purpose.

The only evidence Defendants have supplied in support of their privilege assertion is a single, heavily redacted proposal tasking Ramboll with conducting broad "environmental reviews" of current and former sites to identify liabilities and *compliance costs* over $250,000. Exhibit A. That is routine compliance work or due diligence for a transaction, not litigation preparation, as required to invoke Rule (3)(A). Conferral letters confirm that Ramboll's work was focused on environmental compliance, and, in fact, as discussed more below, KIK's counsel admitted earlier this week that Ramboll's assessment was done as part of Centerbridge's contemplated sale of KIK in late 2022.

Defendants have not identified any specific risk, site, or even any particular event that led them to anticipate litigation, much less shown that the "primary purpose" of Ramboll's 2022 work because of that specific litigation risk. Evidence shows Defendants commissioned Ramboll to conduct a broad "environmental review" to find "'potentially significant' issues" at "each of [its]

manufacturing sites" and "any known former sites." Exhibit A. Defendants have offered no evidence linking Ramboll's work even to a *type* of claim, *group* of claimants, or *category* of injury.

In fact, the proposal's reference to any "'*potentially* significant' issues" at multiple current and former industrial sites belies the suggestion that KIK (and by extension, Ramboll) undertook this work in response to a specific litigation risk. *Id.* (emphasis added). As in *Bridgewater*, "there simply [was] no suggestion in the record of a non-litigation purpose" for the documents at issue. 286 F.R.D. at 644. Meanwhile, other facts—like the disclosure of Ramboll's work product to investment bankers and analyst reports that KIK might be the target of an acquisition or sale—indicate the work was undertaken for a business, rather than litigation, purpose. Materials developed from routine evaluations "can hardly be said" to be "undertaken in anticipation of litigation," even when litigation might occur *because of* the underlying activity. *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 118 (N.D. Ga. 1972).

### D.  These facts are unlike those where courts have found work-product protections.

These facts are in sharp contrast to cases where courts have determined Rule (3)(A) authorized privilege assertions. In *Powers v. United States*, the plaintiff (and privilege proponent) submitted affidavits expressly stating that

the experts were retained to draft affidavits "solely to satisfy" her pleading obligations for the subject litigation. *Powers*, 1:17-CV-071 (LAG), 2019 WL 5801876, at *3 (M.D. Ga. Jan. 29, 2019). Indeed, under Georgia law, the *Powers* plaintiff could not have commenced her medical malpractice suit without the experts' affidavits. *Id.*

In *Blanton*, the disputed materials—reports of a lawyer-directed investigation of the wreck giving rise to the litigation—were prepared only *after* the wreck, and the investigation began only *after* the *Blanton* defendant learned of "the severity of the incident" and that the plaintiff "suffered serious head trauma." 2021 WL 2451544, at *1. Defendants have identified no similar event that would give rise to a specific litigation risk, much less shown that Ramboll's work would not have occurred absent that risk.

And in *United States v. Roxworthy*, the privilege proponent supplied specific evidence that it prepared the memoranda at issue—discussing the tax treatment of specific transactions involving captive insurance companies—in contemplation of a specific kind of tax enforcement action. 457 F.3d 590, 597 (6th Cir. 2006). The privilege proponent showed "it planned to claim a $112 million tax loss with no corresponding book loss" and was advised "that the law surrounding captive insurance companies was unsettled, and that the IRS had demonstrated an inclination to litigate in that area." *Id.* This, the Sixth Circuit held, was sufficient to invoke Rule (3)(A)'s protections over the memoranda

because there was not just general legal risk but a specifically contemplated enforcement action. *Id.*

