# EXHIBIT C



April 28, 2025

**VIA PERSONAL SERVICE**

Records Custodian
Ramboll US Consulting, Inc.
C/O C T Corporation System
289 S Culver St.
Lawrenceville, GA 30046-4805

      **Re:**    *In re: BioLab Class Actions*, N.D. GA **(1:24-cv-004407-SEG)**
                    **Subpoena for documents**

Dear Sir/Madam:

      Enclosed please find a *Subpoena for Documents, Information, or Object*s ("*Subpoena*") in the above currently pending class action litigation before the Honorable Sarah E. Geraghty of the United States District Court for the Northern District of Georgia.

      Pursuant to the *Subpoena*, you are ordered to produce all responsive documents on or before May 26, 2025, at the address or via email set forth on the *Subpoena*. There is a Protective Order, Doc. 203, entered in this matter, which permits you to designate produced documents as "Confidential-Subject To Protective Order" or "Highly Confidential Attorneys' Eyes Only" under certain circumstances detailed in the Order. There is also an ESI Protocol, Doc. 202, entered in this matter, and the Parties to this case request that you produce documents in accordance with the specifications set forth in this Protocol to the extent reasonably feasible. The Protective Order and ESI Protocol are enclosed with this letter.

      Please direct all responsive communications to the following individuals, who will work with you in facilitating the production. We want to work with you to make this an efficient process, so please do not hesitate to contact us. The primary attorney who you should direct the response to is Maggie Galka. On all email correspondence we request that you include the following attorneys and paralegals:

      **Attorneys:**

      Margaret ("Maggie") Galka, mgalka@collinslaw.com
      Edward Manzke, ejmanzke@collinslaw.com
      Amanda Kay Seals, seals@bmelaw.com

**Paralegals:**

Amber Blevins, ablevins@collinslaw.com
Lindsey Harrison, harrison@bmelaw.com

Thank you for your attention to this matter.

Very truly yours,

*/s/ Maggie Galka*

Maggie Galka
The Collins Law Firm, P.C.
1700 Park St., STE 200
Naperville, IL 60563
c: 708-646-8559
mgalka@collinslaw.com

Encs.
cc:      Defense counsel of record

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Georgia

|  |  |  |
|---|---|---|
| *In Re*: BioLab Class Actions | ) ) ) ) ) ) | Civil Action No.  **1:24-CV-4407-SEG** |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     **Ramboll US Consulting, Inc. - 289 S Culver St, Lawrenceville, GA, 30046-4805, USA**

---
*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

**Please produce the documents in the attached rider either via email to mgalka@collinslaw.com or by mail to The Collins Law Firm, P.C., 1770 Park St., Ste. 200, Naperville, IL 60563**

| Place: **The Collins Law Firm, P.C.** **1770 Park St., Ste. 200** **Naperville, IL 60563** | Date and Time: **05/26/2025 11:59 pm** |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

---

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  |  |  |
|---|---|---|
| _____ *Signature of Clerk or Deputy Clerk* | OR | **/s/ Margaret E. Galka** *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  **Plaintiffs,** **Fannie Tartt, et. al.** _____, who issues or requests this subpoena, are:

**Margaret E. Galka/The Collins Law Firm, P.C., 1770 Park St., Ste. 200, Naperville, IL 60563**

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. **1:24-CV-4407-SEG**

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ **0.00** .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>RIDER TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS TO RAMBOLL</u>

### <u>DEFINITIONS</u>

1.      When used in this subpoena, the terms "You" or "Your" shall mean Ramboll US Consulting, Inc., Ramboll, Ramboll Group, Ramboll Group A/S, Ramboll USA, Inc., Ramboll US Corporation, their agents, representatives, assignees, including but not limited to Jason Miller, and unless privileged, their attorneys.

2.      "Bio-Lab" means Bio-Lab, Inc. and its respective current or former representatives, corporate representatives, successors, successors in trust, successor trustees, receivers, assigns, general partners, limited partners, agents, officers, directors, employees, contractors, subcontractors, divisions, subsidiaries, parent companies, subsidiaries, and affiliated or other related companies.

3.      "Centerbridge" means Centerbridge Partners, L.P., Centerbridge Capital Partners III, LP, and their respective current or former representatives, corporate representatives, successors, successors in trust, successor trustees, receivers, assigns, general partners, limited partners, agents, officers, directors, employees, contractors, subcontractors, divisions, subsidiaries, parent companies, subsidiaries, and affiliated or other related companies.

1

4.    "Chemical(s)" shall be interpreted expansively to include all raw materials, intermediate materials, and all finished products or materials stored at the Site, including on transportation vehicles servicing the Site.

5.    "Combustible Materials" includes Chemicals, Fuels, and any other substances or materials that are combustible including but not limited to cardboard and plastic packaging products, wood pallets, and paint spray cans.

6.    "Communication" means any transfer of information, ideas, opinions or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or verbal transfers between natural persons, but includes all other transfers, including, but not limited to, electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

7.    "Conyers Site" or "Site" means those premises of the entire industrial facility served by the addresses: 1700 Covington Hwy, Conyers, GA 30012 and 1630, 1650, and 1700 Old Covington Hwy SW, Conyers, GA, 30012. "Site" should be interpreted expansively to include the interior and exterior of all buildings covered by Georgia Environmental Protection Division, Air Protection Branch, Permit No. 2842-247-0009-S-03-0 issued on April 24, 2014; Permit No. 2842-247-0009-S-03-1 issued on April 10, 2015; Permit No. 2842-247-0009-S-03-2 issued on January 4, 2018; and Permit No. 2842-247-0009-S-03-3 issued on September 18, 2018, as well as the property surrounding the facility, and all activities taking place

at the facility whether permitted or unpermitted.  The Conyers Site shall also include all transportation vehicles located on the premises.

8.      "Decomposition Event" means the chemical decomposition event and related fire(s) and explosions at the Conyers Site beginning on September 29, 2024 and continuing until such time as all chemical decomposition ceased and did not restart, and all fire(s) was completely extinguished.

9.      "Document" shall be construed broadly and expansively to include any medium upon which information is recorded, including, but not limited to every original (including any copy of any original which differs in any way from the original) of every writing and recording, photograph, or other memorialization, of every kind or description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, computerized, mechanical, magnetic, optical, electronic, or electrical means whatsoever. Any Document with any marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character and not part of the original text, or any reproduction thereof, is to be considered a separate Document for purposes of these Requests.

10.     "KIK" means KIK Custom Products, Inc., KIK International LLC, KIK Consumer Products, Inc., and KIK US Holdings, LLC, and their respective current or former representatives, corporate representatives, successors, successors

in trust, successor trustees, receivers, assigns, general partners, limited partners, agents, officers, directors, employees, contractors, subcontractors, divisions, subsidiaries, parent companies, subsidiaries, and affiliated or other related companies.

11.    "Person" means a natural person, individual, partnership, firm, labor organization, corporation, governmental body, or any kind of business or legal entity, and its agents or employees.

## **INSTRUCTIONS**

1.    If you object to, or otherwise decline to respond to, any portion of a Request, please provide all Documents called for by that portion of the Request to which you do not object or to which you do not decline to answer. If you object to a Request on the ground that it is too broad (i.e., that it calls both for Documents that are relevant to the subject matter of the action and Documents that are not), please provide such Documents as are concededly relevant. If you object to a Request on the ground that to provide Documents would constitute an undue burden, please provide such requested Documents as can be supplied without undertaking an undue burden.

2.    All objections or answers to these Requests which fail or refuse to respond fully to any Production Request on the ground of any claim of privilege of any kind shall:

4

    a.      State the nature of the claim of privilege;

    b.      State all facts relied upon in support of the claim of privilege or related thereto;

    c.      Identify all Documents related to the claim of privilege;

    d.      Identify all persons having knowledge of any facts related to the claim of privilege;

    e.      Provide a description of each Document withheld sufficient to validate the privilege claimed, including the date of each Document, its author, and all recipients; and

    f.      To the extent not privileged, describe the subject matter of the Document.

3.      These Requests are continuing in nature. You shall provide additional Documents, by way of supplemental responses, as you or any person acting on your behalf may hereafter obtain or become aware of, which will augment, modify or clarify the responses now given, or otherwise be responsive to any of these Requests.

