UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: BIO-LAB CLASS ACTIONS | CIVIL ACTION NO. 1:24-CV-4407-SEG |

**O R D E R**

This matter is before the Court on Plaintiffs' motion to compel discovery. (Doc. 229.)  After careful consideration, the Court enters the following Order.

## I.    Background

This is a putative class action stemming from a fire that engulfed a chemical plant in Conyers, Georgia last year.  The factual and procedural background of this case is summarized in the Court's previous order on Defendants' partial motion to dismiss.  (Doc. 228 at 2-9.)

Plaintiffs have moved to compel the production of documents sought by a third-party subpoena that Plaintiffs served on Ramboll U.S. Consulting, Inc. ("Ramboll") on April 29, 2025 (the "Ramboll Subpoena").  (Doc. 235-3).  Ramboll is an engineering and environmental consulting firm that performed work for KIK Custom Products, Inc. (collectively, with other Defendants, the "KIK

Defendants" or "Defendants")[1] in 2020, 2022, and 2024.  (Doc. 229 at 2.)

Plaintiffs seek to compel the production of documents related only to Ramboll's

2022 engagement with the KIK Defendants.[2]  (Doc. 235-3 at 12-15.)

Defendants object to the production of all documents related to Ramboll's

2022 engagement with the KIK Defendants, asserting both the attorney-client

privilege and the work-product doctrine.  (Doc. 235.)  Plaintiffs contend that

Defendants have not satisfied their burden to demonstrate that the materials

associated with Ramboll's 2022 work are covered by the attorney-client

privilege or the work-product doctrine.  (Doc. 229, 242.)  The Court held a

telephone conference on August 18, 2025, to address the parties' dispute.  (Doc.

222.)  The parties have continued to confer in an attempt to resolve the dispute

but have been unsuccessful.  (Doc. 229 at 3 n.2.)

---

[1] As Defendants Bio-Lab, Inc. ("Bio-Lab"), KIK International LLC, KIK U.S.
Holdings LLC, and KIK Custom Products Inc. are related entities that
collectively oppose the production of documents responsive to the Ramboll
Subpoena, the Court will collectively refer to them as the "KIK Defendants" or
"Defendants," consistent with the Court's prior practice.  (*See* Doc. 228.)

[2] The parties agree that the materials from Ramboll's work related to fires at
BioLab plants in 2020 and 2024 were created in anticipation of litigation and
therefore protected from discovery by the work-product doctrine.

## II.    Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *see also Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 676 (S.D. Ga. 2016) ("It remains true today both that claims and defenses provide discovery's outer bounds and that the court is inclined to err in favor of discovery rather than against it." (internal quotations omitted)).  While district courts have broad discretion in fashioning discovery rulings, "this discretion is not absolute: courts are bound to adhere to the liberal spirit of the Federal Rules." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (internal quotations omitted).

Under Federal Rule of Civil Procedure 37(a), "a party may move for an order compelling disclosure or discovery" after a good-faith attempt to confer with the opposing party to resolve a discovery dispute.  Specifically, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).  "[A] district court is allowed 'a range of choice'" in deciding whether to grant or deny a motion to

compel discovery responses. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006); *see also Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) ("[A] motion to compel discovery is committed to the discretion of the trial court[.]").

## III.  Discussion

The Court begins with Defendants' invocation of the attorney-client privilege and then turns to their assertion of the work-product doctrine.

### A. Attorney-Client Privilege

The attorney-client privilege protects "confidential communications between an attorney and client for the purposes of securing legal advice or assistance." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018).  The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Despite its critical role in fostering the lawyer-client relationship, "[t]he attorney-client privilege is not absolute." *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990). As the Eleventh Circuit has cautioned, because the privilege "serves to obscure the truth, . . . it should be construed as narrowly as is consistent with its purpose." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987); *see*

*also United States v. Nixon*, 418 U.S. 683, 710 (1974) ("Whatever their origins, [privileges] are not lightly created nor expansively construed, for they are in derogation of the search for truth").