The Sixth Circuit has applied a particularly high standard, requiring "specific and detailed" evidence "to indicate that the documents were prepared in anticipation of litigation or for trial." *Toledo Edison Co. v. G A Techs., Inc., Torrey Pines Tech. Div.*, 847 F.2d 335, 341 (6th Cir. 1988). And where the affidavits in *Toledo Edison*, which were ultimately sufficient to carry the privilege proponent's burden, were "undisputed," "specific," and "detailed," Defendants lone redacted document is uncorroborated, vague, and general. These facts are more like those in *Milinazzo*, where some documents were created before the litigation-triggering event, and the privilege proponent lacked "specific evidentiary proof" of anticipated litigation. 247 F.R.D. at 701–02. The documents were therefore not privileged. *Id.*

In sum, none of the facts that have led Courts to apply Rule (3)(A) are present here. There is no specific evidentiary proof that Ramboll undertook its work in response to any specific risk, much less in anticipation of specific litigation. Because Defendants fail to meet their evidentiary burden and cannot claim privilege under Rule (3)(A), the Court should therefore compel Ramboll to produce the contested documents sought by Plaintiffs' subpoena.

11

III.    **Because Ramboll undertook its work for a business, rather than legal, purpose, attorney-client privilege does not apply.**

As noted above, during months of conferral, Defendants relied on the non-testifying expert rule—*i.e,* Rule (4)(D)—and work product more generally to support their privilege claim. Perhaps realizing they cannot meet the "in anticipation of litigation standard," they have more recently shifted to the attorney-client privilege. Defendants fare no better under this doctrine.

Again, as the privilege proponent, Defendants bear the evidentiary burden of showing attorney client privilege applies. *See* Part I, *supra.* Further, that burden is heavy in part because attorney-client privilege is strictly construed. The Supreme Court has made clear that "the protection of the privilege extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). "[W]here counsel seeks and obtains outside consulting services, the attorney-client privilege has been extended to third parties employed to assist a lawyer in the rendition of legal services," but "[t]he privilege is only extended where the third party's services are for the rendition of legal advice rather than business advice." *Ammons v. United States Fid. & Guar. Ins. Co.*, No. 1:04-CV-1861-RWS, 2005 WL 8154614, at *3 (N.D. Ga. May 17, 2005). This strict construction also limits privilege's application to circumstances where it is necessary to achieve its purpose. *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987).

12

Because Ramboll's engineering analyses, environmental assessments, and compliance reviews—and the materials on which they are based—are technical and factual in nature, they are not privileged. They reflect the firm's observations and conclusions as consultants, not confidential communications between an attorney and her client. They are, in other words, akin to the "engineering reports, photos, and videos" that the court in *Burrow v. Forjas Taurus S.A.* found were not privileged, even if those "document[s] or draft[s] ha[d] been through the hands of an attorney." 334 F. Supp. 3d 1222, 1237 (S.D. Fla. 2018).

Courts around the country speak in one voice on this point. As the Fourth Circuit explained, the attorney-client privilege applies to communications with non-attorney consultants only when the purpose of the communication is to assist the attorney in "rendering personal legal advice." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338 (4th Cir. 2005). The Second Circuit has similarly held that, "the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Privilege may extend to third-party professionals only where their presence is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

But *Kovel*'s "highly useful" language has—and should be—narrowly construed in part because (again) attorney-client privilege is narrowly construed. For example, in *Cavallaro v. United States*, the First Circuit rejected attempts to apply *Kovel* to consultants performing technical or business functions who were not necessary intermediaries for the communications between attorney and client. 284 F.3d 236, 249–50 (1st Cir. 2002).

The authority Defendants have (recently) invoked is not to the contrary. Defendants argue that decisions like *In re Piedmont Office Realty Trust Inc. Securities Litigation*, support their privilege assertion. No. 1:07-CV-02660-CAP, 2011 WL 13169494 (N.D. Ga. Oct. 27, 2011). But this argument misunderstands both this line of authority and Plaintiffs' arguments about privilege.