4.      Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to obtain the broadest possible meaning.

5.      Documents produced for inspection shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the paragraphs and subparagraphs of the Production Requests set forth below.

6.      These Requests are intended to cover all information and Documents in your possession, custody, or control. If any Document described in the Requests or responses thereto was, but no longer is, in your custody or control, or in existence, state whether:

    a.      It is missing or lost;

    b.      It has been destroyed;

      c.      It has been transferred, voluntarily or involuntarily, to others; or

      d.      It has been disposed of otherwise.

7.      In each instance, explain the circumstances surrounding such disposition and identify the person(s) directing or authorizing the same, and the date(s) thereof, including but not limited to, document retention policies. Identify each Document by listing its author, the author's address, type of Document, date, subject matter, present location(s) and custodian(s), and state whether the Document (or copies) are still in existence.

8.      If the requested Document is known to exist, but the responding party does not possess or have custody or control over the Document, it shall be so indicated along with the name of the person who has possession, custody, or control of the Document.

## DOCUMENTS REQUESTED

1.      All communications, correspondence, or documents exchanged between You and Bio-Lab regarding the Conyers Site.

2.      All communications, correspondence, or documents exchanged between You and KIK regarding the Conyers Site.

3.      All communications, correspondence, or documents exchanged between You and Centerbridge regarding the Conyers Site.

4.     All communications, correspondence, or documents exchanged between You and any of the following entities (or agents, representatives, employees, or unless privileged, attorneys thereof) regarding the Conyers Site:

    a.  City of Conyers, including but not limited to any elected officials;

    b.  Rockdale County Emergency Management Agency, including but not limited to Meredith Barnum or Gerald Woodridge Jr.;

    c.  Rockdale County Fire Rescue;

    d.  Occupational Safety and Health Administration;

    e.  U.S. Chemical Safety and Hazard Investigation Board;

    f.  U.S. Environmental Protection Agency;

    g.  Georgia Environmental Protection Division;

    h.  WilmerHale;

    i.  any insurance company, including but not limited to Aspen American Insurance Company, Nationwide, National Casualty Company, Great American Insurance Group, Zurich, Allianz, XL Insurance America, Liberty Mutual Insurance Company, Ironshore Specialty Insurance Company, Navigators Insurance Company, Everest National Insurance Company, Lloyd's Insurance Company or Beazley Group; or

    j.  any other local, county, state, or federal agency.

5.      All documents relating to any services You provided, or proposed providing to any person or entity regarding the Conyers Site and/or the Decomposition Event, including but not limited to engineering services, safety services, training services, emergency response planning services, environmental services, consulting services, compliance program services, and industrial hygiene services.

6.      All documents relating to any fire and/or explosion at the Conyers Site, including but not limited to, the Decomposition Event.

7.      All photographs, video recordings, diagrams, blueprints, or drawings of the Conyers Site.

8.      All documents relating to any investigation at or regarding the Conyers Site.

9.      All documents relating to any water pump(s), sprinkler(s), or other fire protection or suppression system(s) or equipment at the Conyers Site including any proposed or actual upgrade(s) or retrofit(s) to such system(s) or equipment.

10.      All documents identifying or relating to any law, regulation, code, rule, permit, permit application, or other legal requirement applicable to the Conyers Site with respect to use, occupancy, water pump(s), sprinkler(s) or other fire protection or suppression system(s) or equipment.

11.    All documents relating to any inspection of the Conyers Site, either performed by You or any third party.

12.    All documents relating to any chemicals at the Conyers Site.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

*In Re*: BioLab Class Actions

Civ. A. No.
1:24-CV-004407-SEG

## STIPULATION AND ORDER FOR THE PRODUCTION  OF
## DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Plaintiffs and Defendants Bio-Lab, Inc., KIK International, LLC, KIK Custom Products, Inc., and KIK US Holdings, LLC (collectively,  "Bio-Lab and the KIK Defendants"), and Defendants Centerbridge Partners, LP and Centerbridge Capital Partners III, LP (collectively, the "Centerbridge Defendants") (each a "Party" and collectively the "Parties") by and through their counsel of record, hereby agree that the following procedures and protocols outlined in this Order (the "Protocol") govern the production of discoverable Electronically Stored Information ("ESI") and hard-copy documents (collectively, "Discoverable Information") by the Parties in the above-captioned litigation (the "Matter").  This Protocol supersedes prior pretrial orders issued in this Matter to the extent they are inconsistent with this Protocol's provisions.

## I.      GENERAL PROVISIONS

### A.      General

1

1. <u>Discoverability and Admissibility</u>.   Nothing in this Order is intended to be an exhaustive list of, expansion of, or limitation on the discovery obligations or rights of a Party requested to produce documents or ESI ("Producing Party") or a Party requesting documents or ESI ("Requesting Party").   Except as specifically set forth herein, this Order does not (a) alter or affect the applicable Federal Rules of Civil Procedure ("Rules"), or (b) address, limit, expand, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced.   The purpose of this Order is to facilitate the exchange of ESI and hard-copy documents in an efficient manner and in accordance with the Rules.   By stipulating to this Order and agreeing to produce documents in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

2. <u>Producing Party's Right to Review Own Documents</u>.   This Protocol does not limit a Producing Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

3. <u>Technical Issues and Proportionality</u>.   The procedures and protocols outlined in this Order govern the production of documents and ESI by all Parties.   The Parties will take reasonable and proportional steps to comply with this

Order.  The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order and, to the extent that a Party believes that compliance with this Order imposes an undue burden or expense disproportionate to the needs of the case, the Party claiming such a burden or expense shall inform all other Parties in writing of the asserted burden or expense, describing it (and any potential solutions) with specificity, and the Parties shall thereafter promptly meet and confer in an effort to resolve the issue.  All productions made pursuant to this Order are subject to any confidentiality, preservation, protective, and/or privilege orders entered in the Matter.

   **4.** <u>Modification</u>. Any practice or procedure set forth in this Protocol may be modified by written agreement of the Parties.

   **5.** <u>Dispute Resolution</u>. The Parties will act in good faith to try and resolve any disputes regarding the issues set forth in this Protocol prior to filing a motion with the Court or otherwise seeking relief.  Regarding all disputes, if the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures for discovery disputes.

  **B.** **Applicability**

  The production specifications in this Order apply to documents that are produced in the first instance in the Matter.  In the event of transfer to other courts,

this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions served in the Matter that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Requesting Party otherwise agree in writing.

### C.   ESI Liaison Counsel

Each Party agrees to designate an ESI Liaison within fourteen (14) days after entry of this Protocol. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible). All ESI Liaisons shall be included on all correspondence relating to document productions.

### D.   Deadlines

References to schedules and deadlines in this Protocol shall comply with F.R.C.P. 6 with respect to computing deadlines.

### E.   Definitions:

"Non-Party" means any person or entity that is not a Party to the Action and will be requested to produce Documents, either voluntarily or in response to a subpoena.

"Party" means Plaintiffs and Defendants in this Matter.

"Requesting Party" means the Party requesting production of documents.

"Producing Party" means the Party that may be producing documents in response to the request of Requesting Party.

### F.     Confidential Information

Nothing herein shall contradict the Parties' rights and obligations with respect to any information assigned a confidentiality designation under a protective order entered in this Matter.

### G.     Encryption

To maximize the security of information in transit, all methods of delivery must be encrypted or, if not possible, at least password-protected; the Producing Party will provide a decryption key or password under separate cover at the time of production.

### H.     Rolling Productions

The Parties agree to produce documents and data on a rolling basis when practicable.  The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable

requests for prioritized production, taking into account the volume of information at issue, the relative accessibility of information, efficiencies in the process of search and review, and the additional processing time required for certain types of ESI.

## II.    SCOPE OF DISCOVERY

### A.    Scope in General

The Parties may obtain discovery regarding any nonprivileged matter that is relevant to any Party's claim or defense and proportional to the needs of the case, subject to Rule 26(b)(1) of the Federal Rules of Civil Procedure.

### B.    Preservation and Collection

Nothing in this Order shall alter the preservation duties imposed by the Federal Rules of Civil Procedure or applicable law.