"The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003) (quoting *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991)). "Blanket assertions of privilege before a district court are usually unacceptable." *In re Grand Jury Subpoena*, 831 F.2d 225, 226 (11th Cir. 1987) (quoting *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981)). To invoke the privilege, a party must demonstrate, with respect to each withheld communication, that:

> (1) the asserted holder of the privilege is or sought to become a client;

> (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Noriega*, 917 F.2d at 1550 (quoting *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)).

Of particular significance in the context of this dispute, the attorney-client privilege extends to "the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. That is, "[w]here counsel seeks and obtains outside consulting services, the attorney-client privilege has been extended to such third parties 'employed to assist a lawyer in the rendition of legal services.'" *Abdallah v. Coca-Cola Co.*, No. 1:98-cv-3679-RWS, 2000 WL 33249254, at *3 (N.D. Ga. Jan. 25, 2000) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolutions Trust Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993)); *see id.* (citing several cases). For instance, courts have extended the attorney-client privilege "to a psychiatrist hired by a defense lawyer to aid in an insanity defense, . . . to an accountant hired by an attorney to assist the attorney in giving the client tax advice, . . . and to an accountant who prepared a statement of a client's net worth at the attorney's request[.]" *Linde Thomson*, 5 F.3d at 1515 (citing *United States v. Alvarez*, 519 F.2d 1036, 1045-1046 (3d Cir. 1975); *United States v. Cote,* 456 F.2d 142, 144 (8th Cir. 1972); and *United States v. Judson*, 322 F.2d 460, 462-63 (9th Cir. 1963)).

However, courts have recognized that there must be "limitations on the protection accorded the work of third persons" lest the attorney-client privilege "engulf all manner of services performed for the lawyer that . . . should not be . . . summarily excluded from the adversary process." *F.T.C. v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980). Specifically, "the privilege should only be extended where the consultative services are closely tied to the giving of legal, rather than business, advice." *Abdallah*, 2000 WL 33249254, at *3; *see United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." (citations omitted)).

Such a limitation stems from the general principle that communications concerning business matters are not protected by the attorney-client privilege. *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981); *see also Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) ("Where a lawyer provides non-legal business advice, the communication is not privileged."); *BellSouth Adver. & Publ'g Corp. v. Am. Bus. Lists, Inc.*, No. Civ. 1:90-CV-149-JEC, 1992 WL 338392, at *8 (N.D. Ga. Sept.8, 2002) ("Attorney-client communications concerning business matters are not within the attorney-client privilege."). Thus, "[w]hen advice given by an attorney relates to both business and legal matters, the legal advice must predominate in order for the attorney-client

7

privilege to apply." *Carpenter v. Mohawk Indus., Inc.*, No. 4:07-CV-0049-HLM, 2007 WL 5971741, at *9 (N.D. Ga. Oct. 1, 2007). While the "line between legal advice and business advice is sometimes difficult to draw[,]" courts must carefully examine the nature and purpose of the communications at issue to ascertain the applicability of the privilege. *Fed. Deposit Ins. Corp. v. Bryan*, No. 1:11-CV-2790-JEC-GGB, 2012 WL 12835873, at *3 (N.D. Ga. Nov. 28, 2012), *report and recommendation adopted*, 2014 WL 11517836 (N.D. Ga. Feb. 14, 2014); *see also Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982) ("[L]egal advice concerning commercial transactions is often intimately intertwined with and difficult to distinguish from business advice.").

With respect to the parties' present dispute, Defendants have asserted the attorney-client privilege over all materials related to Ramboll's 2022 work, aside from one portion of a document discussed below. Defendants contend that that their outside counsel, Weil, Gotshal & Manges LLP ("Weil"), "retained Ramboll under privilege . . . to perform specialized consulting services for the purpose of helping [counsel] gather information that it needed *to provide legal advice* to KIK" in connection with a business transaction. (Doc. 235 at 2 (emphasis added).) To support their broad assertion of attorney-client privilege, Defendants have submitted two pieces of evidence.