*In re Piedmont* involved (among other things) a privilege fight over communications among a client, its lawyers, and its investment bankers and other financial advisors. *Id.* at *1. The question was whether the inclusion of the bankers and advisors waived the attorney-client privilege on those communications, and Piedmont Realty, the privilege proponent, argued they did not because "[i]t was clear," after the special master's review of the documents, that the bankers and advisors "provided a highly useful, if not necessary, function in facilitating legal advice between Piedmont and its

14

attorneys." *Id.* The communications that included those third parties discussed, for example,

> matters relating to (a) the disclosures made in the S-11 filed on May 23, 2007; (b) Piedmont's response to Lexington's first tender offer made on May 24, 2007; (c) the disclosures made in the original Schedule 14D-9 filed on June 8, 2007; (d) statements made in letters to Piedmont's shareholders; and (e) Piedmont's response to Madison's October 2007 tender offer.

*Id.* at *3. That argument might explain why disclosure of Ramboll's work to KIK's investment bankers would not waive privilege—if Ramboll's work were privileged in the first instance—but it does not explain how or why Ramboll's work was subject to attorney-client privilege to begin with. What's more, the wealth of information available to the *In re Piedmont Realty Trust* special master, enabling him to evaluate the privilege assertion as an evidentiary question, stands in stark contrast to the single, heavily redacted document KIK has provided Plaintiffs to support its claim.

In short, Defendants have not shown how or why Ramboll's work was necessary to KIK's attorneys in rendering legal advice to KIK. And the evidence KIK has supplied indicates Ramboll's work served a business, rather than legal, purpose. Because Ramboll's work involved factual investigations and compliance advice—not confidential legal communications or advice necessary to facilitating attorney-client communications—attorney-client

privilege does not protect it. The Court should reject any attempt by Defendants to withhold these materials on attorney-client privilege grounds.

Respectfully submitted this 17th day of September, 2025.

<table>
<tr><td></td><td>/s/ Jason J. Carter</td></tr>
<tr><td>Daniel R. Flynn</td><td>Jason J. Carter</td></tr>
<tr><td>Admitted <em>Pro Hac Vice</em></td><td>Ga. Bar No. 141669</td></tr>
<tr><td>DiCELLO LEVITT, LLP</td><td>BONDURANT MIXSON & ELMORE, LLP</td></tr>
<tr><td>Ten North Dearborn Street,</td><td>1201 West Peachtree Street, Suite 3900</td></tr>
<tr><td>Sixth Floor</td><td>Atlanta, Georgia 30309</td></tr>
<tr><td>Chicago, Illinois 60602</td><td>(404) 881-4100</td></tr>
<tr><td>(312) 214-7900</td><td>carter@bmelaw.com</td></tr>
<tr><td>dflynn@dicellolevitt.com</td><td></td></tr>
<tr><td></td><td>L. Chris Stewart</td></tr>
<tr><td>Jean Sutton Martin</td><td>Ga. Bar No. 142289</td></tr>
<tr><td>Admitted <em>Pro Hac Vice</em></td><td>STEWART MILLER SIMMONS TRIAL ATTORNEYS</td></tr>
<tr><td>MORGAN & MORGAN</td><td>55 Ivan Allen Jr. Boulevard, Suite 700</td></tr>
<tr><td>201 N. Franklin St., 7th Floor</td><td>Atlanta, Georgia 30308</td></tr>
<tr><td>Tampa, Florida 33602</td><td>(404) 529-3476</td></tr>
<tr><td>(813) 559-4908</td><td>cstewart@smstrial.com</td></tr>
<tr><td>jeanmartin@ForThePeople.com</td><td></td></tr>
</table>

*Counsel for Plaintiffs*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I certify that this submission complies with the page and word requirements in Local Rule 5.1 because it does not exceed 25 pages and is prepared with size 13-point Century Schoolbook font and margins no less than 1 inch.

<u>*/s/ Jason J. Carter*</u>
Jason J. Carter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing **PLAINTIFFS' MOTION TO COMPEL DISCOVERY** with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This 17th day of September, 2025.

*/s/ Jason J. Carter*

Jason J. Carter