1.    <u>Not Reasonably Accessible ESI</u>.    The Parties agree that the circumstances of this Matter do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible.    For purposes of this paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

a.    Data remaining from systems no longer in use as of the date of this Protocol that is unintelligible to and inaccessible by commercially reliable systems.

       b.     ESI stored in volatile and non-volatile memory (including but not limited to Random Access Memory ("RAM"), Read-only Memory ("ROM"), and cache memory) or in temporary or cache files (including but not limited to internet history, web browser cache, and cookie files), wherever located.

       c.     ESI stored as server, operating system, or software application logs that do not store user-created content during ordinary use.

       d.     Temporary internet files, history, cache, cookies, and the like.

       e.     Encrypted ESI/password-protected files, where the key or password cannot be ascertained without reasonable efforts.

       f.     ESI affected by ransomware or malware or that otherwise has been corrupted or is otherwise unable to be processed without extraordinary efforts.

       g.     ESI stored on photocopiers, printers, scanners, and fax machines.

       h.     Other file types as agreed to by the Parties.

This protocol does not prevent any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

**C.    Third Party Subpoenas and the Processing of Non-Party Documents**

1.  A Party that issues a subpoena ("Issuing Party") upon any Non-Party shall include with the subpoena a copy of this Order and any protective orders agreed to or entered in this Matter.  The Issuing Party shall inform the recipient of the subpoena that the Parties in this Matter have requested that Non-Parties produce documents in accordance with the specifications set forth in this Protocol to the extent reasonably feasible.

2.  The Issuing Party shall promptly produce to all other Parties a copy of any documents and ESI (including any metadata) obtained from a Non-Party as set forth below:

    a.  If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process such hard-copy documents or native files in accordance with the provisions of this ESI Protocol and then produce the processed hard-copy documents or native files to all other Parties.

    b.  However, any native files or documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such native files or documents are received by the Issuing Party.

          i.   The Issuing Party will take reasonable steps to avoid "half-processed" productions—i.e., where practicable, to process all or none of the native files in a Non-Party production in accordance with the provisions of this ESI Protocol.

        ii.   If the Issuing Party processes any native files or documents after disseminating them to other Parties in native format, the Issuing Party will produce those newly processed native files and documents to all other Parties.

    c.  If the Non-Party production is not Bates-stamped, the Issuing Party will endorse the Non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

3.  For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

## III.   GENERAL PRODUCTION FORMAT PROTOCOLS

### A.   TIFFs or PDFs

Except for structured data all production images will be provided as either a TIFF or PDF.  If producing a TIFF, the Producing Party shall provide a single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files.  If producing in PDF, each file should be provided as a

single 300 DPI, text-searchable PDF. Each document level file should be named after the BeginBates. Additionally, the PDF should have the same number of pages as the text files have page breaks. Each image will have a file name that is the unique Bates number of that image, pursuant to Section III(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file. Documents that are difficult to render in TIFF or PDF because of technical issues, or any other documents that are impracticable to render in TIFF or PDF format, may be produced in their native format with a placeholder TIFF or PDF image stating "Document Produced Natively," unless such documents contain redactions, in which case the documents will be produced in TIFF or PDF format. Certain files may be inaccessible due to password protection, corruption, or unreadable document formats. If reasonable efforts to obtain useful images or accessible native versions of these files are unsuccessful, such documents may be withheld. In the event that a corrupt or inaccessible file is an attachment to a responsive email or Edoc, the parties shall produce the responsive email and slipsheet the corrupt or inaccessible file. A Producing Party retains the option to

produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF or PDF formats.

**B.    Text Files**

Each document or ESI item containing text produced under this Protocol shall be accompanied by a text file as set out below.  All text files shall be provided as a single document level text file for each item, not one text file per page.  Each text file shall be named to use the Bates number of the first page of the corresponding production item.

**1.**    <u>OCR</u>. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize standard OCR processes and technology.  OCR text files should indicate page breaks where possible.  The Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.   In such instances, the Producing Party will make the paper documents available for inspection and copying, if available, in accordance with <u>Fed. R. Civ. P. 34</u>.

**2.**    <u>ESI.</u>  Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where reasonably available, in accordance with Section IV. G ("Hidden Text, Comments, and Track Changes").  Where reasonably practicable, text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals

11

to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

### C.    Production of Native Items

The Parties agree that ESI shall be produced as TIFFs or PDFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix A hereto.  The exception to this rule shall be, PowerPoint files (e.g., MS Office .ppt or .pptx files), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, .mp3, .mp4, and .avi), for which all ESI items shall be produced in native format unless there is an agreement to the contrary.  In addition to producing the above file types in native format, the Producing Party shall produce a single-page TIFF or PDF slip sheet indicating that a native item was produced.  The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls.  The corresponding load file shall include NativeFileLink information for each native file that is produced.   Through the pendency of the Litigation, the Producing Party shall exercise reasonable, good

12

faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

**D.      Requests for Other Native Files**

Other than as specifically set forth above, a Producing Party need not produce documents in native format.  If a Party would like a particular document produced in native format and this Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format.  The Requesting Party will provide a specific Bates range for documents it wishes to be produced in native format.  Such requests will not be unreasonably denied by the Producing Party.  Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix A.

**E.      Bates Numbering**

All images must be assigned a Bates number that must always:  (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the Producing Party.  To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. If a document is reproduced for any reason, it shall be reproduced under the same Bates number as the original production, to the extent reasonably practicable. If additional pages are needed beyond those allocated to it during the initial production, they shall be assigned additional number following a period (e.g., "ABC-000001.001"), to the extent reasonably practicable.

The Producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

### F.    Parent-Child Relationships

Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

### G.    Entire Document Families

Entire Document families should be produced, even if only the parent email or an attachment to an email is responsive, excepting documents that are withheld on the basis of privilege and in compliance with the Parties' stipulation or the Court's order on such assertions or privilege.

### H.    Load Files

All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  The load file must reference each TIFF in the corresponding production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

### I.    Color

With the exception of native files, ESI and original documents containing color need not be produced initially in color unless otherwise agreed.  If particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the Parties shall cooperate to arrange for the mutually acceptable production of such documents.

### J.    Foreign Language Documents

To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

### K.    Confidentiality Designations

If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of any Protective Order entered by the Court in the Matter or a confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably possible, this designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this Protocol, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided.

**L.      Production Media & Protocol.**

Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

**M.      Resolution of Production Issues**

Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Requesting Party. The Producing Party and the

Requesting Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.  However produced, a Producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

### N.    Hyperlinks

A Producing Party will use reasonable efforts to collect hyperlinked documents (meaning, those documents which are referenced by hyperlink that does not point to a public location) within the Producing Party's control, including those utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms, with the email or parent document to which the documents are associated. If documents cannot be extracted from links at the time of collection and the Receiving Party identifies unproduced hyperlinked documents that they request to be produced, the Producing Party will produce such hyperlinked documents provided that doing so does not impose an undue burden or expense disproportionate to the needs of the case. A reasonable request for hyperlinks should include a list of hyperlinks and corresponding Bates numbers. The Parties acknowledge that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent. The parties also acknowledge that the metadata for hyperlinked documents produced under this section may not reflect the metadata for those documents at the time the documents

were hyperlinked. The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness or reasonableness of production of the requested documents.

### O.    Hard Copy Documents

Hard-copy documents are to be scanned and produced electronically as images in the same order in which they are maintained in the ordinary course of business.  The Parties agree to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document and to treat documents that clearly appear to be separate documents as separate documents.  For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.  Original document orientation (i.e., portrait v. landscape) should be maintained to the extent practicable.

### P.    Redacted Documents

Redactions for relevance may not be made within a significant number of produced documents or ESI items as a matter of course. The Parties agree to meet and confer over permissibility of redaction of non-relevant commercially sensitive information within a significant number of otherwise responsive documents, prior to the significant number documents with any such redactions being produced.  No redactions for relevance to a significant number of documents will be made without

prior agreement from the receiving party or order of the Court.  If a party produces documents with redactions for relevance, they shall disclose this fact in a writing accompanying the production at the time that the production is transmitted.  A "significant number" would be more than twenty-five (25) documents or 1% of documents in a given production, whichever is greater.