First, Defendants have produced a largely redacted, nine-page document discussing Ramboll's 2022 work with the KIK Defendants which appears to be an engagement letter. The header of the document includes the phrases "Privileged and Confidential" and "Prepared at the Request of Counsel[.]" (Doc. 229-1 at 2.) It identifies "KIK Custom Products" as the recipient but the letter is also addressed—through a "c/o" designation—to Annemargaret Connolly, a partner at Weil. (*Id.*) The body of the nine-page engagement letter is completely redacted aside from one portion of a section titled "Scope of Work[.]" The unredacted portion of the document states, in relevant part, that "Ramboll proposes to conduct on-site environmental reviews of each of the manufacturing sites . . . ." It further specifies that "[t]he objective of Ramboll's review will be to identify environmental issues that are reasonable [sic] likely to result in liabilities or compliance costs in excess of $250,000 . . . ." (*Id.* at 3.)

Second, Defendants have submitted a declaration from Ms. Connolly, the Weil partner who was listed as a recipient of the Ramboll engagement letter. (Doc. 235-1 ("Weil Declaration").) Ms. Connolly avers that "Weil retained [Ramboll] on behalf of its client, KIK Consumer Products, Inc. . . . , to act as a consultant under Weil's direction and to provide services to aid Weil in rendering legal advice in connection with a contemplated transaction." (*Id.* ¶ 2.) She affirms that, "Ramboll conducted an on-site environmental review of

most of the manufacturing sites operated by KIK at the time" and that "[f]or each site, Ramboll reviewed historical information, prior environmental reports, and information from regulatory databases." (*Id.* ¶ 5.) Ms. Connolly's declaration indicates that "Weil directed the work Ramboll conducted" and that "Weil required Ramboll's expertise to understand the environmental condition of certain facilities and retained Ramboll under privilege to conduct a review to identify potentially significant environmental issues." (*Id.* ¶ 6.) According to Ms. Connolly, "Weil, KIK, and Ramboll understood that the work conducted by Ramboll was done under privilege, was confidential, and was done under Weil's direction to aid Weil in rendering legal advice." (*Id.* ¶ 7.)

The Court finds that the evidence presented by Defendants is insufficient to satisfy their burden to demonstrate that all documents from Ramboll's 2022 work are protected by the attorney-client privilege. Neither the unredacted portion of the engagement letter, nor the Weil Declaration provides enough information for the Court to determine whether Ramboll was engaged on behalf of KIK primarily to aid Weil in rendering legal advice or to provide services with a predominantly business-related and nonlegal purpose.

Beginning with the engagement letter, the mere fact that the objective of Ramboll's work was "to identify environmental issues that are reasonable [sic] likely to result in liabilities or compliance costs in excess of $250,000" does

not sufficiently enlighten the Court about the purpose underlying Weil and the KIK Defendants' retention of Ramboll.  (Doc. 229-1 at 3.)  For instance, it is plausible that such an environmental review might be utilized by law firm and client to inform legal advice regarding potential litigation risks or legal approaches to dealing with governmental regulators.  However, it is equally plausible that such an environmental audit is used for a primarily business purpose.  For example, a client might consider findings from an environmental review of liabilities in assessing the value of a business, or in altering the operations of a business with an eye to minimizing environmental risks.

The Weil Declaration, moreover, does not provide the requisite level of detail to support a finding that Ramboll was primarily retained to assist Weil in providing legal advice.  To be sure, the Weil Declaration states that Ramboll was hired "to provide services to aid Weil in rendering legal advice" and that its work "was done under Weil's direction to aid Weil in rendering legal advice." But these statements resemble the kind of "conclusory or *ipse dixit* assertions" that courts have found insufficient to demonstrate that a privilege should apply.  *Abdallah*, 2000 WL 33249254, at *3 (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993)); *see Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011) (explaining that the burden for invoking a privilege is not  "discharged by mere conclusory or *ipse*

*dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship . . . ." (quoting *In re Bonanno*, 344 F.2d 830, 833 (2nd Cir. 1965))); *Freiermuth v. PPG Indus., Inc.*, 218 F.R.D. 694, 699 (N.D. Ala. 2003) ("An affidavit containing mere conclusory statements that a document was prepared for the purpose of obtaining legal advice will not suffice in meeting defendant's burden."). The Weil Declaration does not identify with specificity the purpose of the legal advice that Weil provided which required Ramboll's environmental audit. It also does not explain how Ramboll's environmental review was relevant to or necessary for Weil's provision of legal advice. Although the Court understands that defense counsel does not want to disclose any potentially privileged communications, Defendants must do more than assert, in a conclusory fashion, that Ramboll conducted an environmental review to identify liabilities and that such a review was necessary for Weil to provide legal advice.

The Court also considers here—as Plaintiffs highlight—that Ramboll's 2022 consulting work was provided "in connection with a contemplated [business] transaction," (Doc. 235-1 ¶ 2), and that a report prepared by Ramboll "was shared with investment bankers" working on the potential transaction. (Doc. 235 at 7.) These circumstances *could* suggest that Ramboll's 2022 work was primarily intended to serve a business-related purpose rather than to

assist in the provision of legal advice.  That said, lawyers routinely give bona fide legal advice about business transactions.  The fact that business advice is given alongside or as a component of legal advice does not waive the attorney-client privilege "where the advice given is predominantly legal, as opposed to business, in nature . . . ."  *United States v. Davis*, 131 F.R.D. 391, 401 (S.D.N.Y. 1990); *see Carpenter*, 2007 WL 5571741, at *9 ("The attorney-client privilege is not lost . . . if business advice is simply incorporated into legal advice of counsel." (cleaned up)); *Eglin Fed. Credit Union v. Cantor, Fitzgerald Sec. Corp.*, 91 F.R.D. 414, 420 (N.D. Ga. 1981) ("The mere mention of business considerations is not enough to compel the disclosure of otherwise privileged material. . . . Legal advice should remain protected along with 'nonlegal considerations' discussed between client and counsel that are relevant to that consultation[.]").

In addition, that Ramboll's report was shared with investment bankers, Defendants correctly note, does not necessarily vitiate the attorney-client privilege.  (Doc. 235 at 6-9 & n. 3).  Communications with third-party financial advisors or investment bankers have sometimes been held to be "protected by the attorney-client privilege where such communications were indispensable to the provision of the attorney's legal advice."  *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2018 WL 2323424, at *5 (M.D. La. May 22, 2018).  But here,

Defendants have not submitted any evidence supporting their position that the advice of investment bankers was necessary to the provision of legal advice. The Court cannot hinge its decision on Defendants' representation, made solely in briefing, that the investment bankers' role "was integral to the company and its outside counsel's evaluation of complex issues, and therefore the fact that the report drafted by Ramboll in 2022 was shared with investment bankers that were retained by KIK does not waive the privilege." (Doc. 235 at 8-9.) Neither the Weil Declaration nor Ramboll's engagement letter reference any investment bankers, and Defendants have provided no other evidence establishing the role that the investment bankers played in formulating the purported legal advice at issue.

Further, even if the attorney-client privilege applies to Ramboll's communications with Weil, there may be certain documents in Ramboll's possession related to its 2022 work that are nevertheless nonprivileged. The attorney-client privilege only protects confidential communications, not underlying factual information. *See Upjohn*, 449 U.S. at 395 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]"); *In re Fed. Grand Jury Proc., 89-10 (MIA)*, 938 F.2d 1578, 1582 (11th Cir. 1991) ("The attorney-client privilege protects communications rather than information."

(cleaned up)); *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1392 (N.D. Ga. 2017) ("It is generally recognized that the communication of factual information is not protected by the attorney-client privilege.").  Defendants have acknowledged that, in the course of its work, "Ramboll reviewed historical information, prior environmental reports, and information from regulatory databases." (Doc. 235-1 ¶ 5.)  To the extent that Ramboll possesses documents containing factual information that fall within the scope of discovery, it may be obligated to produce them notwithstanding any privilege that may attach to its communications with Weil.