To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, and the text of the Producing Party's redaction label.  The Producing Party may use OCR of redacted images to provide text for redacted documents.

## IV.    ESI METADATA FORMAT AND PROCESSING

### A.    System Files

ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.  Other file types may be added to the list of excluded files by agreement of the Parties.

### B.    Threading

The Parties may choose to produce only the most inclusive E-mail threads and eliminate non-inclusive threads where the non-inclusive threads are completely encompassed in the inclusive threads.  If a thread has unique documents attached, that thread will be considered inclusive, and shall be produced.

**C.     De-duplication**

The Parties agree that production of documents and ESI globally deduplicated in accordance with the provisions of this Protocol shall constitute production of documents as maintained in the ordinary course of business.  A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions, as follows:

**1.**     The Parties shall make reasonable efforts to not produce duplicate ESI. No Producing Party shall be required to conduct manual review to eliminate duplicates, including but not limited to hard-copy documents that are exact duplicates of electronic versions.  When duplicate ESI exists in the files of multiple custodians, the names of all custodians who were in possession of a document prior to de-duplication will be populated in the All Custodians field identified in Appendix A.  Likewise, the File Path that would have been provided for each version of the document that was not produced due to de-duplication shall be populated in the All File Paths field.

**2.**     Duplicate non-email ESI (such as Microsoft Word documents) ("EFiles") may be identified based upon MD5 or SHA-1 hash values for binary file content.  All ESI bearing an identical value are a duplicate group.  The Producing Party may produce only one document or native file for duplicate ESI documents within the duplicate group; however, to the extent automatic metadata population

is possible with industry standard ESI processing tools, the Producing Party will

identify the additional custodian(s) (i.e., "Custodians" and "FilePaths" metadata

fields set forth in Appendix A) for duplicate documents not produced.

### D.   Embedded Documents

Embedded documents from ESI (e.g., a spreadsheet embedded within a word

processing document) will, to the extent possible, be extracted and treated as child

documents and related back to their top-level parent documents (e.g., standalone file,

email message, etc.).

### E.   Embedded Objects

Embedded objects within documents or ESI (including but not limited to

logos, icons, emoticons, and footers) may be culled, provided they are produced

within the document itself.

### F.   Zero-byte Files

The Parties may filter out stand-alone files identified as zero-bytes in size (i.e.,

do not contain content).

### G.   Hidden Text, Comments, and Track Changes

ESI items shall be processed and produced in a manner that maintains and

displays all hidden text to the extent practicable, in a manner that preserves hidden

columns or rows, hidden text, hidden worksheets, hidden slides, speaker notes,

tracked changes, comments, and other revisions.   Nothing in this ESI Protocol

waives a Parties' rights to assert privilege or confidentiality for any of the information referenced in this section.

### H. Compressed Files

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

### I. Password-Protected or Encrypted Files

With respect to any password-protected or encrypted documents or ESI that are encountered during processing, the Producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.  If there are any issues that make it impracticable to provide such passwords, the Producing Party will provide information to allow the Requesting Party to assess such claims.

### J. Messages or Chats

The Parties agree that message, chat and collaboration software ESI (e.g., Microsoft Teams, OneDrive, Slack, Facebook Messenger, Signal, or WhatsApp) is discoverable subject to the considerations in FRCP 26(b).

## V. SEARCH METHODOLOGY

### A. Use of Search Methodologies

The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce responsive documents and ESI.  The use of a search methodology does not relieve a Party from its rights or obligations under the Rules regarding production of responsive documents, and accordingly documents or ESI known to be responsive to a discovery request or otherwise subject to production or relevant to the claims or defenses shall not be withheld solely on the basis that it was not returned by any search methodology used in accordance with this Order.

The Producing Party shall retain the presumptive right to manage and control review of its data files, including the right to use culling, searching, and advanced technology-assisted review tools. Prior to a Party using a search methodology (if any) to cull the universe of documents to be reviewed for production, the search terms, date limitations, and custodians applied to the data searched will be disclosed by the Producing Party to the Requesting Party. Should the Parties desire to leverage Technology Assisted Review ("TAR") or Continuous Active Learning ("CAL") for culling purposes[1], any search terms intended to be applied with these technologies must be disclosed, with the following information: (a) the name of the TAR/CAL software and (b) what quality control measures will be taken.  The Parties will take reasonable steps to resolve any issues regarding the use of TAR/CAL, including meeting and conferring as necessary.

---

[1] A party need not disclose the use of TAR solely for review prioritization.

At all meet and conferrals where the topic is the validity of search terms to identify documents subject to production, the Producing Party may provide search terms hit reports pursuant to paragraph V.B ("Hit Reports") below, or other data points available to provide insight into the validity of the method used.

**B.     Search Terms**

If, after disclosure of the Producing Party's proposed search methodology, a Requesting Party believes in good faith that the Producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, the Requesting Party may make requests for different or additional search methods, parameters, or search terms.  The Parties may thereafter meet and confer to resolve a dispute over the search methodology.  If a Party asserts that proposed search terms of a Requesting Party would impose an undue burden or expense or not be proportionate to the needs of the case, they may substantiate that assertion with a hit report or by other means.  If the issue is not resolved within fourteen (14) calendar days after the objection, either Party may thereafter immediately submit the dispute to the Court or its designee for resolution.

**C.     Hit reports**

A hit report may contain the following with respect to each proposed or modified search term in the collection:

- The number of documents with hits for that term;

- The number of unique documents for that term and no other term; and

24

- The number of family members associated with each document with hits.

## VI. PROPRIETARY SOFTWARE, SYSTEMS AND DATA STORAGE LOCATIONS

To the extent that (1) relevant ESI cannot be rendered or reviewed without the use of proprietary software (whether created by the Party or not); (2) relevant ESI is stored in large databases or file servers such as Network Attached Storage (NAS) or Storage Area Network (SAN); (3) relevant documents are stored in hard copies in a storage facility; or (4) relevant ESI exists on mobile devices and is not duplicative of ESI that is more readily available elsewhere, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such data sources, including, when appropriate, to meet and confer regarding relevant production format.

## VII. PRIVILEGE LOGS

Any document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work product doctrine, or any other claim of privilege from discovery (collectively referred to hereinafter as "privilege") is to be identified by the Producing Party in a privilege log. The parties disagree whether a categorical log may be appropriate in this litigation, but agree that by agreeing to this ESI Protocol, no Party waives the right to log documents categorically, if agreed to between the Parties or if permitted

by the Court.  If the Parties log each individual item withheld, the logs will conform to the following specifications.

### A. File Format

Privilege logs will be produced in an Excel format, or other agreed-upon format.

### B.    Fields

#### 1.    Metadata

A log of the documents withheld or redacted for privilege will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronically stored information:

- Author
- Subject
- Title
- Attachment Name
- File Name
- Custodian(s)
- Sender/From
- Recipient/To
- CC
- BCC
- Sent Date/Time or Created Date/Time
- Family relationship (e.g., identifying parent emails and attachments)
- File Extension

Parties may substitute an alternative description of the content within the identified metadata field(s) where the content of the metadata field reveals privileged information.  Where the Producing Party has substituted an alternative description

of the content within the identified metadata field(s), it shall identify each instance in which it has done so and briefly state the reason for the modification.

2.    **Identifying Attorneys and Third Parties**. The privilege logs will clearly identify any attorneys or third parties on the privilege log. To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information to enable other Parties to assess the privilege claim.

3.    **Other contents.** Parties will also include on the privilege log fields containing:

- a unique document ID or Bates number;
- information sufficient to understand the family relationship of withheld or redacted documents;
- the privilege asserted (*e.g.*, attorney-client, work product); and
- a description of the nature of the withheld or redacted document or communication in a manner that, without revealing information claimed privileged, will enable a party to assess the privilege claim, with the exception that the basis for a redaction need not be logged if it is obvious from context.

4.    **Treatment of Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

If the document is the parent or child of a family of documents, some of which have been produced and others withheld, the log should identify the Bates numbers of the first document (i.e., the parent, or if the parent is withheld the first attachment) produced from the family in which the logged document was withheld.