In sum, the Court finds that Defendants have not fulfilled their burden to demonstrate that the attorney-client privilege applies to all documents related to Ramboll's 2022 work.  *See, e.g., F.T.C.*, 628 F.2d at 213 ("Where, as here, we have not been provided with sufficient facts to state with reasonable certainty that the privilege applies, this burden is not met.").  Based on the circumstances currently known to the Court—namely, that Ramboll's services were solicited in connection with a business transaction and its work was shared with investment bankers—it is at least plausible that Ramboll's work was primarily intended to serve a business-related purpose rather than to aid

in the provision of legal advice.[3]  Finally, even if the attorney-client privilege applies to Ramboll's communications with Weil, there may be nonprivileged documents containing factual information in Ramboll's possession.

### B. Work-Product Doctrine

The work-product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3)(A), protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *see Hickman v. Taylor*, 329 U.S. 495, 510-514 (1947) (holding that the work-product doctrine protects "written statements, private memoranda and personal recollections prepared or formed by an adverse

---

[3] Although Defendants cite a case which applied the attorney-client privilege to documents from an environmental review directed by counsel in connection with a proposed merger transaction, the court made that finding only after an *in camera* inspection of the withheld documents. *Lee-Bolton v. Koppers Inc.*, No. 1:10-CV-253-MCR-GRJ, 2015 WL 11110543, at *1-2 (N.D. Fla. Apr. 20, 2015). Moreover, at the time the proposed transaction was being considered, the defendant company appeared to be involved in ongoing litigation and governmental regulatory proceedings related to environment remediation efforts at certain sites, factors that Defendants have not presented here. *Id.*

party's counsel in the course of his legal duties"). "The party invoking the work-product privilege bears the burden of establishing that the privilege applies." *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (citing *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013)); *see Jones v. Tauber & Balser, P.C.*, 503 B.R. 510, 514 (N.D. Ga. 2013) ("The burden is on the party withholding discovery to show that the documents should be afforded work-product protection." (cleaned up)). Although "litigation need not necessarily be imminent" for the work-product doctrine to apply, "the primary motivating purpose behind the creation of the document [must be] to aid in possible future litigation." *Davis*, 636 F.2d at 1040.

Defendants contend that documents prepared by Ramboll during its 2022 engagement with KIK are subject to work-product protection because "the prospect of potential litigation was one of the purposes for which this work was conducted[.]" (Doc. 235 at 10-11.) In support of their position, Defendants chiefly point to the engagement letter's statement that "[t]he objective of Ramboll's review will be to identify environmental issues that are reasonable [sic] likely to result in liabilities or compliance costs in excess of $250,000 . . . ." (Doc. 229-1 at 3.) For two reasons, the Court finds that Defendants have not satisfied their burden to demonstrate that all documents related to Ramboll's 2022 engagement were prepared in anticipation of litigation.

17

First, the assessment of potential environmental "liabilities or compliance costs" does not necessarily entail a primary focus on *litigation-related* risks, as opposed to other types of risks. But even if one were to read Ramboll's engagement letter as calling primarily for an assessment of litigation risks, which the Court cannot simply assume, it is not clear that such an assessment would be entitled to work-product protection. As courts have noted, "[w]hile legal risks may ripen into litigation, not all risk management qualifies as anticipation of litigation." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 553 (S.D.N.Y. 2013). In particular, "[g]eneralized steps to avoid non-specific litigation are [often] not accorded work product protection." *Id.*, *see, e.g.*, *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996) (distinguishing materials "developed in the ordinary course of business as a precaution for the remote prospect of litigation" from those prepared because "some articulable claim, *likely* to lead to litigation has arisen" (cleaned up)); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 150 (E.D.N.Y. 2014) ("[A]dvice given for the purpose of *preventing* litigation is different than advice given in an *anticipation* of litigation."); *Towbin v. Antonacci*, 287 F.R.D. 672, 680 (S.D. Fla. 2012) ("[T]he Court does not agree with Defendants' contention that documents prepared to determine whether litigation will occur are necessarily documents prepared 'in anticipation' of

18

litigation."); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 75 (S.D.N.Y. 2010) ("[C]onsider[ing] the possibility of litigation . . . is insufficient to trigger the protection of the work product doctrine . . . .").