27

## C.   Listservs

To the extent that Listserv or group email addresses are identified on the privilege log, the Designating Party shall work in good faith to identify individuals and/or groups of individuals who make up such Listserv or group email.

## D.   Hard Copy

To the extent a Producing Party seeks to withhold or redact any hard-copy documents or documents lacking sufficient metadata, the Producing Party shall log – if readily ascertainable – the following information for such documents consistent the Rules:

- a statement of the ground(s) alleged for withholding all or part of such document;
- the date the document was prepared or distributed;
- the identity of the document's author, along with an indication of any author who is an attorney;
- the identity of all recipients of the document, along with (1) an indication of any recipient who is an attorney and (2) an indication of any recipient who is a third party, as well an indication of the third-party relationship;
- a description of the withheld or redacted document in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the privilege claim, with the exception that the basis for a redaction need not be logged if it is obvious from context; and
- a unique document ID or Bates number.

## E.   Redactions

Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself.

**F.     Communications following the Complaint**

Privilege log identification is not required for privileged communications exchanged after the filing of the Complaint between the Producing Party and its counsel.

**G.     No Categorical Logging Without Consent or Court Order**

If a party wants to use a categorical log, that party shall raise the issue with the Receiving Party and the Parties shall thereafter meet and confer. If the Parties are not able to resolve the dispute it may be submitted to the Court for resolution.


DATED THIS 18TH DAY OF APRIL, 2025.

SARAH E. GERAGHTY
UNITED STATES DISTRICT JUDGE

DATED:  April 9, 2024

Respectfully Submitted,

*/s/ Jason J. Carter*
Jason J. Carter
Ga. Bar No. 141669
**BONDURANT MIXSON &
ELMORE, LLP**
1201 West Peachtree Street, Suite 3900
Atlanta, Georgia 3030
Telephone: (404) 881-4100
carter@bmelaw.com

Daniel R. Flynn*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
dflynn@dicellolevitt.com

Jean Sutton Martin*
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, Florida 33602
Telephone: (813) 559-4908
jeanmartin@ForThePeople.com

L. Chris Stewart
Ga. Bar No. 142289
**STEWART MILLER SIMMONS
TRIAL ATTORNEYS**
55 Ivan Allen Jr. Boulevard, Suite 700
Atlanta, Georgia 30308
Telephone: (404) 529-3476
cstewart@smstrial.com

*Interim Co-Lead Class Counsel*

J. Cameron Tribble

*/s/Michael A. Caplan*
Michael A. Caplan
Ga. Bar No. 601039
Michael L. Eber
Ga. Bar No. 859338
Jessica Arnold Caleb
Ga. Bar No. 141507
Emily C. Snow
Ga. Bar No. 837411
Alan M. Long
Ga. Bar No. 367326
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
meber@caplancobb.com
jarnold@caplancobb.com
esnow@caplancobb.com
jcaleb@caplancobb.com
along@caplancobb.com

Alan E. Schoenfeld*
Thomas K. Bredar*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street New York, NY
10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
thomas.bredar@wilmerhale.com

Felicia H. Ellsworth*

Georgia Bar No. 754759
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Telephone: (770) 227-6375
roy@barneslawgroup.com
bevis@barneslawgroup.com
ctribble@barneslawgroup.com
ktullos@barneslawgroup.com

*Interim Liaison Counsel*

*\*Pro Hac Vice*

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Robin C. Burrell
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue, N.W.,
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
robin.burrell@wilmerhale.com

*Counsel for Bio-Lab and KIK
Defendants*

Christopher S. Anulewicz
GA Bar No. 020914
R. Thomas Warburton
Ga. Bar No. 218175
**BRADLEY ARANT BOULT
CUMMINGS LLP**
Promenade Tower
1230 Peachtree Street NE, 20th Floor
Atlanta, GA 30309
Tel.: (404) 868-2100
canulewicz@bradley.com
twarburton@bradley.com

Kimberly Branscome*
**PAUL ,WEISS, RIFKIND,
WHARTON & GARRISON LLP**
2029 Century Park East, Suite 2000
Los Angeles, CA 90067-3006
Tel.: (310) 982-4350
kbranscome@paulweiss.com

31

Yahonnes Cleary*
**PAUL ,WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
ycleary@paulweiss.com

Reed Thomas Warburton
**BRADLEY ARANT BOULT**
**CUMMINGS LLP**
1230 Peachtree Street NE
Atlanta, GA 30309
404-868-2100
Fax: 205-488-6987

*Counsel for Centerbridge Defendants*

*\*Pro Hac Vice*

# APPENDIX A
# METADATA PRODUCTION FIELDS

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | First Bates Number associated with document (including prefix) | All |
| ENDDOC | Last Bates Number associated with document (including prefix) | All |
| BEGATTACH | First Bates Number (i.e., BeginDoc) of parent document in the family (including prefix) | All |
| ENDATTACH | Last Bates Number (i.e., EndDoc) of last child in the family (including prefix) | All |
| PAGECOUNT | Number of Bates Numbers associated with document (i.e., BeginDoc to EndDoc) (corresponds to number of pages for documents produced in image format) | All |
| ATTACHMENTCOUNT | Number of attachments; populated for parent email records only | All |
| CUSTODIANS | Multi-value field for all custodians of a document, when global deduplication has been employed, all custodians who are | All |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| | sources of an identical document. | |
| NATIVE TYPE | Type of native file loaded into the system | Email, EFiles |
| FILEEXTENSION | File extension of document | Email, EFiles |
| FILENAME | File name of document | Email, EFiles |
| FILESIZE | Size of the file in bytes | Email, EFiles |
| FILEPATHS | Multi-value field for all original paths of a document.  All documents should have a path value present.  If multiple documents are deducted during processing, this field should be populated with all path values available. | Email, EFiles |
| DATETIMESENT | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was sent | Email |
| DATETIMERECEIVED | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was received | Email |
| DATETIMECREATED | Date (mm/dd/yyyy) and time (hh:mm:ss format) that non-email data was created | EFiles and Attachments |
| DATETIMELAST MODIFIED | Date (mm/dd/yyyy) and time that (hh:mm:ss format) that non-email data was last modified | EFiles and Attachments |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| AUTHOR | Author field where available | EFiles |
| TO | To field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| FROM | From field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CC | CC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| BCC | BCC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| SUBJECT | Subject line extracted from email  file types (not populated for attachments unless they are also emails) | Email |
| CONVERSATION INDEX | Email thread created by the email system | Email |
| DATETIMESTARTED | Start date and time (mm/dd/yyyy hh:mm:ss) for calendar appointments | Email |
| TITLE | Title field where available | EFiles |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | All |
| REDACTED | Does the document contain redactions (Y/N)? | All |
| REDACTION REASON | Redaction reason designation (will be blank for documents without redactions) | All |
| HASHVALUE | Document-level MD5 or SHA1 hash value | All |
| TIME ZONE | Time zone in which the native file was processed | Email, EFiles |
| NATIVELINK | Path and filename to produced native file format (see Paragraph 4(e) in Appendix A) | Email, EFiles |
| TEXTLINK | Link to text file (see Paragraph 3 in Appendix A) | All |
| PRODUCTIONVOLUME | Unique identifier for the production in which the document is contained | All |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **STIPULATION AND [PROPOSED] ORDER FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This 9th day of April, 2025.