Here, the unredacted portion of the engagement letter does not indicate that Ramboll's review was primarily conducted "in anticipation" of any specific litigation. Rather, a plausible reading of the engagement letter suggests that Ramboll's objective was to assess the nature of certain environmental liabilities and compliance costs that might, or might not, be the subject of litigation or regulatory action in the future. Materials stemming from such work are not necessarily entitled to work-product protection.

Second, the Weil Declaration affirmatively indicates that Ramboll's work was solicited "in connection with a contemplated [business] transaction[,]" not in anticipation of litigation. (Doc. 235-1 ¶ 2.) While courts "acknowledge that dual-purpose documents that have both a litigation and non-litigation purpose (or purposes) may still be entitled to protection[,]" *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1324 (N.D. Ga. 2015), the Weil Declaration says nothing about the anticipation of litigation, let alone that it was the "primary motivating purpose" for Ramboll's work. *Davis*, 636 F.2d at 1040. Based on the information Defendants have provided, it appears instead that the primary purpose of Ramboll's work was to facilitate a

contemplated business transaction.  On this record, Defendants have failed to meet their burden to show that the documents relating to Ramboll's 2022 engagement were prepared in anticipation of litigation and thus constitute protected work product.

### C. Privilege Log

Federal Rule of Civil Procedure 45(e)(2)(A) requires that

> [a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A).  The party asserting a privilege or the work-product doctrine "bears the burden to provide a factual basis for its assertions[,]" which "is met when the party produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel." *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007).  "Blanket and general assertions of a claim of privilege" often "do not provide sufficient detail about the documents to enable the plaintiff or the court to determine whether the withheld documents were privileged." *Meade*, 250 F. Supp. 3d at 1393; *see In re Grand Jury Subpoena*, 831 F.2d at 226 ("Blanket assertions of privilege

before a district court are usually unacceptable." (quoting *Davis*, 636 F.2d at 1044 n.20)).

Defendants do not appear to have prepared a privilege log detailing the basis for withholding each document responsive to the Ramboll Subpoena. As explained in the preceding sections of this order, Defendants' blanket assertion of the attorney-client privilege and work-product doctrine are insufficient on the present record to satisfy their burden to show that the application of those protections are appropriate. Accordingly, the Court will order Defendants to provide Plaintiffs with a privilege log specifying, for each document withheld, (1) the date of creation; (2) the authors and their capacities, (3) the recipients (including copy recipients) and their capacities, and (4) a detailed explanation of why the document is privileged or immune from discovery.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' motion to compel discovery (Doc. 229) is **DEFERRED**.

Within 30 days of the entry of this order, the KIK Defendants are **DIRECTED** to produce to Plaintiffs a privilege log for all withheld documents that are responsive to the Ramboll Subpoena.[4]  At minimum, the privilege log must specify, for each document withheld, (1) the date of creation; (2) the authors and their capacities, (3) the recipients (including copy recipients) and their capacities, and (4) a detailed explanation of why the document is privileged or immune from discovery.

Following the KIK Defendants' production of a privilege log, the parties are **DIRECTED** to confer in good faith over any remaining disputes over application of the attorney-client privilege and work-product doctrine to the withheld documents.  No later than 14 days following the production of the privilege log, the parties are **DIRECTED** to file a joint report detailing any remaining areas of disagreement with respect to production of the responsive documents, along with each side's position on each disputed issue, set of

---

[4] The privilege log need not address documents related to Ramboll's 2020 and 2024 engagements with the KIK Defendants to which the parties have already reached an agreement.

22

documents, or specific document, as may be appropriate.  The Court reserves the right to perform an *in camera* review of any withheld documents at a later date.

    **SO ORDERED**, this 12th day of December, 2025.

                                      SARAH E. GERAGHTY
                                      United States District Judge