/s/ Jason J. Carter

Jason J. Carter

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: BIOLAB CLASS ACTIONS | **Civ. A. No. 1:24-CV-004407-SEG** |

## STIPULATED PROTECTIVE ORDER

WHEREAS Plaintiffs, Defendants Bio-Lab, Inc., KIK International, LLC, KIK Custom Products, Inc., and KIK US Holdings, LLC (collectively, the "Bio-Lab and KIK Defendants"), and Defendants Centerbridge Partners, LP and Centerbridge Capital Partners III, LP (collectively, the "Centerbridge Defendants") (each a "Party" and collectively the "Parties") believe that disclosure and discovery activity in this consolidated class action may involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting the above-captioned action (hereinafter referred to as the "Litigation") may be warranted;

WHEREAS to streamline the discovery process and minimize the need for Court intervention, this Protective Order adopts an approach that allows the Producing Party to designate materials being produced or deposition testimony as

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY;

WHEREAS this Order allocates to the Producing Party the burden of justifying the confidentiality designation and also establishes a procedure for the Receiving Party to, if appropriate, challenge the Producing Party's confidentiality designation before the Court;

WHEREAS good cause exists for entry of this Order, *see* <u>Federal Rule of Civil Procedure 26(c)</u>;

WHEREAS the Parties do hereby stipulate to and petition the Court to enter the following Stipulated Protective Order ("Protective Order");

THEREFORE, in view of the foregoing and because the Parties hereto, by and through their respective counsel, stipulate to the entry of the following Protective Order and having determined that good cause exists for the entry of this Order, **IT IS HEREBY STIPULATED AND ORDERED THAT:**

## I.    SCOPE

All documents and materials produced or adduced in the course of discovery whether by any Party to the litigation or Non-Party, including initial disclosures, documents and things produced in response to discovery requests, all physical evidence from relevant sites, deposition testimony and exhibits, other materials which may be subject to restrictions on disclosure for good cause, and information

derived directly therefrom ("Discovery Material"), shall be subject to this Order as set forth below. The protections conferred by this Order cover not only the above-mentioned discovery documents and material, but also any information copied or extracted from that material, all copies, derivations, abstracts, excerpts, summaries, or compilations of materials, and any testimony, conversations, or presentations by Parties or their counsel in court or other settings that might reveal discovery documents and material. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

## II.    DEFINITIONS

In this Order, the words set forth below shall have the following meanings:

### A.    "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER"

means information that falls within one or more of the following categories:

1. information prohibited from disclosure by statute;

2. information that reveals trade secrets;

3. information, materials, and/or other documents reflecting non-public business or financial strategies, and/or confidential competitive information;

4. sensitive commercial information that is not publicly available;

5. medical or psychiatric information concerning any individual;

6. private or personal information relating to an individual;

7.     personally identifying information;

8.     income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or personal financial information about any Party to the case, or any current or former employee, officer, director, or family member of any Party to the case;

9.     non-public communications with regulators or other governmental bodies; or

10.    personnel or employment records.

**B.**     **"HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY"** means documents or materials that contain trade secrets or other highly sensitive commercial or confidential information, and disclosure to third parties would result in potential harm to the disclosing Party or Non-Party.

**C.**     **"Party"** means Plaintiffs and Defendants in this Litigation, collectively the "Parties."

**D.**     **"Designating Party"** means the Party or Non-Party that designates documents or materials as Protected Material.

**E.**     **"Producing Party"** means the Party or Non-Party that may be producing documents or materials in response to the request of Requesting Party.

**F.**     **"Receiving Party"** means the Party receiving production of documents or materials.

4

G.     **"Requesting Party"** means the Party requesting production of documents or materials.

H.     **"Non-Party"** means any individual or entity that is not a named Plaintiff or Defendant in this action and will be requested to produce documents or materials, either voluntarily or in response to a subpoena.

I.     **"Protected Material"** means information that has been designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY.

### III.   DESIGNATION

#### A.     Designation of Information as Protected

A Producing Party may designate documents and materials for protection under this Order by placing or affixing the words CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY on the document or material, and on all copies, in a manner that will not interfere with the legibility of the document.  As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Protected Material.   Any copies that are made of any documents marked CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL  shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of

5

marked documents and do not otherwise disclose the substance of the Protected Material are not required to be marked.

Documents or materials shall be designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY prior to or at the time of production or disclosure, or in accordance with the procedure for designating deposition testimony contained in Section IV below. When electronically stored information or physical material is produced which cannot itself be marked with the designation CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY, the physical media on which such electronically stored information is produced or the storage container in which the physical material is produced shall be marked with the applicable designation. The Party receiving such electronically stored information shall then be responsible for labeling any copies that it creates thereof, whether electronic or paper, with the applicable designation. By written stipulation the Parties may agree temporarily to designate original documents that are produced for inspection CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY, even though the original documents being produced have not themselves been so labeled. All information learned in the course of such an inspection shall be protected in accordance with the stipulated designation. The copies of documents that are

selected for copying during such an inspection shall be marked CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY, as required under this Order and thereafter the copies shall be subject to protection under this Order in accordance with their designation. The designation CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY does not necessarily mean that the document or material has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

Any Party or Non-Party may designate documents or materials as CONFIDENTIAL –SUBJECT TO PROTECTIVE ORDER upon making a good faith determination that the documents or materials fall into the categories listed in Section II(A)(1 – 10) above.

Any Party may designate documents or materials as HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY upon making a good faith determination that the documents or materials fall into the categories listed in Section II(B) above.

### B.   Certification

The designation of a document or material as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or HIGHLY CONFIDENTIAL ATTORNEYS' EYES

ONLY is a certification by an attorney or Non-Party that the document or material

contains one of these categories of information as defined in this order.

### C.    Designation Disputes

The Receiving Party shall have the right to dispute a designation at any point

during fact discovery and for a reasonable time thereafter.  Challenges outside of

this period may be made with good cause.  The Receiving Party and Designating

Party must make good-faith efforts to resolve any such dispute without Court

intervention.

### D.    Blanket Designations Not Permitted

The Parties anticipate that documents and materials will be reviewed for

applicability of these categories and blanket designations of CONFIDENTIAL –

SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL

ATTORNEYS' EYES ONLY will not be applied to all documents simply because

they are produced in relation to the current litigation.

## IV.    DEPOSITIONS

Deposition testimony shall be deemed CONFIDENTIAL – SUBJECT TO

PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES

ONLY only if designated as such.  Such designation shall be specific as to the

portions of the transcript or any exhibit to be designated as CONFIDENTIAL –

SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL

ATTORNEYS' EYES ONLY. Such designations may be made by written notice to the court reporter within thirty (30) days (or as mutually agreeable) after a Party receives a transcript, with a copy of the notice to counsel for each Party to the Litigation of the specific pages and lines of the transcript that contain material that is CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY. All deposition transcripts shall be treated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY in their entirety until thirty (30) days (or as mutually agreeable) following receipt of the transcript unless receipt of confidentiality designations is received earlier. After designation, the deposition transcripts and any of those portions so designated shall be protected as CONFIDENTIAL – SUBJECT TO PROTECTIVE or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY, pending the resolution of any objection, under the terms of this Order.

## V.     PROTECTION OF PROTECTED MATERIAL

### A.     General Protections

Unless otherwise agreed to by the Parties, Discovery Material shall be utilized by a Receiving Party only for purposes of litigating this action and for no other purpose whatsoever. CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

may not be disclosed to any member of the proposed class other than the named Plaintiff(s) unless and until a class including the member has been certified.

## B.     Limited Disclosure of Information Designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Except with the prior written consent of the Designating Party or upon order of this Court, information designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER may only be disclosed to the following persons:

1.     **Counsel.** Attorneys and staff of law firms who are counsel of record in this action and counsel who are employees of a Party;

2.     **Parties.**  Individual Parties and employees of a Party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to advance this litigation and only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

3.     **The Court, Court Reporters, and Recorders.**  The Court, the jury, court reporters, videographers, and court personnel, as are necessarily incident to depositions, hearings, or trial;

4.     **Mediators.**  Any mediator who is assigned to hear this matter, and his or her staff.

5. **Litigation Support Personnel.** Outside photocopying, graphic production services, eDiscovery service providers, or litigation support services employed by the Parties' counsel to assist in this Litigation, and computer service personnel performing duties in relation to a computerized litigation system;

6. **Consultants, Investigators, and Experts.** Consultants, investigators, or experts employed by the Parties or counsel for the Parties to assist in preparation and hearings or trials of this action or proceeding, but only after such persons have completed the certification contained in the "Acknowledgment of Understanding and Agreement to Be Bound" (Attachment A);

7. **Mock Jurors and Focus Group Participants.** Professional jury or trial consultants including mock jurors and focus group participants who have signed a confidentiality agreement, provided, however that any such person shall not be permitted to retain any Protected Material;

8. **Witnesses.** Witnesses during depositions or trial;

9. **Author or Recipient.** The author or recipient of the document (not including a person who received the document in the course of litigation), or other person who otherwise possessed the information after they have executed the "Acknowledgment of Understanding and Agreement to Be Bound" (Attachment A); and

10. **Others by Consent.** Other persons only by written consent of the Producing Party or upon order of the Court and on such conditions as may be agreed or ordered.

Counsel for a Receiving Party shall not disclose or permit the disclosure of any HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY documents or materials to any person or entity except those set forth in Sections V(B)(1), (3), (4), (5), (6), (9), and (10) above. A Receiving Party may disclose or permit the disclosure of HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY documents or materials to witnesses, as described in Section V(B)(8), provided that prior to disclosing or permitting the disclosure of this material, the Receiving Party must establish that a proper foundation was laid, that the witness had knowledge of material, that the material reasonably relates to topics that the witness had knowledge of, or that there is otherwise a good-faith litigation purpose to show the witness the material.

## C. Control of Documents

Counsel for the Parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of documents, materials, or information designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY.

12

## VI.   FAILURE TO DESIGNATE

An inadvertent failure to designate a document as Protected Material does not, standing alone, waive the right to so designate the document. If a Party designates a document as Protected Material after it was initially produced, the Receiving Party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order. No Party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Protected Material, even where the failure to so designate was inadvertent and where the material is subsequently designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY.

## VII.   NO WAIVER OF PRIVILEGE UNDER FED. R. EVID. 502(d) / CLAWBACK PROCEDURE

### A.   No Waiver by Disclosure

This Protective Order is entered pursuant to and invokes the protections of Federal Rule of Evidence 502(d).  Any disclosure or production—inadvertent or otherwise—of information protected by the Producing Party's attorney-client privilege, work product protection, or other applicable privilege or protection ("Privileged Material") will not constitute a waiver—in this or any federal or state proceeding or investigation—of any available privilege or protection.

13

**B.    Handling and Return of Privileged Material**

    1.    Clawback Notice and Response Procedure. The party that produces Information that it claims to be inadvertently produced, privileged, or otherwise protected (the "Producing Party") must notify the party that received that Information (the "Receiving Party"), upon discovery that privileged or otherwise protected Information has been produced (the "Identified Material"), in writing that provides the Bates numbers of the Identified Material (the "Clawback Notice"). The Producing Party shall provide with the Clawback Notice a privilege log with the relevant information pertaining to each individual item of Identified Material, as required by the Federal Rules of Civil Procedure and applicable case law, and in accordance with any privilege logs provisions agreed to by the Parties.

    a.    No Challenge.  Within fourteen (14) calendar days of receipt of a Clawback Notice (unless the Receiving Party challenges the Producing Party's claim of privilege or work product protection as set forth below), or a determination by the Court that documents produced are Privileged Document(s), the Receiving Party must promptly return or destroy the document(s), all copies thereof, and any notes that reproduce, copy, or otherwise disclose the substance of the information for which privilege or work product protection is claimed, and provide a certification of counsel that all such Privileged Documents have been returned, destroyed, or deleted. The Receiving Party shall not use, disclose, or disseminate such Privileged

Documents in any way (including, but not limited to, using the information at depositions or trial), and must take reasonable steps to retrieve the Privileged Documents if disseminated by the Receiving Party prior to such notification.

      b.     Challenge.  If a Receiving Party challenges a claim that a document specified in a Clawback Notice is privileged or protected work product:

      (i)     Upon its receipt of a Clawback Notice, the Receiving Party shall notify the Producing Party of its challenge (and the reasons therefor) within fourteen (14) calendar days of receiving the Clawback Notice asserting the claim.  The Receiving Party shall immediately sequester the challenged document, all copies thereof, and any notes that reproduce, copy, or otherwise disclose or use the substance of the information for which privilege or work product protection is claimed, until the claim has been resolved.

      (ii)     Within fourteen (14) calendar days of the Producing Party's receiving notification of the challenge, the Parties shall meet and confer in an effort to resolve their disagreement. If the parties are unable to reach agreement, within fourteen (14) days of the meet and confer, the Producing Party shall present the issue to the Court for resolution, or else waive the claim of privilege or protection.  Each party may use the content of the document(s) at issue solely in briefing or argument submitted in connection with any challenge to a Clawback Notice, in which case the Receiving Party agrees not to argue that such use constitutes waiver of the claimed privilege or

work product protection. The content subject to the work product or privilege claim in the document(s) listed in the Clawback Notice shall not otherwise be used or disclosed by the Receiving Party during the time in which the parties are meeting and conferring about the basis for the assertion of privilege or work product protection or during the time in which the challenge is before the Court for determination, unless otherwise agreed in writing by the parties or ordered by the Court.  The Producing Party shall bear the burden of establishing the privileged or protected nature of the content of the document(s) it claims to be privileged or protected work product.  For the avoidance of doubt, nothing in this paragraph shall be construed as restricting the right of any party to challenge a claim of privilege at any time permissible under the Federal Rules of Civil Procedure and other relevant laws after return or destruction of the document(s)

### C.    Attorney's Ethical Responsibilities

Nothing in this Order overrides any attorney's ethical responsibilities under any other controlling rule to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

### D.    *In Camera* Review

Nothing in this Order limits the right of any party to petition the Court for an *in camera* review of the Privileged Information.

**E.**     **Intentional and Subject Matter Waiver**

This Order does not preclude a party from intentionally voluntarily waiving the attorney-client privilege or work product protection. Where a party makes such a voluntary waiver, the provisions of Federal Rule of Evidence 502(a) apply.

## VIII.  FILING OF PROTECTED MATERIAL

Any documents (including briefs), tangible things, or information designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER and HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY that are submitted to the Court in support of or in opposition to a motion or introduced at a hearing or during trial may retain their protected confidential status only by compliance with the Court's Procedures for Electronic Filing Under Seal in Civil Cases.  Unless otherwise ordered by the Court, all documents and materials that are subject to sealing during motion practice will not necessarily be protected from disclosure at any hearing, argument, or trial.  The hearing, argument, or trial will be public in all respects, except to the extent otherwise ordered by the Court.

## IX.  PROTECTION OF SPECIFIC DOCUMENTS

Except on privilege grounds not addressed by this Order, no Party may withhold information from discovery on the ground that it requires confidentiality protection greater than that afforded by this Order unless the Party moves for an order providing such special confidentiality protection, or the parties otherwise agree

17

subject to a meet and confer. Nothing in this Order prejudices a Party's right to seek such greater protections from the Court or to seek to file documents under seal.

## X.   USE OF CONFIDENTIAL DOCUMENTS OR INFORMATION AT TRIAL OR HEARING

Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing. Absent order of the Court, there will be no restrictions on the use of any document that may be introduced by any Party at any hearing or argument, or during the trial. Unless otherwise ordered by the Court, if a Party intends to present or anticipates that another party may present Protected Material at any hearing, argument, or trial, such Party shall bring that issue to the Court's and Parties' attention by motion, in a pretrial memorandum, or other suitable method. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at any hearing, argument, or trial.

## XI.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

### A.   Subpoenas or Legal Process Calling For Disclosure

If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall promptly give written notice thereof to every Party who has produced such documents or materials and to its counsel and shall provide each such

Producing Party with an opportunity to move for a protective order regarding the production of the documents or materials implicated by the subpoena.

### B.      Response to the Subpoena

Unless prohibited by law or court order, the Receiving Party also must promptly inform in writing the party who caused the subpoena or order to be issued in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order.  In addition, the Receiving Party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

### C.      Protective Order Sought

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this lawsuit as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY before a determination by the court from which the subpoena or order issued, unless the Receiving Party has obtained the Designating Party's permission. The Receiving Party shall cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY documents or materials may be affected.

## XII.   NON-PARTY INFORMATION

The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

## XIII.  GENERATIVE AI TOOLS

All information produced by the parties, including CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY information shall not be submitted to any Generative AI tool (*e.g.*, ChatGPT) that is available to the public without a contractual agreement; trains on customer data or learns from customer usage; retains customer data after being queried and returning a response; or otherwise retains information submitted to it. Any Generative AI tool used with information produced by the parties shall forget the query, response, and customer data used to generate the response immediately after providing the response. Before submitting any CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY information to a Generative AI tool, a Receiving Party shall ensure that it (or its vendor) can delete all such CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY

20

CONFIDENTIAL ATTORNEYS' EYES ONLY from the Generative AI tool at the conclusion of this matter, including any derivative information. The obligations and restrictions of this paragraph apply even where the CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY information has been anonymized.

## XIV.  INFORMATION SECURITY

### A.  Obligations to Maintain Security

The Parties agree that each Party will strictly protect and strictly maintain the security of all information provided by any Party. The Parties further agree that: (1) before submitting Protected Material to a Generative AI tool, as described in Section XIII, a Receiving Party will ensure that the Generative AI tool comports with the requirements of Section XIII, and (2) counsel for Receiving Party will advise any person who receives protected material pursuant to Section V.B. (1), (2) (5), (6) or (7) that they cannot input any Protected Material into a Generative AI tool other than those which have been determined by counsel to comport with the requirements of Section XIII.

An Information Security Incident ("ISI") is a situation in which a Party confirms or reasonably suspects that an unauthorized party has accessed or may have the ability to access any such information that it has in its possession or can access ("Discovering Party").

**B.    Notification of and Response to an ISI**

Discovering Party agrees to, on identifying an ISI, alert any and all implicated Parties and their respective counsel immediately, and in no instance more than twenty-four (24) hours following Discovering Party's identification of the ISI, via an e-mail to counsel for the implicated Parties.

Discovering Party agrees that in the event of an ISI, it will:

**1.**    Coordinate with any and all implicated Parties and their respective counsel to take all necessary steps to minimize the impact of the ISI on any and all implicated Parties and their respective counsel;

**2.**    Cooperate with any and all implicated Parties and their respective counsel in handling the matter, including, but not limited to, assisting with any investigation, providing any and all implicated Parties and their respective counsel with access to appropriate facilities, systems, and people, and making available all relevant records, files, data, and other material required to comply with applicable laws and regulations; and

**3.**    Promptly use Discovering Party's best efforts to prevent a recurrence of any such ISI.

**C.    Notice to Third Parties**

Discovering Party additionally agrees that it shall not inform any third party of any ISI without first obtaining any and all implicated Parties' written consent

22

other than to inform such third party that the matter has been forwarded to any and all implicated Parties and their respective counsel.

## XV.   OBLIGATIONS ON CONCLUSION OF LITIGATION

### A.   Order Continues in Effect

Unless otherwise agreed or ordered, this Order shall remain in effect after dismissal or entry of final judgment not subject to further appeal.

### B.   Obligations at Conclusion of Litigation

Within thirty days after dismissal or entry of final judgment not subject to further appeal, all documents and materials treated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER and HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY under this Order, including copies as defined in ¶ 7(f), shall be returned to the Producing Party unless:  (1) the documents or materials have been offered into evidence or filed without restriction as to disclosure; (2) the Parties agree to destruction in lieu of return; or (3) as to documents or materials bearing the notations, summations, or other mental impressions of the Receiving Parties, those Parties elect to destroy the documents or materials, and certify to the Producing Party that it has done so.  Notwithstanding the above requirements to return or destroy documents or materials, counsel may retain attorney work product, including an index which refers or relates to information designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER and HIGHLY CONFIDENTIAL

ATTORNEYS' EYES ONLY, so long as that work product does not duplicate verbatim substantial portions of the text or images of confidential documents. This work product shall continue to be CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER and HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY under this Order. An attorney may use his or her work product in a subsequent litigation provided that its use does not disclose or use CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER and HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY documents or materials.

DATED THIS 18th day of April, 2025.

SARAH E. GERAGHTY
United States District Judge

DATED:  April 9, 2024                    Respectfully Submitted,


*/s/ Jason J. Carter*                     */s/Michael A. Caplan*
Jason J. Carter                          Michael A. Caplan
Ga. Bar No. 141669                       Ga. Bar No. 601039
**BONDURANT MIXSON &**                    Michael L. Eber
**ELMORE, LLP**                           Ga. Bar No. 859338
1201 West Peachtree Street, Suite 3900    Jessica Arnold Caleb
Atlanta, Georgia 3030                    Ga. Bar No. 141507
Telephone: (404) 881-4100                Emily C. Snow
carter@bmelaw.com                        Ga. Bar No. 837411
                                         Alan M. Long
Daniel R. Flynn*                         Ga. Bar No. 367326
**DICELLO LEVITT LLP**                    **CAPLAN COBB LLC**
Ten North Dearborn Street, Sixth Floor   75 Fourteenth Street NE, Suite 2700
Chicago, Illinois 60602                  Atlanta, Georgia 30309
Telephone: (312) 214-7900                Tel: (404) 596-5600
dflynn@dicellolevitt.com                 Fax: (404) 596-5604
                                         mcaplan@caplancobb.com
Jean Sutton Martin*                      meber@caplancobb.com
**MORGAN & MORGAN**                       jarnold@caplancobb.com
**COMPLEX LITIGATION GROUP**              esnow@caplancobb.com
201 N. Franklin St., 7th Floor           jcaleb@caplancobb.com
Tampa, Florida 33602                     along@caplancobb.com
Telephone: (813) 559-4908
jeanmartin@ForThePeople.com              Alan E. Schoenfeld*
                                         Thomas K. Bredar*
L. Chris Stewart                         **WILMER CUTLER PICKERING**
Ga. Bar No. 142289                       **HALE AND DORR LLP**
**STEWART MILLER SIMMONS**                7 World Trade Center
**TRIAL ATTORNEYS**                       250 Greenwich Street New York, NY
55 Ivan Allen Jr. Boulevard, Suite 700   10007
Atlanta, Georgia 30308                   Tel.: (212) 230-8800
Telephone: (404) 529-3476                Fax: (212) 230-8888
cstewart@smstrial.com                    alan.schoenfeld@wilmerhale.com
                                         thomas.bredar@wilmerhale.com
*Interim Co-Lead Class Counsel*
                                         Felicia H. Ellsworth*
J. Cameron Tribble

Georgia Bar No. 754759
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Telephone: (770) 227-6375
roy@barneslawgroup.com
bevis@barneslawgroup.com
ctribble@barneslawgroup.com
ktullos@barneslawgroup.com

*Interim Liaison Counsel*

*\*Pro Hac Vice*

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Robin C. Burrell
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue, N.W.,
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
robin.burrell@wilmerhale.com

*Counsel for Bio-Lab and KIK
Defendants*

Christopher S. Anulewicz
GA Bar No. 020914
R. Thomas Warburton
Ga. Bar No. 218175
**BRADLEY ARANT BOULT
CUMMINGS LLP**
Promenade Tower
1230 Peachtree Street NE, 20th Floor
Atlanta, GA 30309
Tel.: (404) 868-2100
canulewicz@bradley.com
twarburton@bradley.com

Kimberly Branscome*
**PAUL ,WEISS, RIFKIND,
WHARTON & GARRISON LLP**
2029 Century Park East, Suite 2000
Los Angeles, CA 90067-3006
Tel.: (310) 982-4350
kbranscome@paulweiss.com

Yahonnes Cleary*
**PAUL ,WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
ycleary@paulweiss.com

Reed Thomas Warburton
**BRADLEY ARANT BOULT**
**CUMMINGS LLP**
1230 Peachtree Street NE
Atlanta, GA 30309
404-868-2100
Fax: 205-488-6987

*Counsel for Centerbridge Defendants*

*\*Pro Hac Vice*

**ATTACHMENT A**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| IN RE: BIOLAB CLASS ACTIONS | **Civ. A. No. 1:24-CV-4407-SEG** |

**EXHIBIT A TO STIPULATED PROTECTIVE ORDER**

The undersigned hereby acknowledges that he/she has read the Protective Order ("Order") dated _____ in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court of the Northern District of Georgia in matters relating to the Order and understands that the terms of the Order obligate him/her to use documents and materials designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY documents and materials to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____     _____
                                          Signature

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **STIPULATED [PROPOSED] PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This 9th day of April, 2025.

/s/ *Jason J. Carter*
Jason J. Carter